UPS
IBCCJ jello

------------------------------

**Docket No. 13-4076**

------------------------------

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT


APPELLANT OPENING BRIEF

Of JOHN PAUL OPOKU


APPENDIX VOL 2, E- M, pp. 56 - 218

i

---------------------------

**Docket No. 13-4076**

---------------------------

## IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

**John Paul Opoku**

**Plaintiff - Appellant**

**V.**

**Education Commission for Foreign Medical Graduates et <u>al</u>**

**Defendant- Appellees**

## APPELLANT OPENING BRIEF
## OF JOHN PAUL OPOKU
## APPENDIX VOL 2, E – M, pp. 56 - 218

## APPEAL FROM THE EASTERN DISTRICT OF PENNSYLVANIA

## District Docket :12-3467

ii

## HONORABLE PETRESE B TUCKER

## TABLE OF CONTENTS

**VOL. 2 of APPENDIX** ……………………………………………..App -2

(Volume 2 is filed separately)

Certified Docket Entries……………………………………….........E

Designation of Records...…………………………………..…………F

Doc. 1
Complaint
(Ps. Refer to the Appendices in the Court's records)…..………………....…G

Doc 4…………………………………………………………………...H
Defendants Griffin and Martinez's Falsified Waiver

Doc 5……………………………………………………………......…I
ECFMG and Grese's Motion to Dismiss Complaint
(Memorandum not included in the Appendix)

Doc 10 ……………………………………………………..………....J
(Griffin and Martinez's Motion to Dismiss Complaint with proven
Counterfeit Exhibits, memorandum not included)

Doc 15…………………………………………………………..……...K
Plaintiff's Motion in Opposition to Griffin and Martinez's
Motion to Dismiss Complaint)

Doc 16……………………………………………………………….…L
Plaintiff Opoku's Motion in Opposition to ECFMG
and Grese's Motion to Dismiss Complaint. Memorandum not included)

Doc 17 ...................................................................…..…M
Plaintiff Opoku's Amended Memorandum in Opposition
To ECFMG and Grese's motion to Dismiss Complaint

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

..............................................

John Paul Opoku

2110 Bronx Park East 2A

Bronx, NY 10462

Tel.: 718-829-8978

Email: johnopk42@aol.com

(PRO SE)


Ms. Claudia M. Tesoro,

21 South 12th ST, Philadelphia,

3rd Floor, PA 19107 – 3604.

(Counsel for Griffin

and Martinez)

Brian W. Shaffer

1701 Market Street

Philadelphia, PA 19103- 2901

(Counsel for ECFMG & Grese)

Appellees


Prepared and signed by

Dare: October 30, 2013

**John Paul Opoku (Appellant – Plaintiff – Pro se)**

# E

## (Certified Docket Entries)

CLOSED,APPEAL,STANDARD

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:12-cv-03457-PBT

| | |
|---|---|
| OPOKU v. EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES et al | Date Filed: 06/19/2012 |
| Assigned to: CHIEF JUDGE PETRESE B. TUCKER | Date Terminated: 09/25/2013 |
| Case in other court: USCA FOR THE THIRD CIRCUIT, 13-04076 | Jury Demand: None |
| | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**JOHN PAUL OPOKU**                    represented by    **JOHN PAUL OPOKU**
2110 BRONX PARK EAST 2A
BRONX, NY 10462
PRO SE


V.

**Defendant**

**EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES**                represented by    **BRIAN W. SHAFFER**
MORGAN, LEWIS & BOCKIUS
1701 MARKET STREET
PHILA, PA 19103-2921
215-963-5000
Fax: 215-963-5001
Email: bshaffer@morganlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ELISA P. MCENROE**
MORGAN LEWIS BOCKIUS LLP
1701 MARKET ST
PHILADELPHIA, PA 19103-2921
215-963-5917
Email: emcenroe@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**KIMBERLY GRIFFIN**                    represented by    **BARRY N. KRAMER**
PA OFFICE OF ATTY GENERAL
21 SOUTH 12TH STREET
THIRD FLOOR
PHILADELPHIA, PA 19107

215-560-1581
Fax: 215-560-1031
Email: bkramer@attorneygeneral.gov
*ATTORNEY TO BE NOTICED*

**Defendant**
**SUZANNE MARTINEZ**                represented by **BARRY N. KRAMER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**CHRISTINA JOY F. GRESE**         represented by **BRIAN W. SHAFFER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ELISA P. MCENROE**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/19/2012 | 1 | COMPLAINT against EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES, CHRISTINA JOY F. GRESE, KIMBERLY GRIFFIN, SUZANNE MARTINEZ ( Filing fee $ 350 receipt number PPE064914), filed by JOHN PAUL OPOKU. Appendices in hard copy. (Attachments: # 1 Civil Cover Sheet)(jmv, ) (Entered: 06/19/2012) |
| 06/19/2012 | | Summons Issued as to EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES, CHRISTINA JOY F. GRESE, KIMBERLY GRIFFIN, SUZANNE MARTINEZ. Forwarded To: 4 Origs mailed to Pro Se on 6/19/12 (jmv, ) (Entered: 06/19/2012) |
| 07/10/2012 | 2 | CONSENT to Jurisdiction by US Magistrate Judge by JOHN PAUL OPOKU.. (jl, ) (Entered: 07/10/2012) |
| 07/10/2012 | 3 | AFFIDAVIT of Service by JOHN PAUL OPOKU re: served SUMMONS upon SUZANNE MARTINEZ, KIMBERLY GRIFFIN, CHRISTINA JOY F. GRESE AND EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES by EXPRESS MAIL USPS on 6/27/12 (jl, ) (Entered: 07/10/2012) |
| 07/20/2012 | 4 | WAIVER OF SERVICE Returned Executed by SUZANNE MARTINEZ, KIMBERLY GRIFFIN. SUZANNE MARTINEZ waiver sent on 6/27/2012, answer due 8/27/2012; KIMBERLY GRIFFIN waiver sent on 6/27/2012, answer due 8/27/2012. (KRAMER, BARRY) (Entered: 07/20/2012) |
| 07/23/2012 | 5 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES, CHRISTINA JOY F. GRESE.Certificate of Service and Proposed Order. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Memorandum of Law in Support of Motion to Dismiss, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(MCENROE, ELISA) (Entered: 07/23/2012) |
| 07/23/2012 | 6 | NOTICE of Appearance by BRIAN W. SHAFFER on behalf of EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES, CHRISTINA JOY F. GRESE with Certificate of Service(SHAFFER, BRIAN) (Entered: 07/23/2012) |
| 07/24/2012 | 7 | NOTICE of Appearance by BARRY N. KRAMER on behalf of KIMBERLY GRIFFIN, SUZANNE MARTINEZ with Cert of Service(KRAMER, BARRY) (Entered: 07/24/2012) |
| 08/02/2012 | 8 | JOHN PAUL OPOKU MOTION FOR SUMMARY JUDGMENT AGAINST THE DEFENDANTS EDUCATION COMMISSION FOR FOREING MEDICAL GRADUATES (ECFMG), CHRISTINA JOY F. GRESE, KIMBERLY GRIFFIN AND SUZANNE MARTINEZ, MEMORANDUM, EXHIBITS.. (Attachments: # 1 MEMORANDUM)(jl, ) (Additional attachment (s) added on 8/2/2012: # 2 EXHIBITS) (jl, ). (Entered: 08/02/2012) |
| 08/03/2012 | 9 | Memorandum of Law in Opposition re 8 MOTION for Summary Judgment filed by KIMBERLY GRIFFIN, SUZANNE MARTINEZ, Certificate of Service. (KRAMER, BARRY) Modified on 8/6/2012 (lisad, ). (Entered: 08/03/2012) |
| 08/03/2012 | 10 | MOTION to Dismiss , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , MOTION to Dismiss for Lack of Prosecution filed by KIMBERLY GRIFFIN, SUZANNE MARTINEZ.Memorandum, Cert of Service. (Attachments: # 1 Exhibit Exh 1-11)(KRAMER, BARRY) (Entered: 08/03/2012) |
| 08/07/2012 | 11 | RESPONSE in Opposition re 8 MOTION for Summary Judgment filed by EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES, CHRISTINA JOY F. GRESE, Certificate of Service. (MCENROE, ELISA) Modified on 8/9/2012 (nd, ). (Entered: 08/07/2012) |
| 08/15/2012 | 12 | JOHN PAUL OPOKU RESPONSE TO THE MOTIONS SUBMITTED BY KIMBERLY GRIFFING,SUZANNE MARTINEZ, ECFMG AND CHRISTINA JOY F. GRESE IN OPPOSITION TO PLAINTIFFS 7/31/12 MOTION FOR SUMMARY JUDGMENT, WITH INCOPORATED MEMROANDUM, CERTIFICATE OF SERVICE. (jl, ) (Entered: 08/15/2012) |
| 04/16/2013 | | Set/Reset Deadlines as to 5 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 10 MOTION to Dismiss MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Prosecution . RESPONSES DUE BY 5/7/2013. (jl, ) (Entered: 04/16/2013) |
| 04/16/2013 | 13 | NOTICE AND ORDER THAT A RESPONSE TO THE MOTIONS TO DISMISS BY 5/7/13; ETC.. SIGNED BY HONORABLE PETRESE B. TUCKER ON 4/16/13. 4/16/13 ENTERED AND COPIES MAILED TO PRO SE, E-MAILED.(jl, ) (Entered: 04/16/2013) |
| 04/16/2013 | 14 | |

| | | ORDER THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS DISMISSED WITH PREJUDICE; ETC.. SIGNED BY HONORABLE PETRESE B. TUCKER ON 4/15/13.4/16/13 ENTERED AND MAILED TO PRO SE, E-MAILED.(jl, ) (Entered: 04/16/2013) |
|---|---|---|
| 05/03/2013 | 15 | OPUJU'S MOTION IN OPPOSITION TO GRIFFIN AND MARTINEZ'S MOTION TO DISMISS COMPLAINT, MEMORANDUM. (jl, ) (Entered: 05/03/2013) |
| 05/03/2013 | 16 | OPUKU'S MOTION IN OPPOSITION TO ECFMG AND GRESE MOTION TO DISMISS COMPLAINT, MEMORANDUM, CERTIFICATE OF SERVICE. (jl, ) (Entered: 05/03/2013) |
| 05/07/2013 | 17 | OPUKU'S MOTION TO AMEND THE MEMORANDUM OF LAW IN OPPOSITION TO ECFMG AND GRESE'S MOTION TO DISMISS COMPLAINT, MEMORANDUM, CERTIFICATE OF SERVICE.(jl, ) (Entered: 05/07/2013) |
| 05/20/2013 | 18 | AFFIDAVIT by JOHN PAUL OPOKU RE: CERTAIN STATEMENTS. (jl, ) (Entered: 05/20/2013) |
| 09/25/2013 | 19 | ORDER THAT DEFENDANTS EDUCATION COMMON FOR FOREIGN MEDICAL GRADUATES AND CHRISTINA GRESE'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ARE GRANTED. PLAINTIFF OPOKU'S MOTION TO AMEND THE MEMORANDUM OF LAW IN OPPOSITION TO ECFMG AND GRESE MOTION TO DISMISS COMPLAINT IS DENIED. THE CLERK OF COURT SHALL MARK THE ABOVE CAPTIONED MATTER CLOSED FOR STATISTICAL PURPOSES; ETC.. SIGNED BY CHIEF JUDGE PETRESE B. TUCKER ON 9/24/13. 9/25/13 ENTERED AND E-MAILED, MAILED TO PRO SE.(jl, ) (Entered: 09/25/2013) |
| 10/08/2013 | 20 | NOTICE OF APPEAL by JOHN PAUL OPOKU. Filing fee $ 455, receipt number PPEO89600. Copies to Judge, Clerk USCA, Appeals Clerk, CERTIFICATE OF SERVICE. (jl, ) (Entered: 10/08/2013) |
| 10/08/2013 | 21 | Clerk's Notice to USCA re 20 Notice of Appeal : (jl, ) (Entered: 10/08/2013) |
| 10/10/2013 | | NOTICE of Docketing Record on Appeal from USCA re 20 Notice of Appeal filed by JOHN PAUL OPOKU. USCA Case Number 13-4076 (ems) (Entered: 10/10/2013) |
| 10/16/2013 | 22 | Copy of TPO Form re 20 Notice of Appeal : (jl, ) (Entered: 10/16/2013) |
| 10/17/2013 | | Record Complete for Purposes of Appeal re 20 Notice of Appeal. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (afm, ) (Entered: 10/17/2013) |

| PACER Service Center |
|---|
| Transaction Receipt |
| |

| 10/21/2013 08:50:10 | | |
|---|---|---|
| **PACER Login:** jp6045 | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** 2:12-cv-03457-PBT | |
| **Billable Pages:** 3 | **Cost:** | 0.30 |

# F

## (Designation of Records)

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

------------------------------

Docket No: 13-4076

------------------------------

JOHN PAUL OPOKU

Appellant

V.

EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES, CHRISTINA
JOY F. GRESE, KIMBERLY GRIFFIN, and SUZANNE MARTINEZ

Appellees

------------------------------

STATEMENT OF DESIGNATION OF RECORDS BY APPELLANT

JOHN PAUL OPOKU

------------------------------

APPEAL FROM THE JUDGMENT OF DISMISSAL OF THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ENTERED ON SEPTEMBER 25, 2013

THE HONORABLE PETRESE B TUCKER

------------------------------

John Paul Opoku

Pro Se

2110 Bronx Park East 2A

Bronx NY. 10462

## CERTIFICATE OF RECORD DESIGNATION

I certify that, in accordance with FRAP Rule 10 (b), I have filed the appellant's Statement

of Designation of Record with the U.S Court of Appeals for the Third Circuit on

...10/17/2013.... at Office of the Clerk, Maria Reyes, United States Court of Appeals,

21400 U.S Courthouse, 601 Market Street, Philadelphia, PA, 19106, within the stipulated 14

days after filing the Notice of Appeal.

I further certify that I have served copies of the appellant's statement of Designation of

Record and this certificate on the Appellees through their Counsels on record respectively on

10/17/2013.........at

(a) BRIAN W. SHAFFER &  ELISA MCENROE
MORGAN LEWIS & BOCKUS, 1701 MARKET STREET, PHILADELPHIA, PA 19103 -2921

(b) BARRY N. KRAMER
PA OFFICE OF ATTY GENERAL, 21 SOUTH 12TH STREET, THIRD FLOOR
PHILADELPHIA, PA 19107
(Counsel on record for Appellees Kimberly Griffin and Suzanne Martinez)

Respectively submitted

October 17, 2013

John Pau Opoku (PRO SE)

2110 BRONX PARK EAST 2A, BRONX NY, 10462

Tel. 718-829-8978

Email: Johnopk42@aol.com

Date:

_____

### DESIGNATION OF RECORD

In pursuant of FRAP Rule 10 (b), John Paul Opoku, the Appellant, files this statement of Designation of record, within 14 days after filing Notice of Appeal, and declares that he has designated all records advised to be already on file at the U.S Court of Appeals for the Third Circuit transmitted from the District Court for the Eastern District of Pennsylvania, Docs 1 to 19 pertaining to the case No. 12-3457, to be included in the Appeal, and has filed a notice with the Clerk of the U.S Court of Appeals for the Third Circuit and the Appellees to that effect.

In pursuant to Rule 30 (30) (b) (1), Appellant Opoku states that the following Docs from the record will be included in the Appendix:

a. Docs. 15, 16, and 17 of Plaintiff Opoku as factual and legal enhancement highlighting the substantial evidence embodied in Doc 5 and Doc 10.

b. Dos 5; because of the larger volume of Attachment # 2 Exhibit A' and # 3 Exhibit B associated with this document, Appellant will make reference to the copies on record and shall not include them in the Appendix of the Appellant Opening Brief. Appellant will refer to these attachments as falsified documents submitted by the defendants ECFMG and Grese to deceive the District Court.

c. Doc 10; with Attachment # 1 Exhibit Exh 1-11. Appellant will refer to these attachments as forged letters made in the name and under the saved signature of the superiors of Defendants Griffin and Martinez to deceive Plaintiff Opoku between March 2009 and January 2012. The falsified Pennsylvania Human Right Relations Commission Docket

number **200804756** assigned to Plaintiff Opoku by the defendants
mark out these documents.

d. **Doc 4:** Waiver falsified in the name of Plaintiff Opoku by the
Defendants Martinez and Griffin and filed at the District Court to
extend the deadline (by 14 more days) they were required to respond
to the summonses.

e. **Doc 1 (Complaint):** will be significantly relied on but its appendix will
not be included in the appendix of the Appellant Brief. Appellant will
rely on the copies on record.

Respectfully submitted

October 17, 2013

John Paul Opoku

(Pro se)

## TRANSCRIPT PURCHASE ORDER
### For Third Circuit Court of Appeals

District Court FOR THE EASTERN DISTRICT OF PENNSYLVANIA    Court of Appeals Docket No. 13 - 04076

District Court Docket No. 12 - CV - 03457 file

Short Case Title OPOKU V. EDUCATION COMMISSION FOR FOREIGN MED GRADUATES ET AL

Date Notice of Appeal Filed by Clerk of District Court 10/08/2013

**Part I.** (To be completed by party responsible for ordering transcript)

**A.** Check one of the following and serve ALL COPIES

NOTE: A SEPARATE FORM IS TO BE TYPED FOR EACH COURT REPORTER IN THIS CASE.

**FILED**

**TRANSCRIPT:**

___ None          ___ Unnecessary for appeal purposes.

✓ Already on file in the District Court Clerk's office.

OCT 16 2013

___ This is to order a transcript of the proceedings heard on the date listed below from ____

MICHAEL E. KUNZ, Clerk

Specify on lines below exact date of proceedings to be transcribed. If requesting only partial transcript of the proceedings, specify what parties or what witness testimony is desired.

_____ Dep. Clerk

If proceeding to be transcribed was a trial, also check any appropriate box below for special requests; otherwise, this material will NOT be included in the trial transcript.

___ Voir dire          ___ Opening Statement of Plaintiff          ___ Opening Statement of Defendant

___ Closing Argument of Plaintiff    ___ Closing Argument of Defendant

___ Jury Instructions          ___ Sentencing Hearings

FAILURE TO SPECIFY IN ADEQUATE DETAIL THOSE PROCEEDINGS TO BE TRANSCRIBED OR FAILURE TO MAKE PROMPT SATISFACTORY FINANCIAL ARRANGEMENTS FOR TRANSCRIPT ARE GROUNDS FOR DISMISSAL OF THE APPEAL OR IMPOSITION OF SANCTIONS.

**B.** This is to certify that satisfactory financial arrangements have been completed with the court reporter for payment of the cost of the transcript. The method of payment will be:

___ CJA Form submitted to District Court Judge          ___ Motion for Transcript has been submitted to District Court

___ CJA Form submitted to Court of Appeals          ✓ Private Funds

Signature [signature]          Date 10/16/2013

Print Name TONY PAUL OPOKU          Counsel for PRO SE

Address 2110 BRONX PARKE 2A BX NY 10462    Telephone 718-829-8978

**Part II.    COURT REPORTER ACKNOWLEDGEMENT** (To be completed by the Court Reporter and forwarded to the Court of Appeals on the same day transcript order is received)

| Date transcript order received | Estimated completion date if not within 30 days of date financial arrangements made, motion for extension is to be made to Court of Appeals | Estimated number of pages |
|---|---|---|
| | | |

___ Arrangements for payment were made on ____

___ Arrangements for payment have not been made pursuant to FRAP 10(b)

| Date | Name of Court Reporter | Telephone |
|---|---|---|
| | | |

**Part III.    NOTIFICATION THAT TRANSCRIPT HAS BEEN FILED IN THE DISTRICT COURT** (To be completed by court reporter on date of filing transcript in District Court. Notification must be forwarded to Court of Appeals on the same date.) This is to certify that the transcript has been completed and filed with the District Court today.

Actual Number of Pages ____          Actual Number of Volumes ____

| Date | Signature of Court Reporter |
|---|---|
| | |

# G

## (Doc 1)

### Plaintiff Opoku's Original Complaint

### (PS. Refer to Appendices in the Court's Records)

JS 44 (Rev 09/11)

**CIVIL COVER SHEET**

12 345 457

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

John Paul Opoku

**(b)** County of Residence of First Listed Plaintiff  Bronx, New York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro se

## DEFENDANTS

(1) Education Commission for Foreign Medical Graduates (ECFMG)
(2) Christina Joy F Grese
(3) Kimberly Griffin and Suzanne Martinez
County of Residence of First Listed Defendant  Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

|                                           | PTF | DEF |                                                          | PTF | DEF |
|-------------------------------------------|-----|-----|----------------------------------------------------------|-----|-----|
| Citizen of This State                     | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State                  | ☐ 2 | ☐ 2 | Incorporated and Principal Place In Another State         | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country   | ☒ 3 | ☐ 3 | Foreign Nation                                            | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | Liability | Liability | **LABOR** | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Mgmt. Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | **IMMIGRATION** | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | ☐ 462 Naturalization Application | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | ☐ 465 Other Immigration Actions | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sections 1332,  and 42 U.S.C. Sections 1983 & 1985
Brief description of cause:
Deprivation of rights under color of  regulation, discrimination, intentional affliction of emotional distress, defrauding

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**  42,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*    JUDGE _____  DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____



**PBT**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

CIVIL ACTION

v.

NO. **12 3457**

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.               ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                              ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                                       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court. (See reverse side of this form for a detailed explanation of special
     management cases.)                                                                          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.       ✓

| JUNE 19, 2012 | PRO SE | JOHN PAUL OPOKU |
|---|---|---|
| Date | ~~Attorney-at-law~~ PRO SE | ~~Attorney for~~ |
| 718-829-8978 | PRO SE | Johnopk42@aol.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02



**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

John Paul Opoku

    **Plaintiff**

    V.

Education Commission for Foreign

Medical Graduates

 Kimberly Griffin

 Suzanne Martinez

Christina Joy F Grese

    **Defendants**

Civil Action No.:  **12 - 3457**

Pro Se

# COMPLAINT

COMES NOW the plaintiff, John Paul Opoku, appearing pro se, and for a complaint against the defendants above named, states, alleges, and avers as follows:

## JURISDICTION

1. This Court has subject matter jurisdiction under 28 U.S.C. sections 1331 and 1332.

2. This action is commenced pursuant to 42 U.S.C. sections 1983 & 1985.

## GENERAL ALLEGATIONS

9. Certification of IMGs initiates the process of licensure to practice medicine or pursue advanced medical studies in the United States, and is a privilege established by the United States Congress Act, specifically THE HEALTH PROFESSIONS EDUCATIONAL ASSISTANCE ACT, PUBLIC LAW 94-484, as amended.

10. The USMLE exam administered by ECFMG is composed of three Steps examinations; Step 1, Step 2 –CK, and Step 2-CS. ECFMG administers Step 1, Step 2-CK, and Step 2-CS to only IMGs. The purpose of the examinations is articulated by the USMLE administration on the score report.[1] See also [2]

11. In order to serve its purpose as a standard and objective measure of the medical knowledge and skills of the candidates, the integrity of both the test taker and the administering entity is required. The integrity and honesty of the test taker is monitored by the delivery organization through the use of high tech cameras and strict supervision. The integrity and honesty of the test administration entity, on the other hand, is indeterminable because of absolute lack of transparency in the testing system.

12. On its part defendant ECFMG administers the examinations to IMG by determining the qualification of the applicant, obtaining identification number for candidates from National Board of Medical Examiners (Hereinafter NBME), registering the applicant, arranging for candidates to take the examination at Prometric Testing Center, obtaining examination scores of the candidates from Prometric Testing Center,

---

[1] "Step 1 is designed to assess whether an examinee understands and can apply important concepts of the sciences basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy," See Appendix A1 (highlighted).

    1.   [2] Step 2 is designed to assess whether an examinee can apply medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision, including emphasis on health promotion and disease prevention" See Appendix A2 (highlighted).

issuing examination score reports to candidates, maintaining examination records of candidates, and issuing transcripts on behalf of candidates whenever and wherever it is necessary.

13. When plaintiff, as IMG, decided on December 31, 2007 to avail his talents to the American public and participated in the USMLE program in accordance with the existing norms, all plaintiff expected from the defendant ECFMG was standard treatment based on recognition and affirmation of his fundamental human rights and dignity guaranteed and protected by the laws and democratic values of the United States, coupled with transparency, decency, respect, and professionalism, as ECFMG professes to do for all candidates.

14. Defendant ECFMG registered Plaintiff for the USMLE Step 1 and Step 2-CK on December 31, 2007 after establishing plaintiff's qualification by the same method that had been used in the past to qualify thousands of candidates who later became excellent doctors in the medical field. See Appendix A3. Plaintiff paid the required exams fees on December 31, 2007 in the amount of $ 1380.00. Plaintiff obtained examination permits and took the USMLE Step 1 and Step 2-CK examinations on August 19, 2008 and February 9, 2009 respectively at the Prometric Testing Center in New York, as arranged by ECFMG. See Appendix A4 and A5.

15. On September 11, 2008 and March 4, 2009 respectively, the operatives of defendant ECFMG, out of prejudice, maliciousness, and for the purpose of degrading, humiliating, embarrassing, and disrespecting plaintiff, fabricated punitive failing test scores in place of Plaintiff's actual excellent examination scores obtained on USMLE Step 1 and Step 2-Ck respectively. The forged test scores are 137 out of 336 test

accept their offer for him to take the Step 1 and Step 2 CK tests again with waived test fees while standing up for his rights. [13]

26. Plaintiff has sufficient knowledge to form a belief that defendant Ms. Kimberly Griffin and the defendant ECFMG became even more offended when plaintiff retained Ms. Faye Riva Cohen, as his attorney about June 8, 2009. In a scheme to make plaintiff's attorney redundant, Ms. Kimberly Griffin falsely declared to her that plaintiff had already accepted the offer from defendant ECFMG to take the USMLE Step 1 and Step 2-CK again with waived test fees.

27. Plaintiff reveals that Ms. Faye Riva Cohen demonstrated that she had been deceived and misled with misinformation by Ms. Kimberly Griffin and the defendant ECFMG by beginning her representation of plaintiff with misrepresentation for the benefit of the defendant ECFMG. Specifically Ms. Faye Riva Cohen demonstrated that it was convenient for her to get the plaintiff to accept ECFMG's offer by using her privileged position to persuade plaintiff against the pursuit of justice. [14]  See also. [15]

---

[13] Plaintiff refused the offer knowing that the operatives of ECFMG started their prejudice about him just after he took the first USMLE test and they were not deterred to continue their practices even after he took the second test about six months later under their extraordinary vigilance and reinforced his innocence.

[14] In defying every reasonable logic Ms. Cohen demonstrated a belief that her client had no rights to expect fair and dignified treatment from the defendant ECFMG and also placed herself in a position to cover for the defendant ECFMG while pretending to be the one who initiated the unpopular offer of getting plaintiff to take the USMLE Step 1 and Step 2-CK again with waived test fees, which notably began before she was retained. Retrospectively, in what Ms. Cohen had called a phone Conference that took place about July 10, 2009 between her and plaintiff, she asked plaintiff if he had read ECFMG's information bulletin on ECFMG's website, which plaintiff was aware had been modified and manipulated by ECFMG to reflect and justify what they were doing to him.

6. [15] Ms. Faye Riva Cohen again demonstrated her misinformed position by stating: (a) "I also do not see this as a viable civil rights claim based on the law as written and interpreted, and even if I did, the PHRC will not do anything for you, and it will be very expensive and not effective, as I don't see a judge permitting you to get far in court. So we usually try to work out these cases individually." See Appendix B 3 (last yellow highlight). (b) "As there is no or very little law in support of you I was considering seeing if a test fee could be waived or if they will contribute funds to a testing course for you. So far, the ECFMG is not offering anything "(July 29, 2009).See Appendix B 3 (Last yellow highlight).

28. Plaintiff has sufficient knowledge to form a belief that in order to protect their

reputation and to escape liability for their actions, the operatives of defendant

ECFMG considered it strategic for them to take undue advantage of the absolute lack

of transparency in their testing system (compared to most of their counterparts in the

United States) to suppress their knowledge of the truth, and therefore instead of

admitting their wrongdoings and apologizing for it, they stood by the forged test

scores they had planted as replacement for plaintiff's actual test scores. Consequently

they started changing their policies to hide the traces of their actions so that the initial

falsehood they had created could stand indisputable in the eyes of third parties.

29. Plaintiff articulates that about July 24, 2009, the defendant ECFMG, in furtherance of

their concealment of the facts of the matter to his disadvantage, supposedly retained

an attorney and demonstrated their control over PHRC representative Ms. Kimberly

Griffin by submitting a motion to dismiss plaintiff's complaint from PHRC without

merit. They claimed in this motion that PHRC had no jurisdiction over the subject

matter of plaintiff's complaint in addition to claiming that the complaint was time

barred despite being filed at PHRC when one of the events leading to it was exactly

on its 180th day and the other was only on its 7th day. Defendant ECFMG submitted

another document in about a week after, specifically August 7, 2009, and falsely

stated among other things, "ECFMG also admits that Complainant failed the USMLE

Step 1 and Step 2 CK tests. ECFMG further denies that Complainant's test scores

were "fabricated". See Appendix C4, p7, outside text paragraph 10.

30. Plaintiff articulates that after falsely denying the truth under penalty of perjury, the

operatives of ECFMG began to demonstrate that they had the right to conceal the

material evidence of the facts, which includes plaintiff's original test scripts that he

had earnestly requested to be subpoenaed as evidence in his case. To this effect Ms.

Faye Riva Cohen stopped acting as plaintiff's lawyer and rather acted as ECFMG's

spokesperson, who subtly defended their position,[16]

31. Plaintiff has sufficient knowledge to form a belief that in an effort to protect the

operatives of defendant ECFMG from being found guilty of perjury, defendant Ms.

Kimberly Griffin did not subpoena the key evidence from ECFMG but rather

confined plaintiff's case on her desk in a scheme to fool plaintiff with fake legal

process that was leading to nowhere. This became evident when Mr. Ryan Allen

Hancock (Assistant Chief Counsel of PHRC) surprised Ms. Griffin and her team of

conspirators with his unexpected intervention from outside the conspiracy ring.

Plaintiff has sufficient knowledge to form a belief that Mr. Hancock's intervention

was prompted by the office of the Attorney General, which plaintiff consulted a

second time.

32. Plaintiff articulates that besides emphasizing that ECFMG had appeared before

PHRC in the past on at least two different occasions with similar motions that were

rejected, Mr. Hancock also identified with plaintiff's position and challenged

ECFMG and their lawyer to avail the material facts on the case for examination.[17]

---

7.    [16] "I spoke last week to ECFMG's Vice President of Operations, and yesterday I spoke with the
attorney for USMLE…. She is to get back to me about what can be done to provide you with more
information about the test results. She says that some of this information is confidential, and if that is
the case, the only way we can gain access to it and that isn't certain, is if a judge forces them to
provide it. That would be very expensive proposition, especially if Morgan Lewis is involved". See
Appendix B3 (2nd highlight from the top - yellow).

8.    [17] "As moving party, the burden on Respondent is to plead and prove that there is no dispute
regarding any material issues of fact and that Respondent is entitled to judgment as a matter of law.
The non-moving party is entitled to have all issues viewed in a light most favorable to his/her position.

33. Plaintiff has sufficient knowledge to form a belief that, as one of the outcomes of Mr. Hancock's challenge requiring ECFMG to submit plaintiff's test scripts and other material evidence to PHRC for reconciliation with the claims made by both parties, the operatives of ECFMG rather engaged in a justice obstruction action. Specifically the operatives of ECFMG have separated and moved the Office of Registration involved in plaintiff's complaint from Philadelphia jurisdiction to another location in another State (specifically Newark in New Jersey), which would not have been noticeable to plaintiff if he had not been keeping records. Notably the Credentials department, which is involved in one piece of cover-up, has been strategically retained in Philadelphia. [18]

34. Plaintiff articulates that the Registration entity is at the center of his complaint of forged test scores and the intention behind ECFMG's strategy to move this department from Philadelphia, in the face of being required by law to fulfill the burden of proof, is a self-testimony that is further highlighted by the statement of acknowledgement issued by the Prometric Testing Center to plaintiff, upon his completion of the USMLE Step 2- CK. [19] See Appendix B5 (highlighted in yellow).

---

Tom Morello Const. Co., Inc. v. Saving Loan Ass'n., Pa. Supper. 329. 421 A.2d 747 1980); Miller by Miller v. Leijedal, 71 Pa. Cmwlth. 372, 452 A. 2d 540 (1980) .... See Appendix B4 p 3, outside text, pg. 3; paragraph 7 (highlighted).

9. [18] ECFMG's address for Registration and Credential Services when plaintiff started business with the organization and by the time he filed his complaint at PHRC in March 2009 (and as of September 9, 2009) was: Education Commission for Foreign Medical Graduates. Attn: Registration and Credentials Services, 3624 Market St. 4th Floor, Philadelphia, PA 19104 -2685, USA. The current address for the same entity, which was not officially notified to PHRC to be brought to the attention of plaintiff as of January 25, 2011, is ECFMG/Registration & Credential Services, P. O. Box 48087, Newark, NJ 07101 – 4887, USA. See Appendix B5 and B6. (Highlighted).

10. [19] "It is expected that your scores will be made available to the registration entity for mailing within six weeks of the date that you took the examination." See Appendix A 5.

35. Plaintiff prays the Court to construe that in furtherance of their concealment strategy,
ECFMG also obstructed justice by embarking on defensive tactics that shirk
responsibility and the burden of proof to another organization, NBME, as indicative
of a statement made by ECFMG's lawyer under penalty of perjury declaring,
"ECFMG further denies that Complainant's test scores were "fabricated". By way of
further answer, the National Board of Medical Examiners ("NBME") is responsible
for determining the results of USMLE exams and for issuing the score reports for
these exams". See Appendix C4, within paragraph 7 at page 3 (Highlighted).

36. Plaintiff articulates that contrary to the defendant's lawyer defensive tactic,
ECFMG's policy at the time of the action of its operatives against plaintiff indicated,
"Once your result is available, ECFMG will issue your score report. Results for Step
1/Step 2 CK are typically available within three to four weeks after your test
date...."See Appendix C5 (highlighted), "ECFMG 2008 Information Booklet-
Examination Requirements, Reporting of Score", p 20. In arguendo that ECFMG
changed its practice and handed over to NBME this major task they were noted of,
there was no announcement posted on the ECFMG's announcement board to that
effect, as ECFMG is accustomed to doing, thus supporting the belief that ECFMG
changed the words in the policy to represent something completely unreal and thus
misleading.

37. Plaintiff prays the Court to construe that after denying what was already reflective of
their policy at the time of their action, the operatives of ECFMG modified their policy
to support their claim, which is consistent with ECFMG's deceptive tactic of
manipulating policies to hide the wrongs they have done plaintiff. Specifically the

operatives of ECFMG changed their policy statement after the facts to read: "NMBE

is responsible for determining the results of USMLE exams and for issuing the score

reports." See Appendix C 5 versus C6 (ECFMG 2009 Information Booklet –

Examination Requirements, Scoring p20.) and B11 (highlighted).

38. By way of further elucidation, plaintiff prays the Court to admit as substantiating

evidence and be convinced of plaintiff's allegation that Bhushan et al (2003), as

experts on the information about the USMLE, have advised IMG candidates stating,

"Do not contact the NBME, as all IMG [International Medical Graduates] exam

matters are conducted by the ECFMG. The ECFMG also publishes the information

Booklet on ECFMG certification and the USMLE program ....together with

application forms....The ECFMG administers Steps 1 and 2.", See Appendix A11 for

student guide by Bhushan et al, 2003, Page 52 (highlighted).[20]   The authors provide

further highlights on ECFMG's responsibility towards IMGs regarding USMLE test

scores, which in a way contradicts what the lawyer of the defendant ECFMG stated to

PHRC. Bhushan et al, 2003 have stated: "The USMLE is a standardized licensing

system that gives IMGs a level playing field; it is the same exam series taken by U.S

graduates even though it is administered by the ECFMG rather than by NBME." See

Appendix A 10

---

11. [20] Bhushan et al (2003) have stated: "The USMLE is a standardized licensing system that gives IMGs
a level playing field; it is the same exam series taken by U.S graduates even though it is administered
by the ECFMG rather than by NBME." See Appendix A10. The same guide also advises candidates
stating: "Do not contact the NBME, as all IMG [International Medical Graduates] exam matters are
conducted by the ECFMG. The ECFMG also publishes the information Booklet on ECFMG
certification and the USMLE program ....together with application forms....The ECFMG administers
Steps 1 and 2.", See Appendix C8 for student guide by Bhushan et al, 2003, Page 52. See Appendix
.A11

39. Plaintiff prays the court to construe that in addition to the many inconsistencies demonstrated in statements and policies by the defendant ECFMG, preponderance of evidence have revealed ECFMG's tactic to conceal plaintiff's excellent test scores out of prejudice.[21] This include the harassing phone calls plaintiff received on his cell phone from unanimous individuals several times within three weeks period, on the average of two times a day, starting from August 20, 2008, (the day after plaintiff took the USMLE Step 1 test) up to September 8, 2008 (Few days before ECFMG issued him the forged lowest failing test score on USMLE Step 1). In these phone calls the unanimous individuals demonstrated curiosity about whether plaintiff was himself or somebody other than himself who takes money to do something for other people. See Appendix C1 for a list of phone numbers.

40. IN ANOTHER DEVELOPMENT, Plaintiff further reveals that the operatives of defendant ECFMG have also extorted from him $55.00 on false claims of re-checking his test scores on USMLE Step 1.[22]

41. Ms. Mary B McAvinue, as a representative of defendant ECFMG, made a false statement about score recheck by simply writing a subtly dismissive letter to plaintiff on or about October 9, 2008 when pressured by plaintiff's email complaint on the

---

[21] Plaintiff again has sufficient knowledge to form a belief that he was personally targeted on pretext by the operatives of defendant ECFMG when they sent to plaintiff unprecedented email messages on the pretext of warning all candidates about the USMLE examinations. See Appendix C9 (highlighted)

[22] Plaintiff prays the Court to construe that even though he was aware that a score recheck was not genuinely needed to correct the problem the operatives of defendant ECFMG had created, he still filed for a test score recheck on or about September 12, 2008 as a way to register his dissatisfaction and stamp the records with his legal right to protest. The filing of the test score recheck cost plaintiff $55.00 in fees. Plaintiff did not file another test score recheck for USMLE Step 2-CK because of the dishonest way the operatives of ECFMG had conducted themselves in the first experience. The procedure stipulated for test score recheck is stated on the score recheck form. [22]See Appendix D1, (Highlighted).

same date lamenting about the fact that he had been ignored on his request for test score rechecks that had cost him $55.00.[23]

42. Plaintiff prays the Court to construe that despite the fact that Ms. Mary B McAvinue was clear about ECFMG's direct involvement in the supposed test score recheck that cost plaintiff $55.00, even though it was not done and that plaintiff felt justified about demanding a comprehensive evidence of the said action in view of ECFMG's betrayal of trust, defendant's lawyer Ms. Christina Joy F. Grese conveniently twisted the fact to shirk the burden of proof to NBME, as had been her tactic.[24]

43. Again, plaintiff reveals that when ECFMG's operatives influenced Ms. Cheri M. Kerchen of NBME to play ECFMG Committee to respond to plaintiff's request to have the ECFMG Committee review his test scores besides the test score recheck he had requested with a score recheck form, she demonstrated evasive tactic by not placing herself in a position to talk about the issuance of plaintiff's test score report

---

[23] Ms. Mary B. McAvinue lied about plaintiff's test score recheck stating, "In accordance with your recent request, we have rechecked the responses from your examination. The result of the recheck process confirms that your score is accurate as originally reported....." See appendix D2 (highlighted).

12. [24] Ms. Christina Joy F Grese stated to PHRC: "ECFMG received Complainant's recheck form and fee on September 16, 2008. On September 30, 2009, ECFMG forwarded Complainant's recheck form to NBME. NBME then conducted its review of Complainant's test score and sent ECFMG a report stating that all scores were the same as originally reported. ECFMG then communicated these results to Complainant via Ms. McAvinue's letter of dated October 9, 2008." See Appendix C4, p4, outside text paragraph 10, p 3, (yellow highlight- 3rd from the top). Plaintiff has sufficient knowledge to form a belief that the lawyer of the defendant ECFMG, Ms. Christina Joy F. Grese, made the twist of the facts as a convenient defensive tactic to shirk her client's responsibility because plaintiff had requested PHRC representatives to subpoena evidence of test score recheck to justify ECFMG'S decision to exact $55.00 from him. Plaintiff articulates that the defendant's lawyer has demonstrated inconsistency on dates moving from September 16, 2008 to September 30, 2009 and back to October 2008 and while plaintiff assumes that to be a typological error, he also maintains that it is not the only inconsistency Ms. Grese has shown in her position. The lawyer stated, "ECFMG then communicated these results to Complainant via Ms. McAvinue's letter of dated October 9, 2008"without realizing the contradiction in her own justifying declaration elsewhere in the same document that argued that ECFMG does not communicate scores to candidates by mail or email.

she was aware was not NBME's responsibility. She rather talked about technical

issues that she was aware were of no concern to plaintiff and were known to be the

responsibilities of NMBE or Prometric. See Appendix D6.& D7 (highlighted in

yellow-last three lines)

44. IN FURTHER DEVELOPMENT, Plaintiff articulates that the operatives of defendant

ECFMG have again engaged in cover-ups and retaliatory acts against him at

plaintiff's own expense by luring him to put down $1295.00 as a registration fee for

another exam and refusing to issue him a permit to take the test. Plaintiff has

sufficient knowledge to form a belief that luring him to register for this test was a

scheme designed by a conspiracy network involving the operatives of defendant

ECFMG, and its purpose was to subtly divert attention from the main issues plaintiff

had complained about to PHRC, which was the suppression of his test scores.[25]

45. Plaintiff articulates that, as a tactic to retaliate against him and cover up their previous

wrongdoings at the same time, ECFMG operatives have not only made it

extraordinary hard for him to take the test they have lured him to put down $1295.00

---

[25] Plaintiff has sufficient knowledge to form a belief that the defendant ECFMG took the above
preemptive action to make his complaint of discrimination at PHRC irrelevant. This third exam named
USMLE Step 2-CS, which is the third of the series, has claimed plaintiff's money since July 23, 2009
but as of the time of filing this complaint in Court, ECFMG has not issued plaintiff a test permit to take
the exam. Plaintiff prays the court to construe that the operatives of defendant ECFMG induced him to
put down $1200.00 about July 23, 2009 to register for this third exam and it was a gimmick to mislead
plaintiff's prospective advocates into believing that there was no cause for action regarding his
complaint of discrimination at PHRC. Plaintiff's lawyer Ms. Faye Riva Cohen, demonstrating being
deceived and misguided in the advice she gave to plaintiff to register for a third exam while problems
were still pending about the earlier ones he had taken, and when plaintiff later questioned the logic of
making him do that she gave an evasive response that favored ECFMG and slapped plaintiff in the
face. Ms. Faye Riva Cohen revealed her true prejudice about plaintiff stating, "Let me start by saying
that I did not have enough information available to me to advise you to register for the new test. I
believe I told you that you should not disadvantage yourself by not registering, but I do not feel that
you will do well on this test unless you also sign up for a testing course." See Appendix B3 (1st Green
highlight from the top of page)

to register but are also dragging him to a point where they will declare forfeiture of his money for not taking the test they have hindered him to take with tactical manipulations of their policies.[26]

46. Plaintiff reveals that, as way to justify their hindering tactic, the operatives of ECFMG have arbitrarily declared an invalidation of plaintiff's "Certification of Identification Form" (hereinafter CIF), which had a validity period of up to 2013 and empowers plaintiff to take the complete series of USMLE administered by ECFMG, namely Step 1, Step 2-CK, and Step 2-CS. See Appendix D3 and D4. [27]

47. Plaintiff reveals that the defendant's lawyer has conveniently justified the unlawful and retaliatory invalidation of plaintiff's CIF stating, "ECFMG further admits that by May 20, 2009, when ECFMG modified its USMLE application process for medical school graduates, complainant had a CIF, certified only by a Notary Public, on file for approximately eighteen months. By way of further information, when ECFMG

---

[26] Plaintiff prays the Court to construe that under color of regulation, the operatives of defendant ECFMG have frequently and flippantly manipulated their policies about the qualifying conditions to take the test, which has been done in a way that subtly holds plaintiff alone to different rules and demands. To this effect, the lawyer of defendant ECFMG has conveniently stated in her client's defense, "ECFMG admits that Complainant cannot take the USMLE Step 2-CS exam until ECFMG receives verification from his graduate status from his medical school. ECFMG further admits that USMLE Step 2-CS is one of the three examinations that an applicant for certification must meet to be certified by ECFMG." See Appendix D8, p4, outside text paragraph 11.

[27] ECFMG policy about CIF, at the time plaintiff got his identity certified by the organization, indicated: "Medical school graduates must print a certification of identification form (Form 186) after completing the online part of the application and send the completed Form 186 to ECFMG. Once accepted by ECFMG, this form remains valid for on-line applications received during the following five-year period, and subsequent applications during this period can be completed entirely on-line. Form 186 must be completed by the graduate and certified by an appropriate official. This certification must be current: the official must have signed the form within four months of its receipt by ECFMG." See Appendix D10. Plaintiff articulates that he fulfilled the requirements of the CIF in January 2008 and obtained a status to take all the three sets of the USMLE administered by ECFMG within five years. ECFMG's policy that was in operation at that time was completely fulfilled by plaintiff. Plaintiff articulates that ECFMG's instructions for completing the CIF listed Notary Public as one of the officials authorized to fully and adequately certify the CIF. Accordingly plaintiff had the CIF certified by Notary Public in the United States

modified the USMLE application process, it notified applicants that they may be

required to complete a new CIF, even if they previously had a valid CIF on file with

ECFMG," See Appendix D8, p3, outside text paragraph 7.

48. Plaintiff articulates that ECFMG has a primary-source verification of his medical

school graduate status directly from his medical school, as attested by Bowen in his

letter dated September 27, 2008. In the light of this plaintiff has sufficient knowledge

to form a belief that ECFMG deliberately instituted a change in the CIF policy to

retaliate against him for daring to be self-assertive to challenge their unlawful actions

against him.[28]

---

[28]The retaliatory character of the policy is revealed by this background: Notably Mr. Terry Williams
delayed to redraft plaintiff's complaint until he heard that the Attorney General's office had
recommended PHRC to plaintiff. Mr. Williams demonstrated that he had had contact with ECFMG
and favored them over plaintiff. He attempted to introduce some clauses into the draft of plaintiff's
complaint to destroy its credibility and also take it away from Philadelphia jurisdiction. When plaintiff
noticed it and edited the draft to reflect his original complaint and sent it back to Mr. Williams about
May 16, 2009, ECFMG made a strategic move to attack the qualification of plaintiff to take the tests.
On the pretext of modifying its CIF policy ECFMG made an instant decision to declare invalidation on
plaintiff's CIF on May 20, 2009. To make it look like a general requirement to be considered in the
future even though they had already applied it on plaintiff on the same date, they posted it on their
announcement board with misleading sentence structure stating, "On or about May 20, 2009, ECFMG
will modify the USMLE application process and the process for requesting Step1/Step 2CK eligibility
period extensions for international medical graduates." Despite the fact that they had already applied
this change on plaintiff this program did not appear in their established policy with added loopholes
until about six months later. See Appendix D9 (Highlighted)

13. "ECFMG denies that Complainant's CIF is still valid. ECFMG admits that because ECFMG has not
received primary-source verification of complainant's medical education credentials, and because
Complainant's medical school does not participate in EMSWP, his medical school must verify his
status as a graduate through the CIF." See Appendix D8, p4, outside text paragraph 10.. Plaintiff
articulates that the statement by Ms. Christina Joy F. Grese justifying ECFMG's declaration of
invalidation of plaintiff's CIF is based on false premises, as ECFMG is in possession of plaintiff's
official medical school academic transcript, which is a primary source-verification of plaintiff's
medical graduate credentials. ECFMG representative Bowens sent to plaintiff a letter dated September
27, 2008 in which he makes a more explicit acknowledgement of ECFMG's possession of plaintiff's
medical education credentials. Bowens specifically stated, "The Education Commission for Foreign
Medical Graduates has received your medical education credentials," See Appendix E2 (Highlighted).
Plaintiff articulates that Bowens, by means of the above statement, acknowledged in unambiguous
terms the documents that Ms. Rosemary Carlin had handed over to him recognizing that ECFMG's
policy at the time stated, "If ECFMG is unable to obtain your final medical school transcript directly

49. In settling false premises for justification, Ms. Christina Joy F. Grese struggled with the truth by playing upon the word "documents" to cheaply explain away the evidence that ECFMG has primary source verification of plaintiff's medical graduate status.[29]

50. Plaintiff has sufficient knowledge to form a belief that the secret behind Ms. Grese's twist of the facts about the primary source-verification of plaintiff's medical graduate status is ECFMG's massive discomfort about plaintiff's academic background, which they consider an inconvenient truth that ridicules the kind of test scores they have forged for plaintiff. .[30]

---

from your medical school, ECFMG will contact you and request you to submit to ECFMG copies of your final medical school transcript...." See Appendix D5 (Highlighted).

[29] "ECFMG further admits that Complainant sent a letter dated September 27, 2008 addressed to Rosemary Carlin (Quality Control Coordinator) and "ECFMG (Credential Committee & ECFMG Committee)" "By way of further answer, Complainant's September 27, 2008 letter is a document, the terms of which speak for themselves, and ECFMG denies any and all allegations to the extent they are inconsistent with the terms of the written document/or do not reflect the document in its entirety." See Appendix C4; outside paragraph 9; at page 3 (marked green), Also Appendix D10 (highlighted)

14. [30] Ms. Christina Joy F. Grese demonstrated ECFMG discomfort about knowing the detail of plaintiff's academic background by explaining it away. To this effect she stated: "ECFMG is without knowledge or information sufficient to form a belief as to Complainant's "proven academic stand from High School through Medical school and post medical school" and therefore denies Complainant's allegations regarding the same." See Appendix C4, p3, outside paragraph 9 (highlighted yellow). Plaintiff has sufficient knowledge to form a belief that in line with their scheme to justify their actions, the operatives of ECFMG and their lawyer have deemed it opportune to make a loophole of the distant connection between ECFMG and plaintiff's medical school that requires plaintiff's facilitation. Defendant's lawyer has considered this as a loophole to subtly raise doubt about plaintiff's facilitation, as a way to strengthen her client's wavering credibility regarding the humiliating test scores they have forged for plaintiff. Ms. Christina Joy F. Grese demonstrated this tactic through a statement she made to this effect to PHRC about August 7, 2008. Plaintiff articulates that in support of his allegation that ECFMG and their lawyer is making a loophole of the distant connection between ECFMG and plaintiff's medical school, Ms. Christina Joy F. Grese both contradicted herself and betrayed her strategy at the same time by stating, "ECFMG further admits that its records reflect that Complainant submitted documentation indicating that he graduated from Brooklyn College of City University of New York in 2009 with a Master of Public Health degree and with a 3.92 GPA." See Appendix

51. Plaintiff has sufficient knowledge to form a belief that ECFMG suddenly changed their policy to make plaintiff's valid CIF inadequate only for a purpose. Plaintiff articulates that in his decision to scrutinize ECFMG's cover-up claims indicating that they were unable to obtain a primary source- verification for his medical graduate credentials, he demanded postal receipts or evidence of postage supporting ECFMG's claims regarding the present and past requests they had made to his medical school to that effect, to make it possible for his family lawyers back in Ghana track the request, especially because his medical school officials were denying same. To plaintiff's surprise ECFMG were not able to pass that challenge.[31]

52. Plaintiff has sufficient knowledge to form a belief that his critical inquiry, that closed the loopholes the operatives of ECFMG were invoking to make his medical graduate status look uncertain, as defensive mechanism, brought about the sudden change in ECFMG's policy that replaced their earlier policy that stated: "ECFMG will not send the verification form to the applicant for transmittal ….." See Appendix E2.

---

C4, p 6 & 7, paragraph 18, (marked orange). Plaintiff articulates that he facilitated getting his academic records from the Brooklyn College of the City University of New York to ECFMG through his transmittal in the same way he obtained his academic records from the University of Ghana Medical School and transmitted it to ECFMG. Despite the fact that the information in either of them bears testimony to each other, Ms. Grese intentionally denies the one whose origin is outside the United States while admitting of the one close by.


15. [31] An operative of ECFMG, who gave his or her name as NES, indicated that the organization does not keep receipt or any evidence of postage on record about such enterprise. He or she also declined Plaintiff's request for another request to be sent by the U.S express mail at his expense and for a postal receipt that could be used to track the request. Plaintiff made the suggestion understanding that ECFMG's policy at the time stated, "ECFMG will not send the verification form to the applicant for transmittal to the medical school …." See Appendix E2

53. Plaintiff has sufficient knowledge to form a belief that ECFMG's policy on the new

CIF is designed in accordance with ECFMG's abusive strategy to look precautious,

righteous, and credible by making plaintiff's medical graduate status look uncertain

for their retaliatory and cover-up purposes, as evidenced in the elements of the policy,

which are already accomplished at a superior level through plaintiff's official medical

school transcripts and other testimonials in ECFMG's possession.[32][33]

54. Plaintiff articulates that for a second time ECFMG has declared a rejection of another

CIF that his medical school has submitted in accordance with ECFMG's new

stipulations. ECFMG's statement rejecting his new CIF does not take into account its

policy that gives an applicant twelve months to submit the required documents for the

completion of a test registration section. Plaintiff has sufficient knowledge to form a

belief that ECFMG has undertaken this action as a way to introduce another

stipulation that they consider harder and more burdensome for plaintiff to surmount.

---

16. [32] "If you cannot appear before an authorized official of your medical school to have your Form 186 certified, it can be certified by a consular official. Notary Public, First class Magistrate, or Commissioner of Oaths. You must then send the Form 186 and all additional documents required to complete your application to your medical school. .... This means that, if your Form 186 is certified by a consular official, Notary Public, First Class Magistrate, or Commissioner of Oaths, you must send your form 186 and all additional documents as outlined below, to your medical school for verification and your medical school must then send your Form 186 and all additional documents to ECFMG" See Appendix E3.

17. [33] Declaration on the new CIF states: "I hereby certify that the photograph, signature and information entered in all parts of this form, including medical school, attendance dates, and graduation and degree dates accurately apply to the individual named above and that this individual is a graduate of the institution indicated below." See Appendix E4.

18. The requirement on plaintiff to have the above statement endorsed again by his medical school officials on the new CIF defiles every logic that plaintiff's authentic medical school academic transcript incorporates all the elements on the document, including statements about date of his graduation, official signature, and exclusive official stamps, and other revealing features listed by ECFMG as marks of a primary source-verification of a candidate's medical graduate status.

foreseeable. Again, Plaintiff never expected that ECFMG would act in such a dishonest manner to completely destroy his trust and thereby make his desire for any further dealings with them so uncertain. In declaring invalidation of his valid CIF and requiring him to undertake an action that requires plaintiff to make extra financial commitment, which he judges himself to be incapable of doing, defendant ECFMG has demonstrated that they owe plaintiff for all his registration money for Step 1, Step 2-CK, and Step2 –CS.

57. Plaintiff has long recognized the abusive tactics being used by the operatives of defendant ECFMG to stress him out and has therefore considered removing himself from the most stressful situation of his life, but the operatives of defendant ECFMG and their lawyer Ms. Christina Joy F. Grese have indicated that they will not let him do so with even the minutest dignity.[35]

58. COMES NOW the conspiracy scheme forged at PHRC to deprive plaintiff his constitutional rights to due process and respectful legal representation by an attorney. On March 11, 2009, plaintiff's written complaint was delivered at PHRC upon earlier consultation with the Website of the Attorney General.[36]

---

19. [35] Specifically defendant's operatives have announced a new policy to exact a fee of $100.00 if Plaintiff decides to withdraw his money or forfeit it entirely on the second year of putting the money down for registration if he does not write to demand a refund of his money. See Appendix E1 Plaintiff prays the Court to construe that the defendant's lawyer has argued that plaintiff needs to write to request refund of his money but her client's strategy of separating and re-locating their Registration Office to another State (New Jersey) amidst their persistent claim that PHRC has no jurisdiction over plaintiff's complaints, has made it complicated for plaintiff to see his way clear to respect that instruction for fear of falling into a legal trap that will make the defendant get away with an abuse of him.

[36] Plaintiff contacted the Attorney General's office on the same day he filed his case at PHRC and when the advice came from there for plaintiff to file his case at PHRC he had already done so.

and who sent it to you. .... As I told you, they are one of the largest law firms in the

world, and they charge their clients quite a bit. I don't know why they are not writing

to me. But perhaps the PHRC did not notify them of my entry of appearance." See

Appendix C2 yellow- highlight).

62. Ms. Kimberly Griffin finally wrote to plaintiff after his second query on his lawyer,

Ms. Cohen, regarding her being bypassed by the opposing lawyer. Defendant

Kimberly Griffin wrote to plaintiff with copies of the same documents the

defendant's lawyer had already sent to him. The collusion Ms. Kimberly Griffin had

formed with ECFMG and their lawyer was revealed in her statements and actions.

Ms. Griffin stated in this letter: "The Pennsylvania Human Relations Commission's

(Commission) legal staff will be submitting a response to the Motion in the near

future. The Motions Commissioner designated to review the case will then make a

decision on the Motion. .... While there is no requirement that you formally reply to

the Motion, this notification is sent to provide you (or your attorney, should you have

obtained one) with opportunity to enter a reply. Should you wish to do so, please

forward your reply to me at the address listed above  within ten days of your receipt

of this letter." (August 17, 2009). See Appendix E5. **(marked orange)**

63. Plaintiff prays the court to construe that Ms. Griffin also bypassed his lawyer to send

to him this letter and conveniently expressed uncertainty about plaintiff retaining  a

lawyer despite the fact that plaintiff's lawyer had sent her a " Notice of Appearance "

more than a month before, specifically about June 30, 2008,  in accordance with

PHRC rules. See Appendix E6, E7, & E8. Above all else Ms. Kimberly Griffin

demonstrated the biggest contradiction by indicating on the same letter that a copy of

it had been sent to Ms. Faye Riva Cohen whose only relationship with plaintiff was in

attorney –client setting. In both regards Ms. Griffin demonstrated inconsistency that

supports plaintiff's belief about her involvement in collusion with defendant ECFMG,

and their lawyer Ms. Christina Joy F Grese.

64. Moreover, Ms. Kimberly Griffin's above action demonstrated collusion, as evidenced

in the contradiction it posed to her earlier notification she had sent to plaintiff about

June 7, 2009 stating, "You need not employ an attorney in any matter before the

Commission. If you do hire an attorney, the Commission must receive his/her Notice

of Appearance. After the Notice of Appearance is received from an attorney,

Commission staff will work through the attorney, not directly with the complainant".

See Appendix A8 (marked orange). Ms. Faye Riva Cohen sent Ms. Griffin a notice of

appearance as plaintiff's lawyer about June 30, 2009, as indicated in paragraph 63

and the opposing counsel and Ms. Griffin herself bypassed this lawyer in late July

and August 2009.

65. (c) Plaintiff has sufficient knowledge to form a belief that Ms. Kimberly Griffin

demonstrated direct knowledge, personal direction, and acquiescence when

ECFMG's lawyer Ms. Christina Joy F. Grese refused to recognize plaintiff's right to

have an attorney and tactfully excluded plaintiff's attorney from what turned out to be

a fake legal proceedings.[37]  See also.[38]

---

[37] Ms. Faye Riva Cohen said in her own defense when defendant's lawyer contacted plaintiff directly
apparently without his lawyer's knowledge, "...Although PHRC knows of our involvement, Morgan
Lewis apparently does not as yet" (July 29, 2009). See Appendix F6. Attorney Faye Riva Cohen
supported her defense by sending to Plaintiff a copy of her signed "Notice of Appearance". See
Appendix B3, (Green-highlight- 1st from the top).

1.  [38] Plaintiff articulates that for a second time, after he had had a discussion with his lawyer, the lawyer
of defendant ECFMG, Ms. Christina Joy F Grese of Morgan Lewis Law Firm, again bypassed her to

66. (e) Plaintiff has sufficient knowledge to form a belief that Ms. Faye Riva Cohen

intentionally and methodically declined to render to him the legal services he had

paid her for in yielding to the undue influence of Ms. Kimberly Griffin and Ms.

Christina Joy F. Grese, as evidenced in the inconsistencies of the reasons she faked to

justify her position.[39] See also.[40]

---

contact him with a document entitled "Respondent Answer, New Matter" about August 7, 2009. Ms. Faye Riva Cohen again revealed Ms. Kimberly Griffin's refusal to recognize plaintiff's right to retain an attorney through a statement she made: "As I told you, they are one of the largest law firms in the world, and they charge their clients quite a bit. I don't know why they are not writing to me, but perhaps the PHRC did not notify them of my entry of appearance." (August 17, 2009). See Appendix C2 (marked orange).

20. [39] Ms. Faye Riva Cohen stated to this effect, ""I believe that Brian Lambert, the Firm's Accounts Manager, contacted you to inform you that your retainer has been used, and we would require an additional retainer to continue to represent you and respond to the motion to dismiss. As we did not receive payment, we did not respond. Although it is always preferable to respond, we can always wait to see what the PHRC lawyer says if you don't want to use your funds for this purpose. I am not going to contact the Respondent's lawyers at this time as I am certain they want to learn first if their motion to dismiss was successful," See Appendix C3. Ms. Faye Riva Cohen declined to respond to a "motion to dismiss" filed by the opposing counsel. Notably, Ms. Faye Riva Cohen's first engagement at PHRC on behalf of plaintiff since taking plaintiff's money in an amount of $1875.00 on June 8, 2009 would have been responding to the motion to dismiss filed by plaintiff's opponent. Ms. Faye Riva Cohen justified her claim of insufficient retainer as a reason of not being able to respond to the opposing counsel's motion to dismiss by stating, "…. We bill you for the time spent on your matter, which includes all telephone calls, emails, etc., including time spent talking to the client, the PHRC, opposing counsel, and anyone else. This is not a results-oriented system, as we cannot and do not guarantee results…" See Appendix D5 (yellow highlight- 1st from the top). Obviously she was referring to fewer than eight emails and five phone calls plaintiff had exchanged with her while trying to convince her to give him genuine representation.

21. Ms. Faye Riva Cohen demonstrated inconsistencies in her excuses about the decline of legal services to plaintiff. Notably the same Ms. Cohen who gave an excuse to explain that the opposing counsel probably did not know that she was representing the plaintiff at PHRC also conveniently declared in this statement and others that she had had contact with the opposing counsel before the motion to dismiss was filed and billed plaintiff for it.

[40] Plaintiff articulates that he responded to the "motion to dismiss" before Mr. Hancock got involved but the conspirators attempted to use his lawyer, Ms. Faye Riva Cohen, to downgrade his response to accomplish their scheme to declare plaintiff's complaint dismissed without merit To this effect Ms. Faye Riva Cohen stated, "I have received the Respondent's Answer and Motion to Dismiss in your PHRC matter…Frankly I don't think the civil rights argument is the best argument, as so many foreign students who take the exam pass; it would be hard to say they discriminate against students based on their national origin. You may have better grounds under a contract theory, which also has a 4 years statute of limitations. A fraud theory would be a shorter statute, but is very difficult to prove…." See Appendix C3 (green highlight).

67. (f) Plaintiff articulates that Ms. Faye Riva Cohen again demonstrated being misguided by the defendant ECFMG and Ms. Kimberly Griffin when she put out efforts to sway plaintiff from the pursuit of justice. To this effect Ms. Cohen stated, for instance, "We have researched the case law in this area and we were not able to find any cases involving your issues. I can open a dialogue with the attorney, but I am certain they will put forth a fight, especially if the law is not supportive of you. In any event your initial retainer has been exceeded, and we can't go any further until we receive another retainer. Unfortunately these matters are very time intensive and expensive." See Appendix G6.[41]

68. (b) Plaintiff reveals that Ms. Cohen ignored to pay attention to the numerous contradictions that the operatives of ECFMG had demonstrated in their dealings with plaintiff because of the pressure on her to join the proven collusion that was in existence before plaintiff retained her. Consequently she moved away from the favorable position she shared with plaintiff to share in the prejudice that underlined the antagonistic actions of the operatives of the defendant ECFMG. [42]

69. (O) Plaintiff has sufficient knowledge to form a belief that for the benefit of the conspirators, Ms. Kimberly Griffin suppressed plaintiff's response submitted to

---

[41] Plaintiff knows that he is not a lawyer, but has sufficient knowledge to form a belief that if an organization licensed to do business with the public to promote the development of the nation, compromises on integrity and patriotism or abuse public trust and takes a qualified persons money to certify his professional knowledge, and out of prejudice and under color of law suppresses his excellent test scores and counterfeit deeds or forge deeds to sabotage him, and then engage in cover-ups and continue to lie under penalty of perjury to obstruct justice and intentionally afflict on him emotional distress, , there is a law in the United States that states that they cannot do that.

[42] Stated by Ms. Faye Riva Cohen: "I have two questions for you (1) did you take any type of preparatory course you paid for, for the exam? There is a direct correlation as to how people do on these types of tests and whether they take a course, especially as you attended medical school in Ghana, and that was some time ago...."See Appendix B 3 (yellow highlight – 3rd from top).

PHRC for the "motion to dismiss", and settled plaintiff's case in limbo until Mr. Ryan

Allen Hancock got involved to temporarily interrupt the course of justice obstruction

championed by Ms. Kimberly Griffin. Plaintiff's lawyer, Ms. Faye Riva Cohen, had

earlier demonstrated indifference and switched to contradictions when Mr. Hancock

got involved. [43]

70. Plaintiff articulates that his case settled in limbo again at PHRC after the drama of the

"motion to dismiss" because of Ms. Griffin's bias refusal to observe PHRC's

procedure requiring her to gather the factual evidence from the defendant ECFM G to

corroborate with their claims, as had been made clear in the legal guidance exposed

by Mr. Hancock.

71. Plaintiff reveals that on the first year anniversary of filing his complaint at PHRC, the

scheme to fool him with fake due process became evident when Plaintiff wrote a

letter on or about May 16, 2010 to PHRC Regional Office in Philadelphia where his

case was supposed to be docketed, to request that his case be moved to the next stage

where the evidence ( those to be subpoenaed from ECFMG and those presented by

him) would be presented to the Commissioners of PHRC for consideration, given

that the defendant ECFMG had rejected fair settlement and motioned for the case's

---

[43] Ms. Faye Riva Cohen Stated in contradiction to her earlier statements: "As you are aware, the Respondent has filed a Motion to Dismiss and an Answer with New Matter.... Originally we were told that the PHRC lawyer will respond to the motion to dismiss, but Mr. Hancock informs me that we would be required to do so if we still represent you. As you have not paid the past due amount or a new retainer, we will be withdrawing from your case....The legal system is geared to those with the most funds, and our withdrawal doesn't reflect on the merits of your case, but the terms of the Fee Agreement must be met. After we withdraw we will inform Mr. Hancock that the PHRC can respond to the motion to dismiss. In any event, our past due fees must be paid or they will continue to accrue interest, collection costs, and possible filing fees, if we have to collect them through the court system" (Nov. 9, 2009). See Appendix D5 (yellow highlight -2[nd] from the top)..

dismissal. In particular plaintiff's letter challenged Ms. Kimberly Griffin to

demonstrate impartiality and propriety by heeding to his request. [44]

72. Plaintiff has sufficient knowledge to form a belief that, Ms. Kimberly Griffin was

uncomfortable about the challenge he threw at her, that required her to be neutral in

the interest of justice. Consequently Ms. Kimberly Griffin teamed up with defendant

Ms. Suzanne Martinez, as her accomplice, to present him the final phase of the fake

legal process that was predetermined. See Appendix F2 and F3.[45]

73. Plaintiff has sufficient knowledge to form a belief that his decision to hire a new

lawyer on September 13, 2011, in the person of Lawyer Brian Mildenberg, to

demonstrate his seriousness and determination about justice, galvanized the

conspiracy network to act swiftly through the defendant Ms. Martinez. The

conspiracy network had been comfortable with the notion that plaintiff did not have

---

1. [44] Plaintiff articulates that in response to his letter of May 16, 2010, he received a letter dated June 15, 2010 supposedly coming from Ms. Arberdella White –Davis and it was supposed to be "one-year letter." See Appendix C8. The letter gave plaintiff assurances. Plaintiff articulates that it was later revealed in his follow-up phone contact that the supposed letter from MS. White-Davis did not come from the then retired Ms. White-Davis but rather it was faked under her photographed signature. Besides this display the PHRC Central Office in Harrisburg did not have any records of plaintiff's case Plaintiff prays the Court to construe that his case had jurisdiction in Philadelphia and there were officials in the PHRC Regional office in Philadelphia occupying similar functional position vacated by Ms. White-Davis on her retirement. The supposed "one-year letter" reminded plaintiff of his right to file a court case and gave assurance that the case would be timely resolved by PHRC.

2. [45] Plaintiff articulates that about a year after he received the supposed "One-Year letter" from an unidentified impersonator of Ms. White-Davis's, specifically on July 12, 2011, he called Ms. Kimberly Griffin on the phone to inquire about when his case would be presented to PHRC Commissioners for consideration. Ms. Griffin declared that she was no longer the investigator of plaintiff's complaint and put plaintiff on hold for Ms. Suzanne Martinez to speak with him. Ms. Martinez indicated that she had just taken over plaintiff's case and she had not yet reviewed it to be able to talk about it with plaintiff. See Appendix F1.

3. Ms. Martinez sent a letter dated July 12, 2011 to confirm what she had said to plaintiff on the phone indicating that she was the new investigator to continue the investigation in plaintiff's complaint. Plaintiff did not hear from Ms. Martinez again until about January 17, 2012 when she sent a letter to indicate that she had completed the investigation in plaintiff's case and she had made suggestions for plaintiff's case to be dismissed without merits.

an attorney to represent him and his case had been settled in limbo awaiting the

expiration of the statute of limitations, and therefore his obtaining one agitated them.

74. Notably, Lawyer MIldenberg had declared to plaintiff, in his acknowledgement letter

of September 14, 2011, stating: "Your case was accepted at this time because of the

information you furnished to us. It is our expectation that, as the case develops the

facts as presented by you will be substantiated and proven, thereby increasing the

probabilities for more favorable result."

75. About October 14, 2011, when calling to ask about his retainer plaintiff was paying

monthly in installment, Lawyer Mildenberg indicated to plaintiff that he had

contacted the lawyer of the defendant ECFMG  and was waiting to hear from her.

About December 22, 2011, Lawyer Mildenberg assured plaintiff that he was looking

forward to sit down with the lawyer and settle the case, and was also aware that

plaintiff's case was supposedly still pending at PHRC.

76. Suddenly in a letter dated January 17, 2012, Ms. Martinez communicated to plaintiff

that she had recommended his case for dismissal without merit, but there was no

indication that she had followed PHRC procedure required to conduct unbiased

investigation based on material facts.. See Appendix F2 and F3

77. Plaintiff has sufficient knowledge to form a belief that the unusual silence of his new

lawyer, Mr. Brian Mildenberg, falling below any reasonable expectation, and belying

the fact that he has taken $3400.00 for the purpose of giving him legal representation

and has not demonstrated any action yet, is indicative of Ms. Grese's tactic of divide

and rule, and another scheme to deprive plaintiff his right to due process and be

represented by an attorney. Plaintiff has sufficient knowledge to form a belief that in

a scheme to prevent any settlement that would look at the facts of the case on the material evidence in favor of plaintiff, Ms. Christina Joy F. Grese activated the conspiracy network she had long established with PHRC representatives Ms. Kimberly Griffin and Ms. Suzanne Martinez to eradicate the merits of plaintiff's complaint.

78. Plaintiff has sufficient knowledge to form a belief that, the letters he supposedly received from Ms. JoAnn L. Edwards, as Executive Director of PHRC at Harrisburg, and dated January 23, 2012 and April 24, 2012 respectively, to reinforce the decision by Ms. Martinez to dismiss plaintiff's case without prior unbiased investigation and examination of the key material evidence or without the involvement PHRC Commissioners for the same reason, as expected, demonstrate the intent of the conspirators to abuse Ms. Edwards' office for the purpose of depriving plaintiff due process and the right to be represented by an attorney. See Appendix F4 and F5.

79. Plaintiff articulates that Mr. William Smithy's letter to him dated February 7, 2012 on behalf of Ms. JoAnn L. Edwards was faked as cover-up to sway him from believing that he has been treated with fake due process and therefore has been deprived due process by a conspiracy network. [46]

80. Plaintiff has sufficient knowledge to form a belief that the letter dated March 9, 2012 sent to him by Ms. Christina Joy F Grese rejecting a forum for the evidence to be presented and examined, advances the purpose of the conspiracy network she was

---

[46] Part of the letter forged in the name of Ms. JoAnn L. Edwards states: "Your letter and the case file will be referred to the Legal Division of the Commission's Regional Office for review of the investigation so that counsel will be able to make a recommendation to the Commission. Upon completion of legal staff's review, the case will be presented to full Commission for formal decision on whether your Request for a Preliminary Hearing should be granted or denied." See Appendix F6.

actively involved and in which she played a role as State actor for the purpose of

depriving plaintiff due process and his right to be represented by an attorney. See

Appendix F 7.

81. The Civil Rights law of the United States establishes that "a defendant in civil rights

action must have personal involvement in the alleged wrongdoing.  Personal

involvement can be shown through allegations of personal direction or of actual

knowledge and acquiescence". See Rode V. Dellarciprette, 845 F. 2d 1195, 1207 (3d

Cir 1988) cited in Evancho v. Fisher, 423 F. 3d 347, 353 (3d Cir. 2005).

82. Plaintiff pleads that contrary to any reasonable expectation of decency, integrity,

respect, and dignity, the defendant ECFMG, under color of law, custom, and

regulation, have subjected him to (a) intentional deprivation of rights and privileges

guaranteed and protected by the Constitution of the United States, (b) intentional

affliction of emotional distress by way of defrauding, discrimination, marginalization,

and obstruction of justice,  (c) intentional deprivation of due process, and (d)

intentional deprivation of the right to be represented by an attorney.

83. Plaintiff pleads again that the defendant ECFMG has deprived him the legitimate use

of his talents and money to advance his happiness.

84. Plaintiff pleads that by way of conspiracy, cover-ups, and obstruction of justice, the

defendant ECFMG with the actual knowledge, direction, and acquiescence of their

lawyer Ms. Christina Joy F Grese, and defendants Kimberly Griffin and Suzanne

Martinez, have subjected him to deprivation of due process and respectful

representation by a qualified attorney.

85. Title 42 USC 1983 provides in relevant part that "every person who under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution...shall be liable to the party injured....."

86. A Title 42 1985 action which seeks compensatory and punitive damages in conjunction with equitable relief as in this case is considered a legal claim, entitling plaintiff to relief in punitive damages and compensations ordered by a court of law. (See An – Tiv – .Michigan Technological University, 493 F. Supp. 1137)

87. Plaintiff alleges that a "class based" invidiously discriminatory animus is behind the conspirators' action and also the defendant's action, as the courses of event at the ECFMG, and Philadelphia Regional Office of Pennsylvania Human Relations Commission reflect. That the actions were clearly a product of bias and prejudice of the operatives of defendant ECFMG, their lawyer Christina Joy F Grese of the Law Firm of Morgan Lewis, Kimberly Griffin, and Suzanne Martinez. See Griffen v. Breckridge, 403 U.S. 88, 102 (1971). The U.S Supreme Court acknowledged in Bray v Alexandria Women's Health Clinic 113 S. ct. 753 (1993) that the standard announced in Griffen was not restricted to "race" discrimination. It is therefore reasonable to assume that 1985 (3) may be used for "class based" claims other than race which is alleged in this case.

88. The defendants ECFMG and their lawyer Christina Joy F Grese of the Law Firm of Morgan Lewis acting in conspiracy with State actors, Ms. Suzanne Martinez and Ms. Kimberly Griffin, under color of law have become State actors in this case. The U.S

Supreme Court has ruled that "private parties," defendants and lawyers in this case, may be held to the same standard of "state actors" where the final and decisive act was carried out in conspiracy with a state actor or state official. See Dennis v. Sparks, 449 U.S. 24, 101 S.Ct, 183, also See Adickes v. S.H Kress & Co, 398 U. S 144. 90 S. Ct. 1598.

89. Plaintiff's Complaint is based in part on discrimination, deprivation of constitutional rights, and political affiliations by lawyers and state actors, under 42 USCA 1983 &1985. See reversal case Acevedo – Diaz v. Aponte (1993, CAI Puerto Rico) 1 F3d62 Summary up at (CAI Puerto Rico) 21 MLW. 3212, 14RIL.W. 389.

90. Plaintiff prays the Court to affirm his fundamental human dignity denied by the operatives of defendant ECFMG by ordering defendant ECFMG to pay him Thirty million U.S dollars ($30,000,000.00 U.S) in compensatory and punitive damages.

91. Plaintiff prays the court to issue injunction enjoining defendant ECFMG to release his suppressed scores on USMLE Step 1 and Step 2-CK with expressed apology alongside removing obstacles from his path to allow plaintiff to advance on the USMLE certification in the event that he still shows interest given his complete loss of trust in ECFMG, or otherwise refund to him fifteen thousand U.S dollars (15,000.00) as the cost of the registration, preparation, and fighting to secure his rights about fair reporting of his test scores on the USMLE Step 1 and Step 2-CK,

92. Plaintiff prays the Court to order defendant Ms. Christina Joy F. Grese of the Law Firm of Morgan Lewis to pay him compensatory and punitive damages in an amount of ten million U.S dollars ($10,000,000.00 U.S)

93. Plaintiff prays the Court to order defendant Ms. Suzanne Martinez to pay him compensatory and punitive damages in an amount of one million U.S dollars (1, 000,000,000 U.S).

94. Plaintiff prays the Court to order defendant Ms. Kimberly Griffin to pay him compensatory and punitive damages in an amount of one million U.S dollars (1,000,000,000).

95. Plaintiff prays the court to issue an injunction enjoining defendant ECFMG to refrain from declaring a forfeiture of his registration money in an amount of $1295.00 put down for the USMLE Step 2 -CS

96. Plaintiff prays the court to issue an injunction enjoining defendant ECFMG to refrain from retaliation against him and any other candidate from the University of Ghana Medical School who show interest in participating in the USMLE program.

97. Plaintiff prays the court to order ECFMG to institute a transparent system for the testing and evaluation of the candidates qualified to put their talents at the disposal of the nation, as most of the credentialing organizations in the United States do.

98. Plaintiff further prays the Court for any other relief that the Court might deem appropriate.

Respectfully Submitted

Date:    JUNE 18, 2012

John Paul Opoku

Tel.: (718-829-8978)

2110 Bronx Park East 2A

PRO SE                                                Bronx, NY 10462

# H

## (Doc 4)

## Defendants Griffin and Martinez's Falsified Waiver

## Waiver of Service of Summons

**TO:(A)  John Paul Opoku**

I acknowledge receipt of your request that I waive service of summons in the action of (B) Opoku v. ECFMG, et al., which is case number (C) 12cv3457, in the United States District Court for the Eastern District of Pennsylvania. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after (D)  June 27, 2012, or within 90 days after that date if the request was sent outside the United States.

July 20, 2012
Date

/s/ Barry Kramer
Signature
Printed/typed name:   Barry Kramer, Chief Deputy Attorney General
 21 S. 12th Street, 3d Floor, Phila, Pa 19107
as (E)  Attorney for Defendants
(F)Kimberly Griffin and Suzanne Martinez

### Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate n saving unnecessary costs of service of the summons and complaint. A defendant who, after being notified of an action and asked to waive service of summons, fails to do so will be required to bear the costs of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against the defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

Notes:
**A-Name of plaintiff's attorney or unrepresented plaintiff**
**B-Caption of action**
**C-Docket number of action**
**D-Date request for waiver of service of summons was sent**
**E-Title, or other relationship to corporate defendant**
**F-Name of corporate defendant, if any**

cc:

# I

## (Doc 5)

**Defendants ECFMG and Grese's Motion to Dismiss Complaint, Memorandum and the falsified Exhibits A & B are not included in the Appendix)**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN PAUL OPOKU<br><br>*Plaintiff*<br><br>v.<br><br>EDUCATIONAL COMMISSION FOR<br>FOREIGN MEDICAL GRADUATES, et al.<br><br>*Defendants* | Civil Action No. 12-3457 |

## MOTION TO DISMISS OF DEFENDANTS EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES AND CHRISTINA JOY F. GRESE

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants Educational Commission for Foreign Medical Graduates ("ECFMG") and Christina Joy F. Grese ("Attorney Grese") (collectively, "Defendants"), by and through the undersigned counsel, hereby move to dismiss the Complaint with prejudice, and in support thereof state the following:

1.    Plaintiff John Paul Opoku ("Plaintiff") brings the present action *pro se*.

2.    On June 27, 2012, Plaintiff served his Complaint upon Defendants via Express Mail.

3.    Plaintiff's Complaint does not contain numbered or headed counts.  Under a generous reading of the Complaint it appears that Plaintiff is attempting to plead one or more of the following claims:  (1) deprivation of civil rights (due process); (2) conspiracy; (3) intentional infliction of emotional distress; (4) fraud; (5) discrimination; (6) harassment; (7) extortion; and (8) obstruction of justice.

1

4.      Plaintiff's Complaint does not state any claim upon which relief can be granted as
to Defendants.  As is explored in greater detail in the accompanying Memorandum of Law,
Plaintiff has not met the pleading requirements of Federal Rules of Civil Procedure 8 or 9(b).


WHEREFORE, Defendants request that the Court dismiss any and all claims in
Plaintiff's Complaint as to Defendants.


Respectfully submitted,


_July 23, 2012_
Date

MORGAN, LEWIS & BOCKIUS LLP

Brian W. Shaffer
Elisa P. McEnroe
1701 Market Street
Philadelphia, PA 19103
215.963.5103
215.963.5917
bshaffer@morganlewis.com
emcenroe@morganlewis.com

*Attorneys for Defendants Educational*
*Commission for Foreign Medical*
*Graduates and Christina Joy F. Grese*

2

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2012, a true and correct copy of the foregoing Motion to

Dismiss of Defendants Educational Commission for Foreign Medical Graduates and the

Memorandum of Law in Support thereof were served via Federal Express upon plaintiff John

Paul Opoku at the following address:

> John Paul Opoku
> 211 Bronx Park East, 2A
> Bronx, New York 10462

July 23, 2012
_____
Date

_Elisa P. McEnroe_
_____
MORGAN, LEWIS & BOCKIUS LLP

Elisa P. McEnroe
1701 Market Street
Philadelphia, PA 19103
215.963.5917
emcenroe@morganlewis.com

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN PAUL OPOKU<br><br>*Plaintiff*<br><br>v.<br><br>EDUCATIONAL COMMISSION FOR<br>FOREIGN MEDICAL GRADUATES, et al.<br><br>*Defendants* | Civil Action No. 12-3457 |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2012, it is hereby ORDERED that:

- The Motion to Dismiss of Defendants Educational Commission for Foreign Medical Graduates and Christina Joy F. Grese is GRANTED; and

- Plaintiff's Complaint is DISMISSED as to Defendants Educational Commission for Foreign Medical Graduates and Christina Joy F. Grese with prejudice.

So ordered,

_____
Tucker, J.

**J**

**Doc 10**

**(Griffin and Martinez's Motion to Dismiss Complaint with the Proven Counterfeit Exhibits # 1 - 11; memorandum not included**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN PAUL OPOKU, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EDUCATIONAL COMMISSION FOR | : | |
| FOREIGN MEDICAL GRADUATES, | : | |
| et al., | : | No. 12-3457 |
| | : | |
| Defendants. | : | |

## GRIFFIN AND MARTINEZ'S MOTION TO DISMISS THE COMPLAINT

Kimberly Griffin and Suzanne Martinez, pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6), move this Court to dismiss plaintiff's Complaint for the reasons contained in the

attached Memorandum of Law.

Wherefore, Kimberly Griffin and Suzanne Martinez request that the Court dismiss

plaintiff's Complaint.

LINDA L. KELLY
Attorney General

/s/Barry N. Kramer
Barry N. Kramer
Chief Deputy Attorney General
Attorney I.D. No. 41624

Office of Attorney General
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107
Phone: (215) 560-1581
Fax:   (215) 560-1031

2

Chairperson
STEPHEN A. GLASSMAN
Vice-Chairperson
RAQUEL O. YIUNGST
Secretary
DANIEL D. YUN
Executive Director
HOMER C. FLOYD
Regional Director
CARLENE M. NEAL



COMMONWEALTH OF PENNSYLVANIA
HUMAN RELATIONS COMMISSION
Philadelphia Regional Office
110 North 8th Street, Suite 501
Philadelphia, PA 19107
(215) 560-2496 (Voice)
(215) 560-3599 (TTY)

COMMISSIONERS
M. JOEL BOLSTEIN
TIMOTHY CUEVAS
REV. DR. JAMES EARL GARMON, SR.
J. WHYATT MONDESIRE
KWEILIN NASSAR
DANIEL L. WOODALL, JR.

www.phrc.state.pa.us

## NOTICE OF INVESTIGATION

CASE NO.:   200804756

CASE NAME:      **John Paul Opoku  v  The Education Commission of Foreign
                Medical Graduates (ECFMG)**

You filed a formal complaint of discrimination with the Pennsylvania Human Relations
Commission. The particulars of your allegations are set forth in a copy of the complaint form
which is enclosed.

I am the investigator assigned to your case, and you should call or write to me with any
information regarding your complaint. My telephone number is listed below. If you have any
questions, additional information, or any changes, please call me. You must advise me of any
change in your address or telephone number.

The Pennsylvania Human Relations Act regards voluntary settlement as the preferable means of
resolving issues of discrimination. I will discuss with you any offer made by the respondent, and
will invite you to make a counter offer. If settlement is reached, and papers are signed by both
you and the respondent, the Commission will cease its investigation and will dismiss the
complaint without a determination on its merits.

You need not employ an attorney in any matter before the Commission. If you do hire an
attorney, the Commission must receive his/her Notice of Appearance. After the Notice of
Appearance is received from an attorney, Commission staff will work through the attorney, not
directly with the complainant.

Please read the enclosed "**GUIDE FOR COMPLAINANTS,**" which outlines the procedures
that the Commission will follow in investigating your complaint. If you have additional
questions, or if you wish to discuss the status of the investigation, please call me. I will call or
write you if I have specific questions or information for you, but I will not call you simply to
give status reports.

Thank you for your cooperation.

Sincerely, .

Kimberly Griffin
Human Relations Representative
(215) 965-7735



DEFENDANT'S
EXHIBIT
1

AB

**Chairperson**
STEPHEN A. GLASSMAN
**Vice Chairperson**
RAQUEL O. YIENGST
**Secretary**
DANIEL D. YUN
**Assistant Secretary**
REV. DR. JAMES EARL GARMON, SR.
**Executive Director**
HOMER C. FLOYD
**Regional Director**
CARLENE M. NEAL



**COMMONWEALTH OF PENNSYLVANIA**
**Human Relations Commission**
**Philadelphia Regional Office**
**110 North 8th Street, Suite 501**
**Philadelphia, PA  19107**
**(215) 560-2496 Voice**
**(215) 560-3599TTY**
**www.phrc.state.pa.us**

**Commissioners**
ISMAEL ARCELAY
M. JOEL BOLSTEIN
J. WHYATT MONDESIRE
S. KWEILIN NASSAR
GERALD S. ROBINSON
SYLVIA A. WATERS
DANIEL L. WOODALL, JR.

August 17, 2009

John Opoku
2110 Bronx Park East 2A
Bronx NY 10462

RE:   John Paul Opoku v The Education Commission of Foreign Medical Graduates (ECFMG)
      Case No. 200804756

Dear John Opoku:

Enclosed is a copy of a Motion to Dismiss filed by the respondent in your case.

The Pennsylvania Human Relations Commission's (Commission) legal staff will be submitting a response to the Motion in the near future. The Motions Commissioner designated to review the case will then make a decision on the Motion. The Motions Commissioner's decision will be made after consideration of the Pennsylvania Human Relations Act, relevant legislative history, and any applicable state and federal court decisions.

While there is no requirement that you formally reply to the Motion, this notification is sent to provide you (or your attorney, should you have obtained one) with the opportunity to enter a reply. Should you wish to do so, please forward your reply to me at the address listed above within ten days of your receipt of this letter.

Please feel free to contact me should you have any questions.

Sincerely,

K. Gᴏᴏ

Kimberly Griffin
Human Relations Representative

DEFENDANT'S
EXHIBIT
3

Enclosures

cc: Faye Riva Cohen



# LAW OFFICE OF FAYE RIVA COHEN, P.C.

*Faye Riva Cohen, Esquire*
*James W. Cushing, Esquire*
*Gina Y. Mosley, Esquire*

*Of Counsel,*
*Adam S. Bernick, Esquire***
***Also licensed in New Jersey*

*2047 Locust Street*
*Philadelphia, PA 19103*
*Telephone (215) 563-7776*
*Facsimile (215) 563-9996*
*E-Mail: lawoffice@fayerivacohen.com*
*Website: www.fayerivacohen.com*

June 30, 2009

Kimberly Griffin
Human Relations Representative
Pennsylvania Human Relations Commission
110 North 8th Street, Suite 501
Philadelphia, PA 19107

     **Re:**    ***John Paul Opoku v. The Education Commission of Foreign Medical Graduates***
            ***PHRC Case No. 200804756***

Dear Ms. Griffin:

     Please be advised that the Law Office of Faye Riva Cohen, P.C. represents the Complainant, John Paul Opoku, in the above-stated matter. I have enclosed my Notice of Appearance. Accordingly, we respectfully request that the PHRC direct any further correspondence and documents regarding Mr. Opoku's matter to my attention.

     Please do not hesitate to contact me if you have any questions regarding this correspondence. Thank you for your anticipated time and attention to this matter.

                         Very truly yours,

                         FAYE RIVA COHEN

Cc: John Paul Opoku



DEFENDANT'S
EXHIBIT
2

E7

**From:** Faye Riva Cohen, Esquire

    **To:** johnopk42@aol.com

**Subject:** Motion to dismiss

    **Date:** Sun, 30 Aug 2009 3:18 pm

---

P.S. Please acknowledge receipt of this e-mail.

John: I have been very busy and this is the earliest I could contact you.
I have reviewed the Respondent's Answer and Motion to Dismiss in your PHRC
matter. I believe that Brian Lambert, the Firm's Accounts Manager,
contacted you to inform you that your retainer has been used, and we
would require an additional retainer to continue to represent you and
respond to the motion to dismiss. As we did not receive payment, we did
not respond. Although it is always preferable to respond, we can always
wait to see what the PHRC lawyer says if you don't want to use your funds
for this purpose. I am not going to contact the Respondent's lawyers at
this time as I am certain they want to learn first if their Motion to
Dismiss was successful. Currently you owe in the range of $300 +. Please
let me or Brian know if you want us to continue to represent you. These
matters are always lengthy and costly. Frankly, I don't think the civil
rights argument is the best argument if it is truly for those students who take
the ~~██████████████████████████████████████████~~
be~~███████████████████████████████████████~~
con~~████████████████████████████████████~~ Aₑfraud
st~~████████████████████████████████████████~~ the
know how you wish to proceed. Although I prefer another 10 hour retainer,
at the discounted rate of $1,875, if you cannot afford to pay that amount
at one time, we could take a lower retainer, most likely for not less than
6 hours, as part of that amount has already been used, and place you on a
monthly payment plan in an amount we must mutually agree upon. I await your
response. Faye Riva Cohen.

Very truly yours,
Faye Riva Cohen, Esquire
Law Office of Faye Riva Cohen, P.C.
2047 Locust Street
Philadelphia, PA 19103
Ph: (215) 563-7776
Fx: (215) 563-9996
URL: www.fayerivacohen.com

The information contained in this email message is attorney/client
privileged work product and confidential information intended only for
the
use of the individual or entity named above. If you are not the
intended
recipient, you are hereby notified that any dissemination,
distribution,
or copying of this communication is strictly prohibited. If you have
received this communication in error, please immediately notify us by
telephone and delete this message. Thank You.



Very truly yours,
Faye Riva Cohen, Esquire
Law Office of Faye Riva Cohen, P.C.
2047 Locust Street
Philadelphia, PA 19103
: (215) 563-7776
Fx: (215) 563-9996

**From:** Faye Riva Cohen <frc@fayerivacohen.com>

**To:** johnopk42@aol.com

**Cc:** gym@fayerivacohen.com

**Subject:** PHRC

**Date:** Mon, 9 Nov 2009 5:38 pm

---

Dear Mr. Opoku: I received a call recently from Ryan Hancock, an attorney with
the PHRC, who asked if this Firm was still representing you. As you are aware,
the Respondent has filed a Motion to Dismiss and an Answer with New Matter.
Brian Lambert, our Accounts Manager,wrote you some time ago bringing you up to
date on your bill and requesting that you provide us with an additional retainer
if you wish us to continue to represent you. You have not paid the bill or
submitted a retainer, and apparently you are unclear about how hourly rate
agreements work. We bill you for the time spent on your matter, which includes
all telephone calls, emails, etc., including time spent talking to the client,
the PHRC, opposing counsel, and anyone else. This is not a results-oriented
system, as we cannot and do not guarantee results. Very few attorneys in this
area accept discrimination matter on a contingency fee basis, which means they
won't collect a fee unless the matter is successful. We
   do not accept cases on that basis, as discrimination cases are very difficult
and hard-fought by Respondents. In your case the Respondent's lawyers are one of
the largest and most expensive law firms in the US, which makes things more
difficult, because it indicates that the Respondent will not spare any expense
to dispute a case. These are very difficult cases and very costly
cases.Originally we were told that the PHRC lawyer will respond to the motion to
dismiss, but Mr. Hancock informs me that we would be required to do so if we
still represent you. As you have not paid the past-due amount or a new retainer,
we will be withdrawing from your representation. The legal system is geared to
those with the most funds, and our withdrawal doesn't reflect on the merits of
your case, but the terms of the Fee Agreement must be met. After we withdraw we
will inform Mr. Hancock that the PHRC can respond to the motion to dismiss. In
any event, our past-due fees must be paid, or they w
   ill continue to accrue interest, collection costs, and possible filing fees, if
we have to collect them through the court system.
Very truly yours,
Faye Riva Cohen, Esquire
Law Office of Faye Riva Cohen, P.C.
2047 Locust Street
Philadelphia, PA 19103
Ph: (215) 563-7776
Fx: (215) 563-9996
URL: www.fayerivacohen.com

The information contained in this email message is attorney/client privileged
work product and confidential information intended only for the use of the
individual or entity named above. If you are not the intended recipient, you
are hereby notified that any dissemination, distribution, or copying of this
communication is strictly prohibited. If you have received this communication
in error, please immediately notify us by telephone and delete this message.
Thank You.

D5

Chairperson
STEPHEN A. GLASSMAN
Vice Chairperson
RAQUEL O. YIENGST
Secretary
DANIEL D. YUN
Assistant Secretary
REV. DR. JAMES EARL GARMON, SR.
Executive Director
HOMER C. FLOYD
Regional Director
CARLENE M. NEAL

Commissioners
ISMAEL ARCELAY
M. JOEL BOLSTEIN
J. WHYATT MONDESIRE
S. KWEILIN NASSAR
GERALD S. ROBINSON
SYLVIA A. WATERS
DANIEL L. WOODALL, JR.



**COMMONWEALTH OF PENNSYLVANIA**
**Human Relations Commission**
**Philadelphia Regional Office**
**110 North 8th Street, Suite 501**
**Philadelphia, PA 19107**
**(215) 560-2496 voice**
**(215) 560-3599TTY**
**www.phrc.state.pa.us**

January 29, 2010

Daniel L. Woodall, Jr., Motions Commissioner
C/O Carl Summerson, Esquire
Pennsylvania Human Relations Commission
Pennsylvania Place, Suite 300
301 Chestnut Street
Harrisburg, PA 17101-2702

Re: John Paul Opoku v. The Educational Commission For Foreign Medical Graduates
Docket No. 200804756

Commissioner Woodall, Jr.:

Enclosed please find a copy of the Respondent's Motions to Dismiss filed in the above referenced matters and my Reply. Please note that Complainant has been served with a copy of the Motion. A copy of the Complainant's response is included within. I have served the parties with my Reply and have forwarded a copy of all materials to your legal advisor.

Respectfully,

Ryan Allen Hancock
Assistant Chief Counsel
(215) 965-7711

Enclosures

cc: Carl Summerson, Esquire
John Paul Opoku (Complainant)
Christina Joy F. Grese, Esq. (Respondent's Counsel)



DEFENDANT'S
EXHIBIT
5



GERALD J. ROBINSON
Vice Chair
DR. RAQUEL O. YIENGST
Secretary
DANIEL D. YUN
Assistant Secretary
REV. DR. JAMES EARL GARMON, SR.
Executive Director
JOANN L. EDWARDS
Acting Regional Directors:
DIANA MEDLEY
DEBI RIGGS SHAW
ELISA WEAVER-HINES

**COMMONWEALTH OF PENNSYLVANIA**
Human Relations Commission
Philadelphia Regional Office
110 North 8th Street, Suite 501
Philadelphia, PA 19107
(215) 560-2496 voice
(215) 560-3599TTY
www.phrc.state.pa.us

Commissioners
ISMAEL ARCELAY
M. JOEL BOLSTEIN
STEPHEN A. GLASSMAN
J. WHYATT MONDESIRE
S. KWEILIN NASSAR
SYLVIA A. WATERS
DANIEL L. WOODALL, JR.

January 17, 2012

John Opoku
2110 Bronx Park East 2A
Bronx NY 10462

RE:    John Paul Opoku v The Educational Commission for Foreign Medical
Graduates (ECFMG)
            Case No. 200804756

Dear Mr. Opoku:

The Pennsylvania Human Relations Commission (PHRC) has investigated your
complaint of discrimination and found that the evidence is not sufficient to show an
unlawful act of discrimination occurred.  A copy of the "Findings of the
Investigation" is enclosed.

The case file with the Findings of the Investigation will be reviewed at the regional
office.  If any reviewer finds that further investigation is required, the case will be
returned for that purpose.

If the reviewers concur with the Findings of the Investigation, the case will be
closed as "Insufficient Evidence to Support Probable Cause" and you will be
informed by mail. At that time you will be given the opportunity to appeal the
Commission's decision if you so choose.

Sincerely

Suzanne Martinez
Human Relations Representative



DEFENDANT'S
EXHIBIT
9

F2

COMMONWEALTH OF PENNSYLVANIA
PENNSYLVANIA HUMAN RELATIONS COMMISSION

John Paul Opoku,                    *
                                    *
    COMPLAINANT                     *
                                    *       DOCKET NO. 200804756
                                    *
    v.                              *
                                    *
The Education Commission            *
For Foreign Medical                 *
Graduates (ECFMG)                   *
                                    *
    RESPONDENT                      *

## INTERLOCUTORY ORDER

AND NOW . . . . day of . . . ., 2010, upon consider-
ation of Respondent's Motion in the above-captioned case and the
response/s thereto, it is hereby

O R D E R E D

pursuant to 16 Pa. Code 42.131 (b)(1) that the Motion be denied on
the grounds that the complaint filed satisfies the requirements
found in the PA Human Relations Act and is sufficient to confer
jurisdiction over this matter and the Respondent has failed to
demonstrate entitlement to dismissal as a matter of law.  This
Order is entered consistent with Section 962 of the PA Human
Relations Act and applicable judicial determinations in Baker v.
Cmwlth., Human Relations Commission, 507 Pa. 325, 489 A.2d 1354
(1985) and Graves v. Cmwlth., Human Relations Commission, 634
A.2d 701 (Pa. Cmwlth. Ct. 1993) related to the non-adjudicative
nature of determinations made by the Commission during the
exercise of its investigative jurisdiction.  Accordingly, because
investigative determinations do not adjudicate rights of the
parties, this Interlocutory Order is non-adjudicative in nature.

BY: _____



_____
MOTIONS COMMISSIONER

COMMONWEALTH OF PENNSYLVANIA
PENNSYLVANIA HUMAN RELATIONS COMMISSION

| | | |
|---|---|---|
| John Paul Opoku, | * | |
| | * | |
| COMPLAINANT | * | |
| | * | DOCKET NO. 200804756 |
| | * | |
| v. | * | |
| | * | |
| The Education Commission | * | |
| For Foreign Medical | * | |
| Graduates (ECFMG) | * | |
| | * | |
| RESPONDENT | * | |

## REPLY TO MOTION TO DISMISS

AND NOW, comes Ryan Allen Hancock, Assistant Chief Counsel, on behalf of the Pennsylvania Human Relations Commission (hereinafter "Commission") makes the following Reply to the Respondent's Motion to Dismiss:

1. On or about May 18, 2009, John Paul Opoku (hereinafter "Complainant") filed a verified Complaint with the Commission alleging that the Education Commission For Foreign Medical Graduates (ECFMG) (hereinafter referred to as "Respondent"), harassed and treated him differently because of his national origin, Ghana, by failing "to credit" Complainant with the "correct and accurate test scores.[1]" A copy of the Complaint is attached as Appendix "A".

---

[1] Complainant in his Complaint also alleges that the Respondent engaged in "sabotage" and "exploitation." For the purposes of the instant Motion to Dismiss to the Complaint, the Commission admits that it does not have jurisdiction over the Complainant's "sabotage" and

1

2.    Respondent, at all relevant times with regards to the Complainant's Complaint, employed four or more employees within the Commonwealth.    Respondent's office is located at 3624 Market Street, Philadelphia, PA 19104.

3.    Respondent is a non-profit organization which administers licensing examinations to graduates of foreign medical schools and certifies successful examinees as eligible for residency and fellowship programs in the United States.

4.    On or about July 24, 2009, the Respondent filed a Motion to Dismiss[2] the complaint alleging that the Commission lacked jurisdiction because, inter alia, the Complainant "has not alleged, nor could he, through affidavit or otherwise" that he is an employee or independent contractor of the Respondent; that the Respondent is an employment agency or labor organization; that the Respondent constructs, sells, leases, operates or finances housing accommodations or commercial property or operates a business that engages in real estate-related transactions; or that the Respondent is a public accommodation and/or educational institution within the meaning of the Pennsylvania Human Relations Act

"exploitation" claims.

[2] Respondent has previously filed similar Motions to Dismiss with the Commission and the Commission rejected both of the Respondent's Motions to Dismiss in Docket No. 200306586 and 200400132, Kashitani v. The Educational Commission For Foreign Medical Graduates and Docket No. 200307743 and 200400134, Kivilcim v. The Educational Commission For Foreign Medical Graduates.

(hereinafter "PHRA"). A copy of the Respondent's Motion to Dismiss is attached as Appendix "B".

5.   On or about August 7, 2009, the Respondent filed a verified Answer to the Complainant's Complaint. A copy of the Respondent's verified Answer is attached as Appendix "C".

6.   On or about January 25, 2010, Complainant filed a Reply to the Respondent's Motion to Dismiss. A copy of the Complainant's Reply is attached as Appendix "D".

7.   As moving party, the burden on Respondent is to plead and prove that there is no dispute regarding any material issues of fact and that Respondent is entitled to judgment as a matter of law. The non-moving party is entitled to have all issues viewed in a light most favorable to his/her position. *Tom Morello Const. Co., Inc. v. Saving and Loan Ass'n.*, 280 Pa. Super. 329, 421 A.2d 747 (1980); *Miller by Miller v. Leljedal*, 71 Pa. Cmwlth. 372, 452 A.2d 540 (1980); *Carollo v. Forty-Eight Insulation, Inc.*, 442 Pa. 283, 276 A.2d 513 (1971); *Thompson Coal v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1980); *Eckborg v. Hyde-Murphy Co.*, 442 Pa. 283, 276 A.2d 513 (1971); *Wheeler v. Johns-Mansville Corp.*, 342 Pa. Super. 473, 493 A.2d 120 (1985); *Reesler v. Jones Motor Co., Inc.*, 337 Pa. Super. 602, 487 A.2d 424 (1985).

8.   The Pennsylvania Human Relations Act (PHRA), inter alia, declares it to be an unlawful discriminatory practice:

B4

i.   For any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any public accommodation, resort or amusement to:

> (1)   Refuse, withhold from, or deny to any person because of his race, color, sex, religious creed, ancestry, national origin…either directly or indirectly, any of the accommodations, advantages, facilities or privileges of such public accommodation…   43   P.S. §955(i) (1).

9.   Section 954(l) of the PHRA states, "The term public accommodation…means any accommodation…which is open to, accepts or solicits patronage of the general public,…" 43 P.S. §954(l),

10.   Resolution of issues regarding whether the Respondent is a public accommodation within the meaning of Section 955 (i) (1) of the PHRA, of necessity involve resolution of mixed questions of fact and law.

11.   The PHRA provides the Commission with legislatively delegated, non-discretionary authority to investigate whenever a person alleging to be aggrieved by an unlawful discriminatory practice files a complaint with the Pennsylvania Human Relations Commission.  43 P.S. §959.

12.   Further, the PHRA provides that the provisions of the   act   shall   be   construed   liberally   for   the

accomplishment of the purposes of the Act.    43 P.S.
§962(a). In addition, Courts have held that legislative
mandate of the PHRA is to be construed liberally for the
accomplishments of its purposes and in favor of the public
interest.    *General Electric Corp. v. PHRC*, 365 A.2d 649
(1976); *PHRC v. Chester School District*, 233 A.2d 290
(1967); *Loyal Order of Moose Lodge No. 107 v. PHRC*, 294
A.2d 594 (1972).

13.    The Commission need not prove that it has jurisdic-
tion as a condition precedent to the initiation of an
investigation subsequent to the filing of a complaint.
*Commonwealth, Human Relations Commission v. Lansdowne
Swim Club*, 526 A.2d 758 (Pa. 1987); *Mercy Hospital v.
Commonwealth, Human Relations Commission*, 451 A.2d 1357
(Pa. 1982).

14.    The Respondent, given the above, has failed to
demonstrate, as a matter of law that it is entitled to
dismissal of the verified Complaint in the matter at hand.

WHEREFORE, the Respondent's Motion to Dismiss should
be denied and investigation should be ordered to continue.

Date: 1/29/2010

Respectfully submitted,

Ryan Allen Hancock
Assistant Chief Counsel
PA Human Relations Commission
110 North 8th Street, Suite 501
Philadelphia, PA 19107
(215) 965-7711

5

COMMONWEALTH OF PENNSYLVANIA
PENNSYLVANIA HUMAN RELATIONS COMMISSION

John Paul Opoku,                    *
                                    *
        COMPLAINANT                 *
                                    *        DOCKET NO. 200804756
                                    *
        v.                          *
                                    *
The Education Commission            *
For Foreign Medical                 *
Graduates (ECFMG)                   *
                                    *
        RESPONDENT              :    *

## AFFIDAVIT

        I, Kimberly Griffin, hereby verify and state that
as a Human Relations Representative, I am involved in the
Commission's investigation of the charges in the above-
captioned matter, that the facts set forth in the foregoing
Reply to Respondent's Motion to Dismiss are true and correct
to the best of my knowledge, information, and belief.  I
understand that false statements herein are subject to
penalties of 18 Pa. C.S. § 4904, relating to unsworn
falsification to authorities.


11/29/2010
Date                              Kimberly Griffin
                                  Human Relations Representative

COMMONWEALTH OF PENNSYLVANIA
PENNSYLVANIA HUMAN RELATIONS COMMISSION

John Paul Opoku,                      *
                                      *
        COMPLAINANT                   *
                                      *        DOCKET NO. 200804756
                                      *
        v.                            *
                                      *
The Education Commission              *
For Foreign Medical                   *
Graduates (ECFMG)                     *
                                      *
        RESPONDENT                    *

## CERTIFICATE OF SERVICE

I hereby certify that I am this . . $29\text{th}$ . . . day of

January, 2010, serving the foregoing Reply to Respondent's

Motion To Dismiss upon the persons and in the manner

indicated below, which service satisfies the requirements of

1 Pa. Code 33.35.

### Service by first-class mail
### Addressed as follows:

John Paul Opoku
2110 Bronx Park, East 2A
Bronx, NY 10462
(Complainant)

Christina Joy F. Grese, Esq.
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(Respondent's Counsel)

Ryan Allen Hancock
Assistant Chief Counsel
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**Chairperson**
STEPHEN A. GLASSMAN
**Vice Chairperson**
RAQUEL O. YIENGST
**Secretary**
DANIEL D. YUN
**Assistant Secretary**
REV. DR. JAMES EARL GARMON, SR.
**Executive Director**
HOMER C. FLOYD



**Commissioners**
ISMAEL ARCELAY
M. JOEL BOLSTEIN
J. WHYATT MONDESIRE
S. KWEILIN NASSAR
GERALD S. ROBINSON
SYLVIA A. WATERS
DANIEL L. WOODALL, JR.

**COMMONWEALTH OF PENNSYLVANIA**
**Human Relations Commission**
**301 Chestnut, Suite 300**
**Harrisburg, PA 17101-2702**
**(717) 787-4410 voice**
**(717) 787-4087 TTY**
**www.phrc.state.pa.us**

June 15, 2010

John Opoku
2110 Bronx Park East 2A
Bronx NY 10462

RE:   John Paul Opoku v The Educational Commission for Foreign Medical Graduates (ECFMG)
Case No. 200804756

Dear John Opoku:

It has been one year since you filed your complaint with the Pennsylvania Human Relations Commission. This is to notify you that you now have the right to bring an action in the appropriate Pennsylvania Court of Common Pleas based on the alleged violations of the PHRAct contained in your Commission complaint. This right is provided under Section 12(c) of the Human Relations Act, 43, P.S. § 962(c).

Please be advised that you are not required to file such an action in the State Court of Common Pleas. The Commission is continuing to process your case, and we will make every effort to resolve it as soon as possible. If we are not notified otherwise, we will assume that you want the Commission to continue handling your case.

If you do file a complaint in a Court of Common Pleas, the Commission will dismiss your complaint. This means that you will be unable to have the Commission decide your case even if your complaint is dismissed in State Court because of a procedural error. Procedural errors may include filing the complaint in State Court in the wrong county or filing in State Court after your time to file has expired. For this reason, you should make every effort to assure that any complaint you file in State Court will be properly filed before you file it.

If you believe you might want to take your case to State Court, we suggest that you consult a private attorney about representing you in that action. This should be done before you file the complaint so that your attorney may advise you on the best course of action for you to take.

Should you file a complaint in State Court, you are required by Section 12(c)(2) of the Pennsylvania Human Relations Act to serve the Human Relations Commission with a copy of the Court complaint. This copy must be served on the Commission at the same time you file it in Court. The copy is to be sent to:

Michael Hardiman, Chief Counsel - Pennsylvania Human Relations Commission
301 Chestnut Street - Suite 300   P.O. Box 3145
Harrisburg, PA 17105-3145

If you have any questions concerning this matter, please feel free to contact the investigator who is handling your case.

Very truly yours,

Arberdella White-Davis
Director of Compliance
AWD: lap



C.8



Chairman
GERALD S. ROBINSON
Vice Chair
DR. RAQUEL O. YIENGST
Secretary
DANIEL D. YUN
Assistant Secretary
REV. DR. JAMES EARL GARMON, SR.
Acting Executive Director
MICHAEL HARDIMAN
Acting Regional Directors
DIANA MEDLEY
DEBI RIGGS SHAW
ELISA WEAVER-HINES

**COMMONWEALTH OF PENNSYLVANIA**
**Human Relations Commission**
**Philadelphia Regional Office**
**110 North 8th Street, Suite 501**
**Philadelphia, PA 19107**
**(215) 560-2496 voice**
**(215) 560-3599TTY**
**www.phrc.state.pa.us**

Commissioners
ISMAEL ARCELAY
M. JOEL BOLSTEIN
STEPHEN A. GLASSMAN
J. WHYATT MONDESIRE
S. KWEILIN NASSAR
SYLVIA A. WATERS
DANIEL L. WOODALL, JR.

July 12, 2011

John Paul Opoku
2110 Bronx Park East 2A
Bronx NY 10462

RE:    John Paul Opoku v The Educational Commission for Foreign Medical Graduates
(ECFMG)
            Case No. 200804756

Dear Mr. Opoku:

The above-docketed complaint has been reassigned to me for the completion of the investigation.

In the meantime, if there any documents that were previously requested of you but were not received by this office please make sure that these are sent to the Commission within ten (10) days, as they are required for the completion of the investigation.

It is to everyone's advantage that the investigation and resolution of this complaint be achieved with a full understanding of the facts of the case. It is also essential that you keep me informed of any changes in your address or telephone number so that the investigation can continue without delay.

Finally, if you have any questions to ask, you may write or contact me in care of the address on this letterhead.

Your cooperation is urged.

Sincerely,

Suzanne Martinez
Human Relations Representative



DEFENDANT'S
EXHIBIT
8

Chairman
GERALD S. ROBINSON
Vice Chair
DR. RAQUEL O. YIENGST
Secretary
DANIEL D. YUN
Assistant Secretary
REV. DR. JAMES EARL GARMON, SR.
Executive Director
JOANN L. EDWARDS



**COMMONWEALTH OF PENNSYLVANIA**
Human Relations Commission
301 Chestnut Street, Suite 300
Harrisburg, PA 17101-2702
(717) 787-4410 voice
(717) 787-4087 TTY
www.phrc.state.pa.us

Commissioners
ISMAEL ARCELAY
M. JOEL BOLSTEIN
STEPHEN A. GLASSMAN
J. WHYATT MONDESIRE
S. KWEILIN NASSAR
SYLVIA A. WATERS
DANIEL L. WOODALL, JR.

January 23, 2012

John Paul Opoku
2110 Bronx Park East 2A
Bronx NY 10462

RE:    John Paul Opoku v The Educational Commission for Foreign Medical Graduates (ECFMG)
         Case No. 200804756

Dear John Paul Opoku:

The Pennsylvania Human Relations Commission (Commission) has investigated the above referenced complaint of unlawful discrimination and has determined that the complaint should be dismissed because the facts of the case do not establish that probable cause exists to credit the allegations of unlawful discrimination. You have been informed by the investigator of the evidence documented during the investigation and the reasons for the no probable cause dismissal. Enclosed is a Notice of your further rights in this matter.

The Pennsylvania Human Relations Act affords the complainant and the respondent the opportunity for comments after the final disposition of the complaint. If you wish to make written comments regarding the investigation of the complaint please send them to William Smithey, the Acting - Director of Compliance, at the above address. Your comments will be provided to the Commission members.

Thank you for your cooperation during the course of this investigation.

Very truly yours,

JoAnn L. Edwards
Executive Director
JLE: db

Enclosure

DEFENDANT'S
EXHIBIT
10

M3 NPC-C

EL

**Chairman**
GERALD S. ROBINSON
**Vice Chair**
DR. RAQUEL O. YIENGST
**Secretary**
DANIEL D. YUN
**Assistant Secretary**
REV. DR. JAMES EARL GARMON, SR.
**Executive Director**
JOANN L. EDWARDS



**COMMONWEALTH OF PENNSYLVANIA**
Human Relations Commission
301 Chestnut Street, Suite 300
Harrisburg, PA 17101-2702
(717) 787-4410 voice
(717) 787-4087 TTY
www.phrc.state.pa.us

**Commissioners**
ISMAEL ARCELAY
M. JOEL BOLSTEIN
STEPHEN A. GLASSMAN
J. WHYATT MONDESIRE
S. KWEILIN NASSAR
SYLVIA A. WATERS
DANIEL L. WOODALL, JR.

April 24, 2012

John Paul Opoku
2110 Bronx Park East 2A
Bronx NY 10462

RE:    John Paul Opoku v The Educational Commission for Foreign Medical
Graduates (ECFMG)
       Case No. 200804756

Dear John Paul Opoku:

The Pennsylvania Human Relations Commission (Commission) has completed its
review of your Request for a Preliminary Hearing. Based upon that review, the
Commission voted to deny your request at its April 23, 2012 Commission meeting
of on the grounds that you presented no facts or evidence not considered at the
time of the original finding or no facts or evidence that would alter the original
finding.

As a result of this decision, the Commission has closed your case. You have no
further appeal rights with the Commission.

You are reminded that pursuant to Section 12(c) of the Pennsylvania Human
Relations Act, 43 Section 962(c), you have the right, upon the dismissal of your
case, to file a complaint in the Court of Common Pleas of the county where the
alleged unlawful discriminatory practice took place. If you desire to do this, and
have not already done so, you should file the complaint as soon as possible. You
may also wish to consult a private attorney about this right and about any other
rights you may have in this matter.

Very truly yours,

JoAnn L. Edwards
Executive Director
JLE: jlh

5h Deny · NPC – C

DEFENDANT'S
EXHIBIT
11

## III.    CONCLUSION

For the foregoing reasons, Griffin and Martinez requests that plaintiff's Complaint be

dismissed.

LINDA L. KELLY
Attorney General

BY:    /s/ Barry N. Kramer
BARRY N. KRAMER
Chief Deputy Attorney General

Office of Attorney General
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-1581
Fax:      (215) 560-1031

25

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN PAUL OPOKO, | : | CIVIL ACTION |
| | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| EDUCATIONAL COMMISSION FOR | : | |
| FOREIGN MEDICAL GRADUATES, | : | |
| et al., | : | No. 12-3457 |
| | : | |
|     Defendants. | : | |

## CERTIFICATE OF SERVICE

    I, Barry N. Kramer, hereby certify that on August 3, 2012, Motion to Dismiss has been filed electronically and is available for viewing and downloading from the Court's Electronic Case Filing System. The ECF System's electronic service of the Notice of Electronic Case Filing constitutes service on all parties who have consented to electronic service.

Brian Shaffer, Esquire
Elisa McEnroe, Esquire
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

    I further certify that a true and correct copy of same was mailed on August 3, 2012, by first class mail, postage prepaid to:

John Paul Opoku
2110 Bronx Park East 2A
Bronx, N.Y. 10462

BY:    s/s Barry N. Kramer
          BARRY N. KRAMER

COMMONWEALTH OF PENNSYLVANIA


GOVERNOR'S OFFICE

PENNSYLVANIA HUMAN RELATIONS COMMISSION


John Opoku,
    Complainant

       v.

The Educational Commission for Foreign Medical Graduates (ECFMG),

    Respondent

: PHRC Case No. 200804756

## __FINDINGS OF THE INVESTIGATION__

### PARTIES

The Complainant herein is:
    John Opoku,
    2110 Bronx Park East 2A

    Bronx, NY 10462


The Respondent herein is:
    The Educational Commission for Foreign Medical Graduates (ECFMG),
    3624 Market Street

    Philadelphia, PA 19104

F 3

# INTRODUCTION

## (Count 1)

In order to prove unlawful discrimination under the Pennsylvania Human Relations Act (PHRA) or the Pennsylvania Fair Educational Opportunities Act (PFEOA), an investigation must first establish a prima facie case.

This is achieved when the:

1.    complainant is a member of a protected class; and
2.    complainant was harassed and the content of the harassment related directly to his/her protected class status, i.e. sexual propositions, racial slurs, etc.; or
3.    complainant was harassed based on different treatment; and
4.    the harassment was severe; or
5.    the harassment was pervasive and regular; and
6.    the harassment detrimentally affected the complainant; and
7.    the harassment would detrimentally affect a reasonable person of the same protected class; and
8.    the harasser was a supervisory employee or agent.

If a prima facie case is established, the respondent must prove by a preponderance of the evidence that it exercised reasonable care to prevent and promptly correct any harassing behavior and that complainant unreasonably failed to take advantage of any preventative or corrective opportunities or to otherwise avoid harm.

# INTRODUCTION

## (Count 2)

In order to prove unlawful discrimination under the Pennsylvania Human Relations Act (PHRA) or the Pennsylvania Fair Educational Opportunities Act (PFEOA), an investigation must first establish a prima facie case.

This is achieved when the:

1.    complainant is a member of a protected class; and
2.    complainant applied, bid or otherwise sought the position, housing or commercial property, public accommodation, or educational opportunity; and
3.    a position, housing or commercial property, public accommodation, or educational opportunity was available; and
4.    complainant was as qualified as persons not in complainant's protected class who received the position, housing or commercial property, public accommodation, or educational opportunity; and
5.    complainant was rejected or subjected to techniques to discourage complainant; or
6.    respondent continued to seek applicants, or selected a lesser-qualified candidate.

If a prima facie case is established the respondent must articulate a legitimate non-discriminatory reason for the adverse action.

If the respondent articulates a legitimate non-discriminatory reason for the adverse action, the investigation must show the decision maker's reason is not true but, rather, a pretext for unlawful discrimination.

Unlawful discrimination is proved only when a prima facie case is established AND:

1.    the respondent does not state a legitimate, non-discriminatory reason for the adverse action; OR
2.    the investigation shows the respondent's reason is a pretext for unlawful discrimination.

# INTRODUCTION

### (Count 3)

In order to prove unlawful discrimination under the Pennsylvania Human Relations Act (PHRA) or the Pennsylvania Fair Educational Opportunities Act (PFEOA), an investigation must first establish a prima facie case.

This is achieved when the:

1.     complainant is a member of a protected class; and
2.     complainant was harassed and the content of the harassment related directly to his/her protected class status, i.e. sexual propositions, racial slurs, etc.; or
3.     complainant was harassed based on different treatment; and
4.     the harassment was severe; or
5.     the harassment was pervasive and regular; and
6.     the harassment detrimentally affected the Complainant; and
7.     the harassment would detrimentally affect a reasonable person of the same protected class; and
8.     the harasser was a supervisory employee or agent; and
9.     complainant was subjected to a tangible, adverse action.

If elements 1 through 8 are proven, unlawful harassment has been found. The remainder of the investigation will determine the extent of the extent of liability and the nature of the remedy the Commission will order from the respondent.

If all of the elements of a prima facie case of unlawful harassment are established, the respondent must articulate a legitimate, non-discriminatory reason for the tangible, adverse action. Also, the respondent must prove that it would have taken the adverse action even if there had been no harassment.

If the respondent articulates a legitimate, non-discriminatory reason for the tangible, adverse action and proves that it would have taken the negative action even if there had been no harassment, the investigation must show the respondent's reason is not the true reason but, rather, a pretext for unlawful discrimination.

If there is evidence of pretext, a recommendation will be made for the complainant to receive a full remedy for the tangible, adverse action.

If there is insufficient evidence to show that the harassment and the tangible, adverse action are linked, the complainant will receive no remedy for the tangible, adverse action. However, a recommendation will be made for the respondent to comply with the law regarding unlawful harassment.

# INTRODUCTION

## (Count 4)

In order to prove unlawful discrimination under the Pennsylvania Human Relations Act (PHRA) or the Pennsylvania Fair Educational Opportunities Act (PFEOA), an investigation must first establish a prima facie case.

This is achieved when the:

1.    complainant opposed an unlawful practice  or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing under the PHRA or PFEOA; and
2.    the alleged retaliator knew or had reason to know of the opposition or participation; and
3.    an adverse action was taken against the complainant subsequent to the opposition or participation; and
4.    there is a connection between the complainant's opposition or participation and the respondent's alleged decision or action.

If a prima facie case is established the respondent must articulate a legitimate, non-discriminatory reason for the adverse action.

If the respondent articulates a legitimate, non-discriminatory reason for the adverse action, the investigation must show the respondent's reason is not the true reason but, rather, a pretext for unlawful discrimination.

Unlawful discrimination is proved only when a prima facie case is established AND:

1.    the respondent does not articulate a legitimate, non-discriminatory reason for the adverse action; OR
2.    the investigation shows the respondent's reason is a pretext for unlawful discrimination.

# FINDINGS OF FACT

## (Count 1)

**Harassment (different treatment)**                    **National Origin Discrimination**

1. The Complainant is a member of the protected class.

> 1.1. It is undisputed that the Complainant identifies himself as national origin, Ghana.

2. The harassment does not result in the complainant being treated differently than those not in the complainant's protected class.

> 2.1. The Complainant alleges one day after having taken the Step I test, in August 2008, he began to recieve harassing phone calls, implying that a paid proxy had taken the Step I exam for the Complainant.

3. The harassment was not severe.

> 3.1. Harassing behaviors are considered severe when a hostile environment has been created as a result.

> The investigation does not support that the Complainant has been subjected to severely harassing behavior by the Respondent.

4. The harassment was not pervasive and regular.

> 4.1. Based on the Complainant's own submission, the Complainant recieved unwanted calls on his cell phone between August 20, 2008 and September, 8, 2008. In total 27 calls over 16 days. Specifically, the calls were recieved from California.

> 4.2. The Respondent is located in Philadelphia, PA. The investigation supports that the Respondent has no business entities in the state of California.

> 4.3. There has been no evidence provided to support any unwanted calls recieved on the Complainants' cell phone came from the Respondent.

> Furthermore, the Complainant makes no allegation that the calls were made based on his protected class, National Origin, Ghana.

## CONCLUSIONS

## (Count 1)

**Harassment (different treatment)**                    **National Origin Discrimination**

A finding of No Probable Cause is recommended because:

the investigation did not establish a prima facie case.

## FINDINGS OF FACT

### (Count 2)

**Harassment (class related)**                    **Retaliation Discrimination**

5. Paragraphs 1 through 4 are incorporated herein by reference as though set forth in full.

6. The Complainant is a member of the protected class.

    6.1. It is undisputed that the Complainant identifies his national origin as Ghana.

7. The Complainant did apply, bid or otherwise seek the position, housing or commercial property, public accommodation, or educational opportunity.

    7.1. It is undisputed that the Complainant sought an educational opportunity. Specifically the Complainant sought validation of his Certification for Identification Form (Form 186). However it was invalidated as of May 20, 2009.

8. A position, housing or commercial property, public accommodation, or educational opportunity was available.

    8.1. It is undisputed that the Respondent must recieve verification of a applicant's stats as a medcial shcool graduate directly from the medical school prior to registering a medical school for the USMLE.

    8.2. Documentation supports that the Complainant recieved verificationof the validation of the Certification of Identification Form (Form 186) on January 22, 2008. The certification was valid through Januaru 2013.

9. The Complainant does not contend that he/she was not as qualified as persons not in Complainant's protected class who received the position, housing or commercial property, public accommodation, or educational opportunity.

    9.1. The Complainant does not contend that he was as qualified as persons not in his protected class who recieved validation of their Form 186.

10. The Complainant was not rejected or subjected to techniques to discourage the Complainant.

10.1. The investigation does not support that the Complainant was denied the ability to take the Respondent's exam. The investigation supports that the Complainant was advised of the Respondents requirements to complete before taking any other Respondent exam.

10.2. The investigation supports that the Respondents requirements are found on its' website. Of the requirements for certification one must complete the application for ECFMG Certification; earn passing performance on USMLE Step 1, Step 2 Clincial Knowledge and Step 2 Clinical Skills and ECFMG must recieve primary source verification of one medical education credentials.

10.3. Documentation supports that the Complaiannt was advised via email on May 20, 2009 and on July 10, 2010, via US mail, that his Certification of Identification Form (Form 186)was invalidated as the Respondent had not recieved primary source verification of the Complainant's medical education credentials from his medical school.

The investigation supports that the May 2009 email notification recieved by the Complainant was recieved by 5,000 applicants whose certification was similiarly invalidated as the Complainants'

10.4. Documentation supports that the Complainant was ineligible for certification as he did not earn successful scores on the Respondents Step 1 Exam or Step 2CK Exam.

## CONCLUSIONS

### (Count 2)

**Harassment (class related)**                    **Retaliation Discrimination**

A finding of No Probable Cause is recommended because:

even though a prima facie case was established, the respondent articulated a legitimate, non-discriminatory reason(s) for its action(s) and the investigation did not show the respondent's defense is a pretext for unlawful discrimination.

The investigation does not support that the Complainant was rejected or subjected to techniques to discourage him. The investigation supports that the Respondent held the Complainant to the same standars as all other applicants.

### FINDINGS OF FACT

### (Count 3)

**Harassment (different treatment)**                    **National Origin Discrimination**

11. Paragraphs 1 through 10 are incorporated herein by reference as though set forth in full.

12. The Complainant is a member of the protected class.

    12.1. It is undisputed that the Complainant identifies his national orgin as Ghana.

13. The harassment does not result in the complainant being treated differently than those not in the complainant's protected class.

    13.1. The Complainant alleges that the Respondent fabricated the results the test results he receieved for both Step 1 and Step 2 testing in September 2008 and March 2009.

14. The harassment was not severe.

    14.1. The investigation
supports that the Complainant was advised of the review of his test scores in November 2008, whcih were 53 and 34 respectively. The minimum passing score for the Step 1 and Step 2 CK exams was 75 for each exam. The Complainant's test scores were rechecked per his request and were found to be accurate.

    14.2. Furthermore, the investigation supports that the Respondent is not the entity that determines the results for the USMLE test. Specifically, the National Board of Medical Examiners (NBME) scores the exam for which the Complainant took, as well as issues the score report for the exam.

## CONCLUSIONS

### (Count 3)

**Harassment (different treatment)**                    **National Origin Discrimination**

A finding of No Probable Cause is recommended because:

the investigation did not establish a prima facie case.

## FINDINGS OF FACT

### (Count 4)

Case 200804756                Tuesday, January 17, 2012                Page 9 of 10

**Barred from Readmittance**                                    **Retaliation Discrimination**

15. Paragraphs 1 through 14 are incorporated herein by reference as though set forth in full.

16. The Complainant did not oppose any practice forbidden by the Act, make a charge, testify or assist, in any manner, in any investigation, proceeding or hearing under the Act.

16.1. The investigation supports that the Complainant made a complaint to the Respondent, regarding the results of the Step 1 and Step 2CK exams. Specifically, the Complaiannt requested that the scores be rechecked. The Complainant made his request, dated September 27, 2008 to the Respodnent and Rosemary Carlin, Quality Control Coordinator, however the Complainant does not claim any protected class membership as grounds for any disparate treatment.

16.2. The invesitigation supports that the Complainant's exam scores were rechecked per his request and found to be accurate.

The Complainant was notified of the by both the Respondent and the NBME that the scoring was found to be acurate.

## CONCLUSIONS

### (Count 4)

**Barred from Readmittance**                                    **Retaliation Discrimination**

A finding of No Probable Cause is recommended because:

the investigation did not establish a prima facie case.

**K**

**(Doc 15)**

**Plaintiff's Motion in Opposition to Griffin and Martinez's
Motion to Dismiss Complaint)**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PEENSYLVANIA

JOHN PAUL OPOKU,                    :            CIVIL ACTION

    Plaintiff,                        :

    V                                 :

EDUCATION COMMISSION FOR             :            No. 12-03457-PBT

FOREIGN MADICAL GRADUATES   :

CHRISTINA JOY F, GRESE

KIMBERLY GRIFFIN

SUZANNE MARTINEZ                                        :


## OPOKU'S   MOTION  IN OPPOSITION TO GRIFFIN AND MARTINEZ'S MOTION

## TO DISMISS COMPLAINT COMPLAINT, WITH MEMORANDUM OF LAW

NOW COMES John Paul Opoku, appearing pro se, and for a motion in opposition GRIFFIN and MARTINEZ's Motion to Dismiss Complaint

On August 3, 2012, Griffin and Martinez submitted a motion to dismiss plaintiff's complaint while in default. Plaintiff filed a motion for summary judgment, which the court dismissed with prejudice as premature on April 16, 2013.

Plaintiff files a motion to pray the court to reject Griffin and Martinez motion to dismiss complaint. The reasons for plaintiff's motion are laid out in detail in the accompanied memorandum.


                                    Respectfully submitted,

DATE:

MAY 2, 2013

John Paul Opoku

2110 Bronx Park East 2A

Bronx, NY 10462

718-829-8978

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PEENSYLVANIA

| | |
|---|---|
| JOHN PAUL OPOKU<br><br>*Plaintiff*<br><br><br>EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES <u>et al</u><br><br>_____ *Defendants* | Civil Action No. 12-3457- PBT |

### ORDER

AND NOW, on this -------------------------day of --------------------2012, it is hereby ORDERED that

- The Motion to Dismiss of John Paul OPoku  is GRANTED and

- The Motion to Dismiss Complaint of KIMBERLY GRIFFIN  and  Suzanne Martinez  is DISMISSED.


So ordered,


-----------------------------------------------------------------------





# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PEENSYLVANIA

JOHN PAUL OPOKU,                    :        CIVIL ACTION

    Plaintiff,                       :

    V                                :

EDUCATION COMMISSION FOR           :        No. 12-03457-PBT

FOREIGN MADICAL GRADUATES,         :

CHRISTINA JOY F, GRESE

KIMBERLY GRIFFIN

SUZANNE MARTINEZ                              :

## OPOKU'S  MOTION  IN OPPOSITION TO  GRIFFIN AND MARTINEZ'S MOTION
## TO DISMISS COMPLAINT COMPLAINT,

### FACTUAL BACKGROUND

**A.** . On August 3, 2012, Griffin and Martinez submitted a motion to dismiss plaintiff's complaint claiming that (a) plaintiff's service of the original process was improper because he mailed only complaint and no summons and (b) it fails to state a claim.

**B.** . Opoku states that Griffin and Martinez are wrong by asserting that he mailed only complaints to them without the summons the court provided.  Plaintiff asserts that he

mailed one summons and one complaint each to Martinez and Griffin and each was

delivered to them on June 27, 2012.See Document 3.

C.  Plaintiff asserts that he served the original process on Griffin and Martinez in

accordance with Federal Rules of Civil Procedure Rule 4 (h) (1) (B), PENNSYLVANIA

RULES OF CIVIL PROCEDURE 403,

D.  Again, plaintiff states that Griffin and Martinez are wrong by asserting that his

complaint states no claim against Griffin and Martinez. Plaintiff asserts that his

complaint states valid claims against Griffin and Martinez and their co-defendants

and the Exhibits attached to Griffin and Martinez Motion to Dismiss are evidence of

the validity of plaintiff's claims.[1]

---

[1] Document 10, Attachments: # 1 Exhibit 1 – 11. : Each of these documents presented by Griffin and Martinez with their motion to dismiss bears a "Docket No. 2000804756". A Docket No. with a form 2008XXXXX for a case filed in 2009 at PHRC is fake and plaintiff discovered at the PHRC Central office in Harrisburg that this number is invalid and plaintiff's case he believed was filed at PHRC was not officially recognized. Plaintiff filed his case at PHRC on March 10, 3009 and accordingly he should have been assigned a docket No. of the form 2009XXXXX beginning with 2009, to reflect the year 2009 in which it was filed. Instead Griffin and Martinez assigned a fake Docket No 2008XXXXX for a case filed at PHRC in the year 2009. This confirms the hint plaintiff received at PHRC Central office that the docket no assigned to him was invalid and did not exist in PHRC system. Exhibit # 6, of Document 10, at the Footnote 2, on page 2, lists a pattern of authentic docket numbers also assigned in the year 2008, 2009, 2010, and 2011 at the authentic PHRC, which plaintiff has confirmed as the authentic pattern for cases docketed at PHRC in the Philadelphia Office .

Footnote 2 in Exhibit # of Document 10 List some of the authentic docket numbers assigned to cases filed at the authentic PHRC: Docket No. 200306586 and 200400132, Katshitani v. the Educational Commission For Foreign Medical Graduates reflecting a case filed in the year 2003 and 2004 respectively. Likewise Docket No. 200307743 and 200400134, Kivilcim v. The Educational Commission For Foreign Medical Graduates reflect cases filed at the authentic PHRC in the years 2003 and 2004 respectively.

Griffin and Martinez do not deny that Opoku's Complaint was filed at PHRC in the year 2009, as they state in their motion to dismiss, " After Opoku failed the requisite examinations to entering graduate medical education in the United States, he filed a charge of discrimination with the PHRC on or about March 10, 2009. Complaint ¶¶ 22, 58" See Document 10, on page 6.

# DISCUSSION

1. **PLAINTIFF SERVED SUMMONS AND COMPLAINT TOGETHER ON GRIFFIN AND MARTINEZ BY CERTIFIED/REGISTERED MAIL ON JUNE 27, 2012, IN A PROPER WAY STIPULATED BY FEDERAL RULES OF CIVIL RULE 4(h)(1)(B) PROCEDURE AND PENNSYLVANIA RULES OF CIVIL PROCEDURE 403.**

   a.  On June 27, 2012, two registered/certified mails known as "EXPRESS MAIL, addressed to Griffin and Martinez were delivered to Griffin and Martinez at their address on record. Each certified/registered mail contained a summons and a complaint and they were signed for by two individuals who believed that they were authorized to receive mails on behalf of Griffin and Martinez. See Document 3.

   b.  Plaintiff made summons and complaint on Griffin and Martinez in accordance with Federal Rules of Civil Procedure Rule 4 (h) (1) (B), and PENNSYLVANIA RULES OF CIVIL PROCEDURE 403, both of which unequivocally allow mailing summons with complaints in the original process.[2]

---

[2] **THE FEDERAL RULES OF CIVIL PROCEDURE RULE 4(h) (1) (B)** states that, "SERVING A CORPORATION, PARTNERSHIP OR ASSOCIATION. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign Corporation, or partnership or other unincorporated association that is subject to suit under a common name, must be served: ...(1) In a judicial district of the United State. (B) By delivering a copy of the summons and the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and –the agent is one authorized by statute

c. Plaintiff construed that in the circumstances in which Griffin and Martinez

have been sued, they could be considered associates or partners of their co-

defendants ECFMG and Grese, both of which are recognized as incorporated

PARTNERSHIP or ASSOCIATION organizations, and in whose interest

Griffin and Martinez acted illegally to violate plaintiff's constitutional rights.

Federal Rule of Civil Procedure Rule 11 (c) (1) states that, "Absent

exceptional circumstances, a law firm must be held jointly responsible for a

violation committed by its partner, associate, or employee."


## 2.  GRIFFIIN AND MARTINEZ'S CLAIM OF IMPROPER SERVICE OF THE

## ORIGINAL PROCESS IS INCORRECT

a. Despite the clear evidence that Griffin and Martinez received the

summonses and the complaints together, they have refused to

acknowledge the fact. Accordingly the court arrived at a decision on

April 16, 2013 to dismiss plaintiff's motion for summary judgment for

---

and the statute so requires- **by also mailing a copy of each to the defendant**," (Emphasis in bolding is by the plaintiff)

The **PENNSYLVANIA RULES OF CIVIL PROCEDURE 403**, which is not in conflict with The Federal Rules of Civil Procedure Rule 4 (h) (1) (B) stated above also states that, "if a rule of civil procedure authorizes original process to be served by mail, a copy of the process shall be mailed to the defendant by any form of United States mail requiring a receipt signed by the defendant or the defendant's authorized agent. Service is complete upon the defendant or the defendant's authorized agent signing the required receipt. If the mail is returned with notation by the postal authorities that the defendant refused to accept the mail, the plaintiff shall have the right of service by mailing a copy to the defendant at the same address by ordinary mail with the return address of the sender appearing thereon. Service by ordinary mail is complete if the mail is not returned by the postal authorities to the sender within fifteen days after mailing. If the mail is returned with notation by the postal authorities that it was unclaimed, the plaintiff shall make service by another means pursuant to these rules."

default with prejudice believing that Griffin and Martinez are correct. The court, through Honorable Judge P.B. Tucker, construed, based on the misinformation given by Griffin and Martinez, that plaintiff simply mailed only the complaint to Griffin and Martinez without adding the summons the court had provided. There is sufficient evidence, however, to support that Griffin and Martinez have lied to mislead the court into error of judgment.[3]

b. As indicated above, in addition to receipts and post office notifications supporting that at least two certified/registered mails were delivered to Griffin and Martinez on June 27, 2012 and it came from Opoku in association with the court, (see Document 3), Griffin and Martinez have denied taking delivery of any mails at all. Thus they state that, **"A review of Exhibit 1-5, attached to plaintiff's Motion, seems to indicate that no one, certainly not Griffin and Martinez, signed for the express mail."** (Emphasis by bolding is plaintiffs). See Document 9", Footnote 1, on page 3.

c. In a conflicting statement, however, Griffin and Martinez flip-flop and state in admission that they received the mails plaintiff on June 27, 2012 that contained two summonses and two complaints. Thus they state that, **"Instead, plaintiff apparently mailed the summons and complaint to Griffin and Martinez at their work address, although**

---

[3]The court stated, that "As stated above, however, simply mailing the complaint to the defendants did not constitute proper service." See Document 14, Footnote 1 on page 2.

he did not include a waiver of service, as required by the Rules."

(Emphasis in bolding is by plaintiff). See page 3 of" Document 9.

d. In another demonstration of inconsistency, Griffin and Martinez filed

Affidavit with the court on July 20, 2012, about 35 days after the

certified/ Registered mails were delivered to their address on record, to

document that on June 27, 2012, the very day the certified/registered

mails containing the summonses and complaints were delivered to

their address on record, they sent a waiver form to plaintiff upon

noticing that the certified mails they deny receiving contained only

complaint and no summons.

e. On July 20, 2012, they engaged in an invalid action, as matter of law,

to file a waiver with the court to "expedite litigation", as they claim.

f. BRUTAL CONTRADICTION OF LOGIC: The lack of logic in

Griffin and Martinez's above story and action is self-evident. Plaintiff

notes that a complaint without summons, as they lie to excuse their

default, and without waivers included either as they note as a matter of

fact, would bear no authority of the court and could be discarded as a

fiasco without any consequences, but Griffin and Martinez claim that

for whatever reasons, they still felt the authority of the court in the

complaint that they claim came without summons and acted

accordingly to make up for a fatal error they claim the plaintiff made,

in order to complete the original process by themselves by filing a

waiver they were not required to, and then file a motion to dismiss the complaint because of the said error.

g. In order to make their invalid claims and action of filing a waiver on their own accord look proper, Griffin and Martinez by inclusion have taken to manipulating the Federal Rules of Civil Procedure itself in order to make plaintiff's service of the original process on them fall short of compliance. Although it is not a common practice in the State of Pennsylvania for original process to be made on defendants by registered /certified mail, the State of Pennsylvania does not disapprove of serving original process by certified mail. See Footnote 2

h. Griffin and Martinez go to the extent of manipulating Rule 4 (d), for instance, by introducing into the provision a clause stated as, "[of a **summons and complaint, e.g.; original process**]" to make the Rule reads, "an individual...that is subject to services [of a summons and complaint, e.g., original process] under Rule 4 (e), (f), or (h) has a duty to avoid unnecessary expense of serving the summons...." The original Fed. R. Civ. P. 4(d), however, states, "an individual...that is subject to services under Rule 4 (e), (f), or (h) has a duty to avoid unnecessary expense of serving the summons...."

i. Upon making the above distortion, Griffin and Martinez use the distorted code as a basis of their argument and state that, "Plaintiff's analysis is flawed because under Fed. Civ. P.4, he may not serve

original service by mail except where a waiver of service is included.

Thus, plaintiff's service upon Martinez and Griffin was fatally

flawed". See "GRIFFIN AND MARTINEZ'S MEMORANDUM OF

LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR

SUMMARY JUDGMENT AND/OR DEFAULT" Document 9.

j.  The Federal Rules of Civil Procedure Rule 4(d) stipulates that, a

waiver, when decided as a substitution for sending summons, must be

initiated by the plaintiff. Thus it is an exclusive right of the plaintiff

and the purpose of that is to reduce financial burden of serving

summons on the defendant in secured ways. The law does not give the

defendant the right to file any waiver on their own accord. Therefore it

is improper for Griffin and Martinez to pretend that they did not

receive the summons and then attempt to explain away their default by

undertaking an invalid action.[4]

k.  Plaintiff notes that the only thing Griffin and Martinez's manipulation

has accomplished is making Federal Rules of Civil Procedure Rule 4

---

a.  [4] Federal Rule of Civil Procedure Rule 4 (d): WAVING SERVICE: Rule 4(d):
Requesting a Waiver: An individual, corporation, or association that is subject
to service under Rule 4 (e), (f), or (h) has a duty to avoid unnecessary expense
of serving the summons. The plaintiff may notify such a defendant that an
action has been commenced and request that the defendant waive service of a
summons. The notice and request must: (B) be in writing and be addressed:
(iii) to the individual defendant, or (iv) for a defendant subject to service
under Rule 4(h), to an officer, a managing or general agent, or any other agent
authorized by appointment or by law to receive service of process....(C ) be
accompanied by a copy of the complaint, 2 copies of a waiver form, and a
prepaid means for returning the form (G) be sent by first-class mail or other
reliable means.

(d) stand in conflict with Federal Rules of Civil Procedure Rule 4 (h)

(1) (B), PENNSYLVANIA RULES OF CIVIL PROCEDURE 403, and Fed.

R. Civ. P. Rule 4 (d) and they are wrong to use this tactic to make plaintiff's

service of the original process look improper.

I.   As highlighted above, Griffin and Martinez's motion to dismiss plaintiff's

complaint "...for lack of Prosecution" is invalid and should be rejected.

3.   **GRIFFIN AND MARTINEZ"S MOTION TO DISMISS PLAINTIFF"S
COMPLAINT FOR LACK OF PROSECUTION IS INCORRECT AND
DEMONSTRATES AN ATTEMPT TO HIDE A DEFAULT WITHOUT AN
EXCUSABLE REASON**

### ARGUMENT I

As indicated in the above factual and logical highlights, it cannot be denied that

Griffin and Martinez's motion to dismiss is a product of a dubious scheme to deceive

and mislead the court. Plaintiff believes that this motion is a testimony of perjury,

sabotage, a theft of the court's property, and obstruction of justice. A motion to

dismiss based on such a reputation does not only give a sufficient reason for its

rejection but also summary judgment in favor of the plaintiff. In Walter Process

Equipment v. Food Machinery 382 U.S 172 (1965), it was held that in a "motion to

dismiss", the material allegations of the complaint are taken as admitted.

## 4. PLAINTIFF'S COMPLAINT STATES VALID CLAIMS AGAINST GRIFFIN AND MARTINEZ AND THEIR CO-DEFENDANTS

a. In their motion to dismiss plaintiff's complaint, Griffin and Martinez have incorrectly stated that plaintiff's complaint does not state a claim upon which relief can be granted. Griffin and Martinez are incorrect. Plaintiff's complaint state valid claims against Griffin and Martinez and their two co-defendants, as supported by the evidence in paragraph 59 through 89 of the complaint and further explained in this memorandum.

### FACTUAL BACKGROUND

b. On Thursday, about 12:35pm, the fake PHRC Griffin and Martinez presented to fool Plaintiff for about two years and eight months came to light when plaintiff called to PHRC Central Office in Harrisburg with an intention to speak with Ms. Arberdella White-Davis, who had supposedly sent him a letter dated June 15, 2010 as Compliance Director at PHRC and had not replied to two letters plaintiff had in turn sent to her by the USPS Express mail. See Complaint paragraph 71, footnote 44, Appendix C8.

c. In the above call plaintiff made, he made two important discoveries that drastically changed his views about the kind of PHRC he was dealing with and the prospects of his cry for justice. Plaintiff had all along, before this time, believed that he was dealing with the real PHRC and his complaint was being handled by authentic PHRC representatives who had been duly appointed to

handle his complaint to keep up with the hope he had been imbued with by the office of the Attorney General in Harrisburg:

d. FIRST: Plaintiff discovered that Ms. Arberdella White Davis, who had supposedly written him a letter that was dated June 15, 2010 with her saved signature on it, had retired from PHRC long before June 15, 2010 and could not be present to write him the letter of June 15, 2010 in her former capacity as PHRC Compliance Director. See Complaint Paragraph 71; Footnote 44; Appendix C8. See Memorandum of Law in Support of Griffin and Martinez's Motion to Dismiss Plaintiff's Complaint" p8.

e. SECOND: Plaintiff discovered that his complaint had no valid recognizable docket number or case number at the authentic PHRC's current case archives, which could be assessed at the PHRC Central Office in Harrisburg. Notably, the PHRC representative who obtained plaintiff's case number, as assigned to him by Kimberly Griffin under the fake PHRC, and attempted to use it to ascertain the status of plaintiff's complaint, was unsuccessful because it was invalid. See Footnote 1

f. Plaintiff's shocking discovery led him to compare some other popular docket numbers officially documented in the archives of the authentic PHRC and he noted that a docket number of 200804756, of the form 2008XXXXX, assigned to his complaint filed on March 10, 2009 at PHRC deviated from the normal pattern.. Notably this questionable docket number appears on all the documents Griffin and Martinez have submitted to the court to make a point. See Document 10, Attachments: # 1 Exhibit Exh 1-11. See Footnote 1

Page 11 of 23

g.  Plaintiff began to reflect on, and put into right perspective the bizarre events he

had observed over the months in his dealings with Terry Williams, Kimberly

Griffin and Suzanne Martinez as PHRC representatives. Plaintiff reflected on the

fact that when ECFMG apparently filed a motion to dismiss his complaint on July

29, 2009, it was not until January 29, 2010, about six months later, that Mr.

Hancock contacted plaintiff to be briefed about the case he did not seem to be

aware of, following plaintiff's second contact with the Attorney General's office

in Harrisburg,. Mr. Hancock gave response to the so-called motion to dismiss

filed by ECFMG by relying on the information plaintiff sent him, which was long

known to Kimberly Griffin but had been kept by her under cover. He most likely

made Griffin certify to the document to take responsibility of what he apparently

considered a serious breach of trust on her part. See Document 10, Attachment: #

1 Exhibit # 6

h.  EVIDENCE OF THE DECEPTION: Plaintiff is aware that no judicial institution

in the U.S gives six months to a complainant to file response to a motion to

dismiss filed by the opponent except in special situations like Plaintiff's current

case where default and a motion for Summary Judgment came in between to

break the chain of progress. The authentic PHRC gives about fourteen days for

that process.

i.  It was the same Mr. Hancock whose passion for justice and professional integrity

led him to be the first to suggest to plaintiff to consider filing his case at the

Federal Court, apparently knowing that the due process plaintiff had been made to

believe by Kimberly Griffin was not real and it had made the status of limitation

on plaintiff's complaint expire at the State level.

j.  Following Mr. Hancock's unexpected involvement in plaintiff's case, ECFMG

secretly moved their office from Philadelphia to New Jersey because of the claim

they had made in their fictitious 'motion to dismiss' to indicate that PHRC did not

have subject matter jurisdiction over Plaintiff's complaint. It became clear that

Kimberly Griffin who had falsely told plaintiff that PHRC legal team would

respond to the so-called motion had literally dumped plaintiff case in the garbage

for six months without making any member of the legal team get involved

because the due process he offered plaintiff was unreal and under cover.


## ARGUMENT II


## OPOKU PROVES PERSONAL INVOLVEMENT ON THE PART OF
## GRIFFIN AND MARTINEZ IN DEPRIVING HIM DUE PROCESS

k.  In their motion to dismiss for failure to state a claim, Griffin and Martinez states,

that, "Sovereign immunity Bars the §§ 1983 and 1985 Claims Against

Commonwealth Employees in their Official Capacities" See Document 10,

Memorandum, on page 9.  They also argue that, "Commonwealth Employees in

their Official Capacities Are Not "Person[s] Amenable to suit under §§ 1983

and 1985 .... Therefore, plaintiff may not state a claim under §§ 1983 and

1985 against Griffin and Martinez in their official capacities". See Document

9, on page 11.  Griffin and Martinez are incorrect about their claim of immunity

to suit under §§ 1983 and 1985. In a case filed by Barry Young, case number 09-2220, on April 29, 2009, in U.S Court of Appeals, Third Circuit, against defendants Tom Corbett (Attorney General), Joanne Schmidt (Investigator), Arberdella White-Davis, (Director of Compliance), Homer C. Floyd, (Executive Director), J. Whyatt Mondesire, (Commissioner) (Employees of Commonwealth of PA Human Relations Commission) and Craig Wynn (Supervisor), the Court construed the Plaintiff's complaint as claiming, pursuant to 42 U.S.C §1983, that he suffered a violation of his constitutional rights, specifically his right to due process of law as guaranteed by the Fourteenth Amendments. Plaintiff Barry Young referenced discrimination at various points, apparently alleging that defendant Schmidt's actions were based on plaintiff's race.

l.  Notably, in the above reference case, the Court did not dismiss the case against PHRC employees on the grounds of the 11th Amendment, but on the basis that, "A defendant in a civil right action must have personal involvement in the alleged wrong doing; liability cannot be predicated solely on the operation of respondent superior. Personal involvement can be shown through allegations of personal direction, or of actual knowledge and acquiescence." Rod v. Dellarciprete, 845 F. 2d 1195, 1207 (3d Cir 1988) cited in Evancho v. Fisher, 423 F. 3d 347, 353 (3d Cir. 2005).

m.  Accordingly, Plaintiff John Paul Opoku in the current civil action against Kimberly Griffin and Suzanne Martinez makes allegations of personal involvement on the part of the defendants Kimberly Griffin and Suzanne Martinez. Griffin and Martinez, even though work at PHRC as representatives,

did not, in fact, have any official authorization to act in the way they presented

themselves to plaintiff to work for the ill-interest of ECFMG and Gresc, They

faked that authorization by faking letters under the saved signatures of their

superiors, including that of Ms. White Davis who had retired from PHRC. By so

doing they fooled Opoku with a fake due process and blocked plaintiff's

complaint from being properly handled by the actual PHRC he intended to deal

with. When plaintiff hired a new attorney, Griffin and Martinez quickly moved to

make a fake dismissal of a case that was not officially documented at the

authentic PHRC after holding the case undercover for it to lose its statute of

limitation at the State level. See Exhibit # 7, related to Document 10, Thus,

faking the due process that their actual superiors at the Philadelphia Regional

office or Central office were not aware of, and used the official logistics of PHRC

in the wrong way to make it look real do not entitle Griffin and Martinez to

immunity.

n. Defendants Kimberly Griffin and Suzanne Martinez acted in deceit and with

malice, bias, and prejudice, and in conspiracy with ECFMG and Christina Joy F.

Grese, all for the purpose of helping ECFMG and their lawyer Christina joy F.

Grese deprive plaintiff of fundamental human rights to be credited for his

excellent examination scores and enjoy with dignity other human rights

guaranteed and protected by the constitution of the United States.

Cohen, Esquire, entered an appearance on behalf of plaintiff on or about June 30, 2009". See Document 10, Memorandum, on page 7.

c.  Plaintiff believes that the false statement made above is attempting to mislead the court to believe that the PHRC Kimberly Griffin presented to the plaintiff was real and that plaintiff's then lawyer filed a notice of appearance to the real PHRC. This is incorrect. Griffin betrayed the lies by the exhibition of contradictions in her actions. Having stated earlier in a letter to plaintiff that if he hired an attorney and she received the attorney's notice of appearance she would deal directly with the attorney and not the plaintiff, she still kept direct contact with plaintiff ignoring that he had an attorney. See Complaint paragraph 64. Despite exposing the truth to the court in his complaint, Griffin and Martinez defend this falsehood to the court in their Memorandum of law stating, "On July 24, 2009, ECFMG filed a motion to dismiss the PHRC Proceedings". ..." In the August 17, 2009 letter, Griffin advised plaintiff, with a copy to his counsel, Ms. Cohen that, on behalf of his position, the PHRC office of Legal Counsel would submit a memorandum in opposition to ECFMG's motion to dismiss and that plaintiff's counsel could submit a brief as well." See Document 10, Memorandum, page 7.

d.  Still lying to the court to hide their deprivation of plaintiff of his fundamental right to get the legal representation he had paid for, Griffin and Martinez opportunistically declares to the court without remorse stating that, "On August 30, 2009 Ms. Cohen advised plaintiff that she would not be doing more legal work for him or filing a memorandum in opposition to ECFMG's

pro se and novice status to cast him as ignorant about the basics of the law. Plaintiff mailed summonses and complaint to Griffin and Martinez in one of the most secure ways of mailing in the U.S. The two registered/certified mails contained two summons and two complaints for Griffin and Martinez. If the mails had not been delivered and were returned to plaintiff, he would have found another means to deliver the mail containing summons, as stipulated by the Pennsylvania Rules of Civil Procedure 403. As it were, the registered certified mails were in fact delivered as documented by the post office but Griffin and Martinez have suppressed the two summonses and lied to the court by stating under oath that they did not receive them despite the clear evidence pointing to the contrary. Above all else, they flip-flop to say in one moment that they did not receive them and then in another moment say they received them and it was only complaint without summons. Then they take the court and plaintiff for granted and move to dismiss plaintiff's complaint for "...FAILURE TO STATE A CLAIM, and "...for Lack of Prosecution" to hide their default. In Walter Process Equipment V. Food Machinery 382 U.S 172 (1965), it was held that in a "motion to dismiss", the material allegations of the complaint are taken as admitted and it cannot be more true than in the case of Griffin there is sufficient evidence of perjury, testimonies of their crimes presented by themselves, and lying to cover default.

Plaintiff therefore moves the court, not only for the rejection of Griffin and Martinez's motion to dismiss plaintiff's complaint, but also a reversal of summary judgment to decision to favor the plaintiff.

Respectfully submitted

Date: MAY 2, 2013

John Paul Opoku

2110 Bronx Park East 2A

Bronx, NY. 10462

Tel. 718-829-8978

## CERTIFICATE OF SERVICE

I hereby certify that by the United States Parcel Service (UPS), I have served on the Court, a copy of "Opoku's Motion in Opposition to Griffin and Martinez's Motion to Dismiss Plaintiff's Complaint" and "Opoku's Memorandum of law in Opposition to Griffin and Martinez Motion to Dismiss Plaintiff's Complaint" on —MAY 2, 2013

I further certify that by the United States Postal Service (UPS), I have served ECFMG and Christina Joy F. Grese a copy of "Opoku's Motion in Opposition to Griffin and Martinez's Motion to Dismiss Plaintiff's Complaint" and "Opoku's Memorandum of law in Opposition to Griffin and Martinez's Motion to Dismiss Plaintiff's Complaint" through their Attorneys on record, Brian W. Shaffer and Elisa P. McEnroe, MORGAN, LEWIS & BOCKIUS LLP, 1701 Market Street, Philadelphia, PA 19103, on ....MAY 2....2013

I further certify that by the United States Postal Service (UPS), I have served on Kimberly Griffin and Suzanne Martinez a copy of "Opoku's Motion in Opposition to Griffin and Martinez's Motion to Dismiss Plaintiff's Complaint" and ""Opoku's Memorandum of law in Opposition to Griffin and Martinez's Motion to Dismiss Plaintiff's Complaint", through their attorney on record BARRY N. KRAMER, PA OFFICE OF ATTY GENERAL, 21 SOUTH 12TH STREET THIRD FLOOR, PHILADELPHIA, PA 19103-2921

DATE: MAY 2, 2013

John Paul Opoku (Pro se)

2110 Bronx Park East

Bronx NY 10462

718-829-8978

Page 23 of 23

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PEENSYLVANIA

| | |
|---|---|
| JOHN PAUL OPOKU<br><br>*Plaintiff*<br><br><br>EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES <u>et al</u><br><br>*Defendants* | Civil Action No. 12-3457- PBT |

### ORDER

AND NOW, on this ------------------------day of ------------------2012, it is hereby ORDERED that

- The Motion to Dismiss of John Paul OPoku  is GRANTED and

- The Motion to Dismiss Complaint of KIMBERLY GRIFFIN  and  Suzanne Martinez  is DISMISSED.

So ordered,

_____

# L

## (Doc 16)

### Plaintiff Opoku's Motion in Opposition to ECFMG and Grese's Motion to Dismiss Complaint

### Of Memorandum: Only conclusion and its certifications are included

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PEENSYLVANIA

JOHN PAUL OPOKU,                    :          CIVIL ACTION

     Plaintiff,                    :

    V                                  :

EDUCATION COMMISSION FOR     :          No. 12-03457-PBT

FOREIGN MADICAL GRADUATES    :

CHRISTINA JOY F, GRESE

KIMBERLY GRIFFIN

SUZANNE MARTINEZ                                       :

## OPOKU'S  MOTION  IN OPPOSITION TO ECFMG AND GRESE' MOTION TO

## DISMISS COMPLAINT COMPLAINT, WITH MEMORANDUM OF LAW

    NOW COMES John Paul Opoku, appearing pro se, and for a motion in opposition to
ECFMG and Grese's Motion to Dismiss Complaint

    On July 23, 2012, ECFMG and Grese submitted a motion to dismiss plaintiff's complaint
while In default. Plaintiff filed a motion for summary judgment, which the court dismissed with
prejudice as premature on April 16, 2013.

    Plaintiff files a motion to pray the court to reject ECFMG and Grese's motion to dismiss
complaint. The reasons for plaintiff's motion are laid out in detail in the accompanied
memorandum.

                                Respectfully submitted,

DATE:        MAY 2, 2013

John Paul Opoku

2110 Bronx Park East 2A

Bronx, NY 10462

718-829-8978

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PEENSYLVANIA

| | |
|---|---|
| JOHN PAUL OPOKU<br><br>*Plaintiff*<br><br><br>EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES <u>et al</u><br><br><u>*Defendants*</u> | Civil Action No. 12-3457- PBT |

## ORDER

AND NOW, on this ----------------------day of ----------------2012, it is hereby ORDERED that

- The Motion to Dismiss of John Paul OPoku  is GRANTED and

- The Motion to Dismiss Complaint of EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES and  CHIRISTINA JOY F GRESE  is DISMISSED.

So ordered,

_____

human being with all his faculties, with life, blood and senses to feel massive and sustained abuse

for nearly five years, not to mention the worst of all, which is depriving him the fundamental

right to put his talents at the disposal of the American public, ECFMG and Grese have had   the

audacity to sate bold and clear to the court saying "Plaintiff's allegations do not meet the

exceedingly high standard required for a valid claim of punitive damages. Accordingly, should

any of Plaintiff's claims survive Plaintiff's prayer for punitive damages should be stricken and

denied" See Document 5, on page 22.

### CONCLUSION

As noted above, ECFMG and Grese are aware that plaintiff's complaint has claims after

all, for which he has prayed the court for punitive damages. In trying to prove the claims wrong

they had nothing to present but documents they have forged upon which they say their motion to

dismiss is based. They hide the true material facts and present forged documents.

It is clear that ECFMG and Grese are aware that they have wronged the plaintiff but just

that they do not see it as serious enough because it is against a person they have no regard for

because of his national origin that go hand and hand with his race and skin color. If plaintiff's

performance on the USMLE Step 1 and Step 2 –CK had been ordinary, he believes that he would

not be having this litigation with ECFMG, but it is not his fault that his hard work paid off bright

dividend, as has been the case in all Institutions of learning he has been. Since it is not the only

place in the U.S the plaintiff has excelled with recognition, it becomes clear that it is ECFMG

and Grese who have problem and not plaintiff. In Title VII action claiming that a city

discriminated against white firefighter candidate for a promotion by discrdaing their test results

based on a statistical racial disparity, summary judgment for Defendants is reversed where the

City's action in discarding the test violated Title VII, because a threshold showing of a

significant statistical disparity is far from a strong basis in evidence that the city would have been

able under Title VII had it certified the test result. From the foregoing factual enhancement, it

cannot be denied that ECFMG and Grese's motion to dismiss is a product of a dubious scheme to

deceive and mislead the court and should not be looked favorably. Plaintiff believes that this

motion is a testimony of a dubious character that glorifies the ability to outsmart others with

tricks. It is therefore a sufficient reason not only for the denial of a motion to dismiss but also

summary judgment in favor of plaintiff. In Walter Process Equipment V. Food Machinery 382

U.S 172 (1965), it was held that in a "motion to dismiss", the material allegations of the

complaint are taken as admitted.

Respectfully submitted

Date: MAY 2, 2013

John Paul Opoku

2110 Bronx Park East 2A

Bronx, NY. 10462

Tel. 718-829-8978


**EXHIBIT 1 ATTACHED**

## CERTIFICATE OF SERVICE

I hereby certify that by the United States Parcel Service (UPS), I have served on the Court a copy of "Opoku's Motion in Opposition to Griffin and Martinez's Motion to Dismiss Plaintiff's Complaint" and "Opoku's Memorandum of law in Opposition to Griffin and Martinez Motion to Dismiss Plaintiff's Complaint" on *MAY 2, 2013*

I further certify that by the United States Postal Service (UPS), I have served ECFMG and Christina Joy F. Grese a copy of "Opoku's Motion in Opposition to Griffin and Martinez's Motion to Dismiss Plaintiff's Complaint" and "Opoku's Memorandum of law in Opposition to Griffin and Martinez's Motion to Dismiss Plaintiff's Complaint through their Lawyers, Brian W. Shaffer and Elisa P. McEnroe, MORGAN, LEWIS & BOCKIUS LLP, 1701 Market Street, Philadelphia, PA 19103, on *MAY 2, 2013*

I further certify that by the United States Postal Service (UPS), I have served on Kimberly Griffin and Suzanne Martinez a copy of "Opoku's Motion in Opposition to Griffin and Martinez's Motion to Dismiss Plaintiff's Complaint" and "Opoku's Memorandum of law in Opposition to Griffin and Martinez's Motion to Dismiss Plaintiff's Complaint " through their attorney BARRY N. KRAMER, PA OFFICE OF ATTY GENERAL, 21 SOUTH 12TH STREET THIRD FLOOR, PHILADELPHIA, PA 19103-2921 .

DATE: *MAY 3, 2013*

John Paul Opoku (Pro se)

2110 Bronx Park East

Bronx NY 10462

718-829-8978

Exhibit 1

This to certify that
this a copy of calendar
made from the original
copy.

_[signature]_

John Paul Opden

_[notary stamp]_
GENNADIY MATATOV
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01MA6067808
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES 02/18/20

5/2/13

**M**

**Doc 17**

**Plaintiff Opoku's Amended Memorandum in Opposition
To ECFMG and Grese's motion to Dismiss Complaint**



# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PEENSYLVANIA

| | |
|---|---|
| JOHN PAUL OPOKU | X |
| **Plaintiff** | X |
| | X |
| | X |
| EDUCATION COMMISSION FOR | X |
| FOREIGN MEDICAL GRADUATES | X |
| <u>et. al</u> | X |
| | X |
| **Defendants** | X |

CIVIL ACTION No.: 12-03457-PBT

FILED

MAY – 7 2013

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## <u>OPOKU'S  MOTION TO AMEND THE MEMORANDUM OF LAW  IN OPPOSITION</u>

## <u>TO  ECFMG  AND  GRESE'S MOTION TO DISMISS COMPLAINT)</u>

### 1.  INTRODUCTION

NOW COMES John Paul Opoku, appearing Pro se, and for a motion to replace "

**"OPOKU'S MEMORANDUM OF LAW IN OPPOSITION TO ECFMG AND**

**GRESE's MOTION TO DISMISS COMPLAINT"** with " <u>OPOKU'S</u>

<u>MEMORANDUM OF LAW  IN OPPOSITION TO  ECFMG  AND  GRESE'S</u>

<u>MOTION TO DISMISS COMPLAINT, AMENDED"</u>,, as amended..

Attached is the document amended.

Respectfully submitted,

DATE: MAY 5, 2013

John Paul Opoku

2110 Bronx Park East 2A

Bronx, NY, 10462

719- 829- 8978

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PEENSYLVANIA

| | | |
|---|---|---|
| JOHN PAUL OPOU | X | |
| Plaintiff | X | |
| | X | |
| | X | CIVIL ACTION No.: 12-03457-PBT |
| EDUCATION COMMISSION FOR | X | |
| FOREIGN MEDICAL GRADUATES | X | |
| et. al | X | |
| | X | |
| Defendants | X | |

**FILED**

MAY - 7 2013

MICHAEL E. KUNZ, Clerk

By_____ Dep. Clerk

## OPOKU'S MEMORANDUM OF LAW IN OPPOSITION TO ECFMG AND GRESE'S

## MOTION TO DISMISS COMPLAINT, (AMENDED)

### 1. INTRODUCTION

On July 23, 2012, ECFMG and Grese submitted a motion to dismiss Opoku's

complaint and gave their reasons as, (a) "Plaintiff John Paul Opoku (Plaintiff") brings

the present action *pro se*" (b) "On June 27, 2012, Plaintiff served his Complaint upon

Defendants via Express Mail, (c.)" plaintiff's complaint does not contain numbered or

headed counts" [and that is a fatal error], and (d)Plaintiff's Complaint does not state

any claim upon which relief can be granted as to Defendants. ECFMG and Grese are

incorrect about these assertions they have made regarding Plaintiff's complaint.

## 2. DISCUSSION

### A. OPOKU REPRESENTING HIMSELF IS AN UNFORTUNATE SITUATION BUT LEGAL AND NECESSARY

#### a. FACTUAL BACKGROUND RELATED TO OPOKU"S SITUATION

ECFMG and Grese's reference to Opoku representing himself is an ambiguous statement but one thing is clear, and that is, Opoku representing himself is an unfortunate situation but it does not disprove any of the claims he has made against ECFMG, Grese, Griffin, and Martinez .[1] It is necessary for Opoku, to bring the present action *pro se* in the interest of justice because it is not a matter of choice for him to accept or reject considering the unfortunate condition ECFMG, Grese, and their Co-defendants have imposed on him.

---

[1] . Plaintiff appreciates lawyers and the work they do but he has high expectations of them as defenders of human rights and ultimate preservers of modern civilization. Therefore, when Ms. Cohen disappointed him and made it appear as if money is the only thing that matters in the legal practice, he did not give up taking that as an exception rather than the rule. Plaintiff retained another lawyer in the person of Brian Mildenberg Esq. and when he suggested that he was pursuing settlement plaintiff's case with ECFMG he did not object.

Lawyer Mildenberg made his client, the plaintiff, understand that he was going to threaten ECFMG and Grese with civil law suit and that might move them to cooperate with him to resolve the problem that was already more than three years old. Plaintiff did not object. However, not long after, Plaintiff was placed in a position to stand up for himself when suddenly Griffin and Martinez, without knowing that he was aware of the fake PHRC they had presented in conspiracy with ECFMG and Grese to fool him, preemptively faked a dismissal of plaintiff 's complaint without merit agreeing with ECFMG that plaintiff is the stupidest of the stupidest Doctor in the world ever taken the USMLE exams in the U.S, despite the fact that the highest record breaking scores obtained by him on the tests proved otherwise.

With few months left for all statutes of limitations to expire on Plaintiff's complaint after

ECFMG and Grese held his complaint in captivity under a fake PHRC until January 23, 2012

and in conspiracy with PHRC representatives, Kimberly Griffin and Suzanne Martinez, plaintiff

needed to act to defend his rights. Plaintiff did not hear from Lawyer Mildenberg, the new

Lawyer he had retained, but he wrongly believed that he was negotiating a settlement deal with

ECFMG and Grese, as he had assured plaintiff.  Suddenly, Opoku received a notice from

Suzanne Martinez indicating that PHRC had investigated his complaint and it had been

dismissed without merits and he did not hear from Lawyer Mildenberg till today despite paying

him $3400.00, of which the last monthly payment was in December 2011.

In the above circumstances Opoku had no choice but to act on his instincts and seek

justice in the federal court by himself. Even though Plaintiff retained Lawyer Mildenberg on

September 2014, the co-defendants of ECFMG and Grese have indicated in their motion to

dismiss that, as of January 23, 2012 when they faked dismissal of plaintiff complaint without

merit, more than four months since plaintiff had retained Lawyer Mildenberg, he had not filed

notice of appearance with PHRC.

The truth is, Lawyer Mildenberg did not file a notice of appearance with the authentic

PHRC because the authentic PHRC had no record of Opoku's complaint in their archives for

which Opoku needed a legal representation.

As hinted above, plaintiff believes that ECFMG and Grese have enormous capacity to

influence popular opinion and does so to mislead the public to believe what they want them to

believe regarding their treatment of Opoku and that has placed him at a great disadvantage in

finding another lawyer who will be interested in his case. Thus, Plaintiff's factual version of

events related to the abuse he has endured from ECFMG, Grese, and their co-defendants for the

last few years has not yet attracted any lawyer to his aid and he blames ECFMG and Grese.

When on June 8, 2009, plaintiff first consulted Ms. Faye Riva Cohen Esq. about his

complaint, which he first thought was being handled well by the authentic PHRC, for instance,

Ms. Cohen was enthusiastic about justice for the plaintiff and encouraged plaintiff to retain her.

This was so only until she came into contact with ECFMG and Griffin upon taking plaintiff's

money to establish her representation. It was not long after Ms. Cohen's encounter with ECFMG

and Griffin that she began to show indifference in Opoku's case. She asked Opoku, for instance,

whether he was well informed about ECFMG's policy in their Information Bulletin. Ms. Cohen

asked Opoku, "Have you read the ECFMG Information Bulletin on their Website?"

Plaintiff responded to the above question by explaining that ECFMG had been

manipulating the information through additions or omissions and anytime plaintiff hinted

"PHRC" about some contradictions in the actions of ECFMG towards him, they quickly edited

the information to match their action as a way to sway third parties. Ms. Cohen could not be

persuaded by plaintiff's factual revelation.

Plaintiff retained two attorneys to represent him at what initially appeared to him as a

genuine PHRC but later turned out to be a fake one presented by a conspiracy network involving

ECFMG, Grese, Griffin, and Martinez, and fulfilled his financial obligation towards them but he

still did not have a descent representation. Plaintiff believes that he does not have these lawyers

with him partly because of ECFMG and Grese's lack of cooperation. See Document #1,

Paragraph 59 through 66.

## 3.  ARGUMENT I

### a. *ECFMG and GRESE Presenting Forged and Inauthentic Documents to the Court Has Provided Another Evidence Of The Reason Why the Plaintiff is Representing Himself in the Current Court Action*[2]

Notably, in the present court action, ECFMG and Grese, relying on their popularity and the above strategy that had worked for them in the past to place plaintiff at disadvantage, have presented to the court two forged documents they have labeled Exhibit A and Exhibit B and have claimed that it is the basis of their motion to dismiss plaintiff's complaint submitted to the court. Apparently, if plaintiff did not have the original copies of all the ECFMG Information Booklets since 2007, ECFMG and Grese would have deceived the court to plaintiff's disadvantage, just as they had been doing to keep plaintiff's lawyers away.[3]

---

[2] "To provide more insight into ECFMG's history and policies, attached hereto at Exhibits A and B are the ECFMG Information Booklets for the years 2008 and 2011, respectively. Exhibits A and B can properly be considered in connection with this Motion to Dismiss...." See Document 5, Attachments. # 1, Footnote 2, on Page 1.

[3] **BACCKGROUND TO THE FORGED DOCUMENTS GRESE AND ECFMG HAVE PRESENTED TO THE COURT AS EXHIBIT A AND B:** When Mr. Allen Hancock stepped up as Opoku's champion upon discovering the existence of the undercover fake PHRC Griffin, ECFMG, and Grese had used to hold plaintiff's under deprivation of justice, he challenged ECFMG in writing a response to their fictitious motion to dismiss to a fake PHRC. Mr. Hancock stated among other things, "As a moving party, the burden on Respondent is to plead and prove that there is no dispute regarding any material issues of fact and that Respondent is entitled to judgment as a matter of law. The non-moving party is entitled to have all the issues viewed in a light most favorable to his or her position. Tom Morello Const. Co., Inc. v. Saving and Loan Assn'n., 280 Pa. Super. 329, 421 A.2d 747 (1980); Miller by Miller v. Leljedal, 71 Pa. Cmwlth. 372, 452 A. 2d 540 (1980); Carollo v. Forty-Eight Insulation, Inc., 442 Pa. 283, 276 A. 2d 513 (1971); Wheeler v. Johns-Mansville Corp., 342 Pa. Super. 473, 493 A. 2d 120 (1985); Reesler v. Jones Motor Co., Inc., 337 Pa. Super. 602, 487 A. 2d 424 (1985).

**ECFMG'S RESPONSE TO MR HANCOCK"S INTERVENTION:** Most likely the hint to ECFMG and Grese was carried to ECFMG and Grese by Kimberly Griffin. In the footnote 2 of Mr. Hancock's response, he had indicated, as to ECFMG's claim that PHRC had no jurisdiction on plaintiff's claim that" Respondent had previously filed similar Motions to Dismiss with the Commission and the Commission rejected both of the Respondent's Motions to Dismiss in Docket No. 200306586 and 200400132, <u>Kashitani v. The</u>

Even caught with their panties down because plaintiff has presented to the court

the relevant pages of the original publications of the ECFMG Information Booklets,

ECFMG and Grese have still not come to terms with the unfair manner in which they are

obstructing justice to deny him one. [4]

---

Educational Commission For Foreign Medical Graduate and Docket No. 20037743 and 200400134, Kivilcim v. The Educational Commission For Foreign Medical Graduates.

Opokuf had discussed with Mr. Hancockwho was not part of ECFMG and Grese's conspiracy network and he had requested that ECFMG submitted his test scripts and all material evidence related to the matter to PHRC for examination.

Following Mr. Hancock's response ECFMG and Grese most likely with the knowledge of Kimberly Griffin quickly and secretly moved to New Jersey, a new State, the Registration and Credential Services department responsible for forging lowest of the lowest failing test score to replace Opoku's high record-breaking scores on USMLE Step 1 and Step 2-CK. See Document 8, page 6 to 10 for detail analysis.

Because Opoku revealed the scheme to the court in his current complaint, ECFMG has published two new ECFMG Information Booklets for 2008 and 2011 and in them interchanged their old Philadelphia address and their new New Jersey address. As a result, the New Jersey address now appear in the defendants' forged 2008 ECFMG Information Booklet and the Philadelphia address appear in their forged ECFMG 2011 Information Booklet. In the original version plaintiff has presented to the court, however, the ECFMG 2008 Information Booklet has the Philadelphia address, and the original 2011 ECFMG Information Booklet has the new New Jersey address, which has been so since 2010 immediately after Mr. Hancock made his appearance.

DETECTION OF COUNTERFEIT PUBLICATION by ECFMG: (a) ECFMG has added new pages in Roman numerals to the forged ECFMG they have newly published to deceive the court and make plaintiff incredible. (b) the original Publications has larger letter font but in spite of this the information on say page 22 in the original now appears on say page 35 on the forged Publication with smaller letter font. REASONING: If ECFMG reproduced the same publication with shrunk letter font, as in photocopy, the pages on both documents would be the same irrespective of the letter font. If however the letter shrunk was done on the same document by word processor, the publication with smaller letter font should have smaller page number, say page 22 becomes page 15. On the ECFMG forged document, however, the law of physics does not apply, such that information on the original with larger letter font move from say page 22 to page 35.

[4] In his motion for Summary Judgment, Plaintiff also baselessly asserts exhibits attached to Defendants' memorandum in support of their Motion to Dismiss are inauthentic. As in our Motion to Dismiss, the documents are the same ones which Plaintiff selectively attached to his Complaint and thus are properly considered by the Court. Even if the Court were to disregard the exhibits which plaintiff questions, however, Plaintiff's Complaint should still

### b. *ECFMG and GRESE Have Established No Credibility With the Court and have Even lied on the Court Clerk to hide their Penchant to forge Documents*

The unfair strategies ECFMG and Grese have used to sway and deprive plaintiff of representation have reflected in their lies on the Court clerk. In another contradiction displayed in Document 11, Attachments # 1, ECFMG and Grese have claimed that they took the forged documents indicated above as direct copies from the Court Clerk and apparently presented them back to the court as Exhibits A and B. What the defendants have not explained is the apparently magical way by which the few relevant pages from the ECFMG Information Booklet for 2008 and 2011 submitted to the court by plaintiff have multiplied into more than seventy pages of the defendants' Exhibit A and B with additional new information not found in the original documents plaintiff downloaded from ECFMG's official website in 2007. Furthermore, even though the font letters in the defendants' forged documents are smaller, some of the information on page 22 of the original and authentic version presented by plaintiff appears on page 35 in the forged version presented by the defendants. [5]

Even while Opoku is suffering a lack of representation in the present court action due to direct and indirect actions by ECFMG and Grese, he is still paying credit card bills on $5375.00 he paid for legal representation he never obtained at the time when ECFMG, Grese, Griffin, and Martinez conspired to hold his complaint in captivity under a fake due process at a fake PHRC.

---

**be dismissed with prejudice."** (Emphasis in bolding is by plaintiff) See Document 11, Footnote, on pages 1 & 3.

[5] ECFMG and Grese state that" Neither the copy of the Complaint received by ECFMG nor the copy received by Attorney Grese included Plaintiff's Appendices to his Complaint. Instead, Defendants had to obtain a copy from the Clerk of Court by their own initiative." See Document 11, paragraph 1 of footnote 1, on page 2.

Therefore, ECFMG and Grese's argument that they are not responsible for plaintiff's lack of representation is incorrect.

### c.  *Plaintiff Appearing Pro Se In the Current Court Action is Not Only Legal But Also Out of Necessity*

Plaintiff believes that he is empowered by the Constitution of the United States to rise above his disadvantaged position of not being represented besides being a novice to stand up to the bulwarks of law practice who want to trample down upon his fundamental human dignity. The Supreme Court has noted that in the federal courts the right of self-representation has been protected by statute since the beginnings of our Nation. Section 35 of the judiciary Act of 1789, 1 Sat 73, 92 enacted by the First Congress and signed by President Washington one day before the Sixth Amendment was proposed, has provided that in all the court of the United States, the parties may plead and manage their own causes personally or by the assistance of counsel.

Under the guidance of the Supreme Court in the above notation, the District of Columbia Court of Appeals wrote that, "Private individuals, have a Constitutional right of access to the court, that is, the right to sue and defend in the Courts. See Bounds v. Smith. 430 U.S. 817. 821 (1977).

Furthermore, the Superior Court of New Jersey issued an order prohibiting a litigant from filing in federal court. The third Circuit, however, ruled that a restriction on pro se litigation went too far and that it could not be enforced if a litigant certified that he has new claims that were never before disposed of on the merits. The 10th Circuit ruled that before imposing filing

restrictions, a district court must set forth examples of abusive filings and that if the district court did not do so, the filing restrictions must be vacated.

### d.   OPOKU'S Foreign Origin is Not An Obstacle to Justice In the United States

Filartiga v. Pena-Irala 630F. 2d 876 (1980) established a precedent for the use of the Alien Tort Statute (ATS) of 1789 to allow foreign victims of human rights abuses to seek justice in U.S Court. This case opened U.S courts for victims of human rights crimes to bring suit against perpetrators from anywhere.

Several federal cases have drawn on the precedence of Filartiga v. Pena-Irala, including, Daniels v. City of New York. 291 AD 2d 260 (2002) and Floyd v. City of New York. 739 F Supp. 2d 376 (2010). The case forced the New York City Police Department to end their practice of stopping and frisking on the basis of their race or national origin. The case also highlighted the practices of the NYPD Street Crimes Unit (responsible for the 1999 shooting of Amadou Diallo), leading to its disbandment. The case's settlement created an internal audit system of officers engaged in stop and frisks, and required NYPD to begin "know your rights" public education programs.

Again, in the case of Paul v. Avril (1984), Evans Paul with six Haitian political activists, under the Alien Tort Statute, sued former military dictator Proper Avril in the U.S court for human rights violations. They sought compensation for damages that the plaintiffs suffered under Avril's rule. In November 1993, attorneys for Center for Constitutional Rights moved for a default judgment. In july 19994, in an unprecedented decision in which a Hatian dictator or member of the military was held accountable for human rights abuses, a federal magistrate awarded a $41 million damage judgment to the victims of Prosper Avril.

For further reference, the Supreme Court case involving Rasul v. Bush, 215F. Supp. 2d
55 (2004) can be of interest in this case in relation to Opoku's condition of foreign nationality,
The Court established precedent for U.S courts' jurisdiction over the Guantamano Bay prison
camp, affirming detainees' right to habeas corpus review. This right was later putatively revoked
when President Bush signed the Militaty Commissions Act (MCA) into Law. In 2008, in the case
of Boumediene v. Bush, the Supreme Court declared the relevant parts of the MCA
unconstitutional and restored the rights won in Rasul.

### 4.  Plaintiff Made No Error In Serving ECFMG and GRESE Summons and Complaint By Certified Mail.

Plaintiff followed the Federal Rules of Civil Procedure in serving the Original Process on
ECFMG and Grese. Plaintiff asserts that serving the original process on ECFMG and Grese
in accordance with Federal Rules of Civil Procedure Rule 4 (h) (1) (B) and the
PENNSYLVANIA RULES OF CIVIL PROCEDURE 403, was not an error and in act a right
thing to do, as a matter of law.  Therefore, the service made by plaintiff of the original
process was proper and binding. The  Fed  R. Civ. P. Rule 4 (h)(1)(B) stipulates that original
process, specifically the summons and complaint, can be served by certified mail on
members of incorporated or non-incorporated, profit or not-for-profit COOPERATION,
ASSOCIATION, and PARTNERSHIP, as in this case.[6]

---

[6] THE FEDERAL RULES OF CIVIL PROCEDURE RULE 4(h) (1) (B) states that, "SERVING A
CORPORATION, PARTNERSHIP OR ASSOCIATION. Unless federal law provides otherwise
or the defendant's waiver has been filed, a   domestic or foreign Corporation, or partnership or
other unincorporated association that is subject to suit under a common name, must be served:
…(1) In a judicial district of the United State. (B) By delivering a copy of the summons and the
complaint to an officer, a managing or general agent, or any other agent authorized by
appointment or by law to receive service of process and –the agent is one authorized by statute

**ECFMG and GRESE's IDENTITY:** By their own admission, ECFMG and Grese state that, "ECFMG is a private not-for-profit corporation that assesses whether international medical graduates ("IMGs") are ready to enter accredited residency or fellowship programs in the United States" and "Attorney Grese is an associate with the law firm Morgan, Lewis & Bockius LLP ("Morgan Lewis")." See Document 5, Attachments #1, page 1 and 2.

### 5. Serving ECFMG and GRESE by Certified Mail was Proper, As a Matter of Law and They were Required to Serve Answer Within 24 days

As noted above, Plaintiff construes that in the circumstances in which ECFMG and Grese have been sued, they are incorporated CORPORATION and ASSOCIATION respectively. ECFMG is a Corporation and the Fed. R. Civ. P. Rule 4 (h)(1)(B) and Pennsylvania Rules of Civil Procedure 403 can apply. Grese's situation is further highlighted by the Federal Rule of

and the statute so requires- **by also mailing a copy of each to the defendant**," (Emphasis in bolding is by the plaintiff)

**The PENNSYLVANIA RULES OF CIVIL PROCEDURE 403**, which is not in conflict with The Federal Rules of Civil Procedure Rule 4 (h) (1) (B) stated above also states that, "if a rule of civil procedure authorizes original process to be served by mail, a copy of the process shall be mailed to the defendant by any form of United States mail requiring a receipt signed by the defendant or the defendant's authorized agent. Service is complete upon the defendant or the defendant's authorized agent signing the required receipt. If the mail is returned with notation by the postal authorities that the defendant refused to accept the mail, the plaintiff shall have the right of service by mailing a copy to the defendant at the same address by ordinary mail with the return address of the sender appearing thereon. Service by ordinary mail is complete if the mail is not returned by the postal authorities to the sender within fifteen days after mailing. If the mail is returned with notation by the postal authorities that it was unclaimed, the plaintiff shall make service by another means pursuant to these rules."

Civil Procedure Rule 11 (c) (1) states that, "Absent exceptional circumstances, a law firm must

be held jointly responsible for a violation committed by its partner, associate, or employee."

On June 27, 2012, two registered/certified mails, known as EXPRESS MAIL, and were

addressed separately to ECFMG and Grese, were .delivered at their respective addresses. Each

mail signed for contained a summons and a complaint. See Document 3.

Despite the evidence that ECFMG and Grese received the summons and signed for them

on June 27, 2012, in which case the Federal Rule of Procedure Rule 6(d) applies and allows them

24 days instead of 21 days to file response or motion with the court and plaintiff, they defaulted

and waited till 27 days to file response to the Court and plaintiff. In an unfortunate opportunistic

display, ECFMG and Grese appeals to Federal Rules of Civil Procedure 6(d) to explain away

their default but fails to acknowledge that the manner with which plaintiff executed the service

of summons and complaint was faultless.

### 6. *ECFMG and GRESE Have No Excusable Reason for Their Default and have taken to inconsistencies.*

ECFMG and Grese have established no credibility in the present court proceedings and it

goes to confirm plaintiff's allegation that draws on the same character. Instead of admitting their

default and their defeat with dignity, ECFMG and Grese have sought to outsmart the court and

the plaintiff and in so doing undermining the Rules of Civil Procedure that are the golden

principles for fair play between them and the plaintiff. What this seems to suggest is that for

ECFMG, manipulating the justice system to get away with abuse is their preference action. In the

absence of Griffin and Martinez, as at PHRC, they still want to manipulate something, and this

time the Federal Rules of Civil Procedure.  The defendants being experts and knowing that

credibility is crucial in a court's decision have still ignored the obligation of decency, thus

proving plaintiff right. See Exhibit 1.[7]

### 7. The 24th Day by Counting from JUNE 27, 2012 is JULY 20, 2012, which is FRIDAY and not SATURDAY.

ECFMG have attempted to explain their default away and stated under oath that July 20,

2012 was Saturday. ECFMG and Grese are incorrect by saying that July 20, 2012 was a

Saturday instead of a Friday. Plaintiff believes that ECCFMG and Grese have no regard,

whatsoever, for his intelligence, but at least they must respect the intelligence of the Court- It is a

level playing ground for them (as experts in the law practice) and the plaintiff who is a mere

novice. Plaintiff believes that counting numbers is mathematics and he has that capability, at

least. The 24th day of a counting that begins on June 27, 2012 is July 20, 2012, which is **Friday**.

See Exhibit 1.

Looking at the other arguments advanced by ECFMG and Grese, plaintiff notes that after all,

ECFMG and Grese did not have an oversight in their computation of the deadline to serve

answer after being served the summons. They are aware that 24 days counting from June 27,

2012 falls on July 20, 2012, which is Friday. So they decide to count from ~~July~~ June 28, 2012 for their

---

[7] "In his motion **Plaintiff argues that Defendants' Motion to Dismiss was not timely. Plaintiff is incorrect.....** Federal Rule of Civil Procedure 6 (d) adds 3 more days (for a total of 24 days from service). For a defendant to act when service is made by mail as was the case here. Twenty-four days from June 27, 2012 is July 21, 2012 July 21, 2012 was a Saturday. Federal Rule of Civil Procedure 6(a) (1)(C) provides that if the last day of a period of time is a "Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." As a result, Monday, July 23, 2012 was Defendants' deadline to move to dismiss Plaintiff's Complaint. Accordingly, Defendants' Motion to Dismiss was timely when filed on July 23, 2012" See Document 11 Case 2:12-CV-03457- Filed 08/07/12 page 2of 5 "

convenience instead of counting from June 27, 2012, the day they signed for the certified mail, as prescribed by the rules.[8]

### 8. *ECFMG AND GRESE SET FEDREAL RULES OF CIVIL PROCEDURE RULE 4 (h) (1) (B) and PENNSYLVANIA RULES OF CIVIL PROCEDURE 403 ON ONE HAND AGAINST FEDERAL RULES OF CIVIL PROCEDURE RULE 6 (d) AND RULE 4(d) ON THE OTHER HAND*

As it were, ECFMG and Grese attempt to create a mayhem by misrepresenting the above rules as if they harbor internal conflicts against each other. Plaintiff believes that the formulators of the judicial rules have the wisdom to avoid creating this kind of conflict within a system meant to create harmony. The defendants have appealed to Federal. Rules of Civil Procedure Rule 6 (d) in connection with Rule 4 to explain away their default but they turn around and wrongly consider that actions stipulated by the Pennsylvania Rules of Civil Procedure and Federal Rules of Civil Procedure Rule 4(b)(1)(B) are invalid..[9]

---

[8] "Moreover, Plaintiff's service by mail was not effective on July 27, 2012 because he did not include a waiver of service form. Under Federal Rule of Civil Procedure 4, Plaintiff may not serve original process by mail without including a service of waiver,"[8] See Document 11, Case 2:12-cv: cv-03457-PBT)

[9] The Federal Rules of Civil Procedure Rule 4(d) stipulates that sending a waiver is an exclusive right of the plaintiff to reduce financial burden of serving summons in sure and secured ways. If the option of sending a waiver is taken, summons are not sent along. Invoking this Rule as a loophole to make plaintiff's service look improper is just opportunistic and illogical. Rule 4(d) specifically states who initiates a waiver and for what purpose. It states: WAVING SERVICE: Rule 4(d): Requesting a Waiver: An individual, corporation, or association that is subject to service under Rule 4 (e), (f), or (h) has a duty to avoid unnecessary expense of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons. The notice and request must: (B) be in writing and be addressed: (iii) to the individual defendant, or (iv) for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process….(C ) be accompanied by a copy of the

punitive damages. Accordingly, should any of plaintiff's claims survive plaintiff's prayer for punitive damages should be stricken". See Document 5, Attachments. #1, page 22.

After wasting time to advance very wordy but pointless argument to indicate that plaintiff's complaint states no valid claim, ECFMG and Grese make the above statement to cancel out all their argument. It is as if they are saying that they have accepted their defeat and they have no contest. What is troubling, however, is that ECFMG and Grese have demonstrated some amount of confusion. They had been living comfortably with the notion that they had succeeded dispossessing plaintiff of his lawyers and the State's statutes of limitation had all expired so they had got away with the abuse of Opoku. By committing forgery, sabotage, hate crimes, obstruction of justice, and defrauding to say some of their actions, all against John Paul Opoku who has America at heart and just wants to contribute to its progress, they claim that these allegations are not serious. Forging the lowest of the lowest failing test scores to replace plaintiff's highest record-breaking scores on USMLE Step 1 and Step 2-CK alone are not light matters to the plaintiff and to American's way of life. Furthermore, ECFMG and Grese and their co-defendants have engaged in conspiracy with Griffin and Martinez to deny plaintiff due process, engaged in obstruction of justice against plaintiff, [10] and deprived him of the right to

---

[10] On Thursday, about 12:35pm, the fake PHRC Griffin and Martinez presented to fool Plaintiff for two years and three months came to light when plaintiff called to PHRC Central Office in Harrisburg with an intention to speak with Ms. Arberdella White-Davis, who had supposedly sent him a letter dated June 15, 2010 and had not replied two letters plaintiff had in turn sent to her by the USPS Express mail. See Complaint paragraph 71, footnote 44, Appendix C8.
In the above call plaintiff made, he made two important discoveries that drastically changed his views about the kind of PHRC he was dealing with and the prospects of his cry for justice. Plaintiff had all along, before this time, believed that he was dealing with the real PHRC and his complaint was being handled by authentic PHRC representatives who had been duly appointed to

handle his complaint to keep up with the hope he had been imbued with by the office of the Attorney General in Harrisburg:

FIRST: Plaintiff discovered that Ms. Arberdella White Davis, who had supposedly written him a letter that was dated June 15, 2010 with her saved signature on it, had retired from PHRC long before June 15, 2010 and could not be present to write him the letter of June 15, 2010 in her former capacity as PHRC Compliance Director. See Paragraph 71; Footnote 44; Appendix c8, Complaint See Memorandum of Law in Support of Griffin and Martinez's Motion to Dismiss the Complaint, p8.

SECOND: Plaintiff discovered that his complaint had no valid recognizable docket or case number at the authentic PHRC's current case archives, which could be assessed at the PHRC Central Office in Harrisburg. Notably, the PHRC representative who obtained plaintiff's case number, as assigned to him by Kimberly Griffin under the fake PHRC, and attempted to use it to ascertain the status of plaintiff's complaint, was unsuccessful because it was invalid.

Plaintiff's shocking discovery led him to compare some other popular dockets documented at the authentic PHRC and he noted that a docket number of **20084756** assigned to his complaint filed on March 10, 2009 at PHRC deviated from the common pattern.. Notably this questionable docket number appears on all the documents Griffin and Martinez have submitted to the court to make a point.

Plaintiff began to reflect on, and put into right perspective the bizarre events he had observed over the months in his dealings with Terry Williams, Kimberly Griffin and Suzanne Martinez as PHRC representatives. Plaintiff reflected on the fact that when ECFMG apparently filed a motion to dismiss his complaint on July 29, 2009, it was not until January 29, 2010, about six months later, that Mr. Hancock contacted plaintiff, following plaintiff's second contact with the Attorney General's office in Harrisburg, to be briefed about the case he did not seem to be aware of. Mr. Hancock gave response to the so-called motion to dismiss filed by ECFMG by relying on the information plaintiff sent him, which was long known to Kimberly Griffin but had been kept by her under cover. He apparently made Griffin certify to the document to take responsibility of what he apparently considered a serious breach of trust on her part.

Plaintiff is aware that no judicial institution in the U.S gives six months to a complainant to file response to a motion to dismiss filed by the opponent except in special situations like Plaintiff's current case where default and a motion for Summary Judgment came in between to break the chain of progress. The authentic PHRC gives about fourteen days for that process.
It was the same Mr. Hancock whose passion for justice and professional integrity led him to be the first to suggest to plaintiff to consider filing his case at the

be represented by an attorney while they are enjoying attorney client relationship and they

believe that it is not serious.[11] Plaintiff believes that it will take the court to show them how

serious these allegations are in civilized society.

---

Federal Court, apparently knowing that the due process plaintiff had been made to believe by Kimberly Griffin was not real.

Following Mr. Hancock's unexpected involvement in plaintiff's case, ECFMG secretly moved their office from Philadelphia to New Jersey because of the claim they had made in their fictitious 'motion to dismiss' to indicate that PHRC did not have the subject matter jurisdiction over the complaint. It became clear that Kimberly Griffin who had falsely told plaintiff that PHRC legal team would respond to the so-called motion had literally dumped plaintiff case in the garbage for six months without making any member of the legal team get involved because the due process he offered plaintiff was unreal and under cover.

In connecting all the factual pieces together, Plaintiff was able to come to terms with the truth that Kimberly Griffin and Suzanne Martinez, even though work at PHRC as representatives, did not act in their official capacity in handling plaintiff's complaint duly filed to seek justice by PHRC intervention.

It became clear that Kimberly Griffin and Suzanne Martinez did not have any official authorization to act in the way they presented themselves to plaintiff to work for the ill interest of ECFMG and Grese, but rather faked that authorization by faking letters under the saved signatures of their superiors, including that of Ms. White Davis who had retired from PHRC.

[11] Ms. Cohen, whom Opoku had told at the time he was retaining her for his case that he had a complaint pending at PHRC had apparently seen that the case was not officially documented, as plaintiff had been made to believe by Kimberly Griffin. She, however, did not see herself as the one responsible to reveal that information to plaintiff, considering all its ramifications. Nevertheless she managed to give some hints that plaintiff initially found offensive because of his profound trust in PHRC. In cryptic terms, Ms. Cohen stated, for instance, "I also do not see this as a viable civil rights claim based on the law as written and interpreted, **and even if I did, the PHRC will not do anything for you....**" ( Emphasis by bolding is plaintiff's) See Complaint. Appendix B 3.

Again, when Gresel bypassed Ms. Cohen a second time about August 7, 2009 to contact plaintiff with another document ("Respondent Verified Answer and New Matter"), and plaintiff asked Ms. Cohen again about the anomaly, she again gave another hint stating in her defense, "I asked you to send me the

first document you received from the Morgan Lewis Office, and you did not, so I have no idea what they sent you and who sent it to you. .... As I told you, they are one of the largest law firms in the world, and they charge their clients quite a bit. I don't know why they are not writing to me. **But perhaps the PHRC did not notify them of my entry of appearance.**" See Complaint Paragraph 61 and Complaint Appendix C2 yellow- highlight). (Emphasis in bolding is by plaintiff).

It follows from the foregoing exposition that plaintiff did not get the dignified representation a person pays a lawyer for. Given that the PHRC plaintiff was dealing with was faked by Griffin and Martinez, it is incorrect and invalid for the counsel of Griffin and Martinez to state in defense of his clients that, "Counsel for ECFMG, who may not have known that Ms. Cohen had entered an appearance for plaintiff, directed communications directly to plaintiff." See Memorandum of Law in Support of Griffin and Martinez's Motion to Dismiss the Complaint, Document 10, on page 7",

Notably in their memorandum of law presented with their motion to dismiss complaint, Griffin and Martinez have admitted that Ms. Cohen filed a notice of appearance as plaintiff's lawyer with the counterfeit PHRC they had presented plaintiff. Their counsel has stated to this effect saying, "Faye Riva Cohen, Esquire, entered an appearance on behalf of plaintiff on or about June 30, 2009". See Memorandum of Law in Support of Griffin and Martinez's Motion to Dismiss the Complaint, p 7.

The false statement above is attempting to mislead the court to believe that the PHRC Kimberly Griffin presented to the plaintiff was real and that plaintiff's then lawyer filed a notice of appearance to the real PHRC. This is incorrect. In betraying the lies, Griffin herself exhibited contradictions in her actions. Having stated earlier in a letter to plaintiff that if he hired an attorney and she received the attorney's notice of appearance she would deal directly with the attorney and not the plaintiff, she still kept direct contact with plaintiff ignoring that he had an attorney.  See Complaint paragraph 64.

Despite exposing the truth to the court in his complaint, Griffin and Martinez defend this falsehood to the court in their Memorandum of law stating, "On July 24, 2009, ECFMG filed a motion to dismiss the PHRC Proceedings". ..." In the August 17, 2009 letter, Griffin advised plaintiff, with a copy to his counsel, Ms. Cohen that, on behalf of his position, the PHRC office of Legal Counsel would submit a memorandum in opposition to ECFMG's motion to dismiss and that plaintiff's counsel could submit a brief as well." See Memorandum of Law in Support of Griffin and Martinez's Motion to Dismiss Complaint, p 7.
Still lying to the court to hide their deprivation of plaintiff of his fundamental right to get the legal representation he had paid for, Griffin and Martinez

In a somewhat similar complaint of setting aside excellent test scores where the

defendants did not forge deeds and documents, as in this case, the court reversed a summary

judgment decision for the Defendants in favor of the plaintiff. See Ricci v. Distefano, 06/29/09;

case No 071428. In Title VII action claiming that a city discriminated against white firefighter

candidate for a promotion by discarding their test results based on a statistical racial disparity,

summary judgment for Defendants is reversed where the City's action in discarding the tests

violated Title VII, because a threshold showing of a significant statistical disparity is far from a

strong basis in evidence that the city would have been able under Title VII had it certified the

test result.

**CONCLUSION**

A vital tool for the court to decide the case Opoku v. ECFMG et al. is credibility. All four

defendants have demonstrated a lack of credibility through their motion to dismiss filings that

further confirms what plaintiff has alleged in his complaint. In Walter Process Equipment v.

---

opportunistically declares to the court without remorse stating that, "On
August 30, 2009 Ms. Cohen advised plaintiff that she would not be doing
more legal work for him or filing a memorandum in opposition to ECFMG's
motion to dismiss because plaintiff had failed to pay for her legal services."
.... "Ms. Cohen formally withdrew her appearance on or about November 9,
2009, because plaintiff had failed to pay her for legal services" See
Memorandum of Law in Support of Griffin and Martinez's Motion to Dismiss
the Complaint, p 7. The truth is that plaintiff paid Ms. Cohen $1875.00 on
June 8, 2009 to represent him at PHRC that did not exist and the only services
he got for that payment was emails sent to sway him from the pursuit of
justice and apparently one letter Griffin claim to have ""cc" to her about a
fictitious "motion to dismiss" filed by ECFMG.

Food Machinery 382 U.S 172 (1965), it was held that in a "motion to dismiss", the material allegations of the complaint are taken as admitted.

Plaintiff, therefore, prays the court to reject the motion to dismiss submitted by ECFMG and Grese and their co-defendants and reverse the summary judgment decision for the defendants in favor of the plaintiff.

Respectfully submitted

Date: MAY 5, 2013

John Paul Opoku

2110 Bronx Park East 2A

Bronx, NY. 10462

Tel. 718-829-8978

**NOTICE:  EXHIBIT 1: EXHIBIT 1 ATTACHED to  previously submitted "OPOKU's MEMORANDUMDUM OF LAW IN OPPOSITION TO ECFMG AND GRESE'S MOTION TO DISMISS "  is still valid and should go with " OPOKU's MEMORANDUMDUM OF LAW IN OPPOSITION TO ECFMG AND GRESE'S MOTION TO DISMISS, AMENDED"**

## CERTIFICATE OF SERVICE

I hereby certify that by the United States Parcel Service (UPS), I have served on the Court a copy of "Opoku's Memorandum of law in Opposition to Griffin and Martinez

Motion to Dismiss Plaintiff's Complaint, Amended".

I further certify that by the United States Postal Service (UPS), I have served on ECFMG and Christina Joy F. Grese "Opoku's Memorandum of law in Opposition to ECFMG and Grese's Motion to Dismiss Plaintiff's Complaint, Amended" through their Lawyers, Brian W. Shaffer and Elisa P. McEnroe, MORGAN, LEWIS & BOCKIUS LLP, 1701 Market Street,

Philadelphia, PA 19103, on ..*MAY 5, 2.0.1.3*

I further certify that by the United States Postal Service (UPS), I have served on Kimberly Griffin and Suzanne Martinez a copy of "Opoku's Memorandum of law in Opposition to ECFMG and Grese's Motion to Dismiss Plaintiff's Complaint, Amended " through their attorney BARRY N. KRAMER, PA OFFICE OF ATTY GENERAL, 21 SOUTH 12TH STREET THIRD FLOOR, PHILADELPHIA, PA 19107-2921 .

DATE:    *MAY 5, 2013*

John Paul Opoku (Pro se)

2110 Bronx Park East

Bronx NY 10462

718-829-8978

FILED

MAY - 7 2013

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify to the best of my Knowledge that Vol. 2 of the Appendix of the

Appellant Opening Brief of John Paul Opoku complies with complies with the

specifications for the Appendix indicated in FRAP Rule 30.

Declared and signed by

Date October 30, 2013

John Paul Opoku (Pro se – Appellant – Plaintiff)

## CERTIFICATE OF SERVICE

I certify that, I have served **10 bound paper copies** (including one original) of the Appellant's Opening Brief Appendix Vol. 2 in the case 13-4076 (10/10/2013), on the Court of Appeals for the Third Circuit, through the Office of the Clerk, <u>Maria Reyes, Case Manager, 601 Market Street, 21400 U.S CourtHouse, Philadelphia, PA 19106 -1737</u>, in accordance with L.A.R. 31.1 (a)

I certify that, by UPS, I have served **one bound paper copy** of the Appellant's Opening Brief Appendix Vol. 2 in the case 13-4076 (10/10/2013), on Appellees – Defendants Education Commission for Foreign Medical Graduates and Christina Joy F. Grese, through their counsel on record at, <u>Brian W. Shaffer, 1701 Market Street, Philadelphia, PA 19103 -2901</u>, and **one bound paper copy of same** on Appellees – Defendants Kimberly Griffin and Suzanne Martinez, through their counsel on record <u>Ms. Claudia M. Tesoro, 21 South 12th ST, Philadelphia, 3rd Floor, PA 19107 – 3604</u>, in accordance with L.A.R. 31.1 (a)

Declared and signed by,

Date. October 30, 2013

John Paul Opoku (Pro Se) (Appellant –Plaintiff)